UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

TAMEKA NELSON, et al.,

      Plaintiffs,

   v.

NISSAN NORTH AMERICA, INC.,
and NISSAN MOTOR CO. LTD.,

      Defendants.

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 11-5712
(JEI/JS)

**OPINION**

**APPEARANCES:**

CHIMICLES & TIKELLIS, LLP
By:  Benjamin F. Johns, Esq.
     Matthew D. Schelkopf, Esq.
     Joseph G. Sauder, Esq.
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
    Counsel for Plaintiffs

SEDGEWICK LLP
By:  Martin J. Healy, Esq.
Three Gateway Center, 12th Floor
Newark, NJ 07102
    Counsel for Defendant Nissan North America, Inc.

**IRENAS**, Senior District Judge:

Plaintiffs Tameka Nelson, Richard Creel, Karim Abdullah,

Ruth Taplet, and Nancy Ebner initiated this action against

Defendants Nissan North America, Inc. and Nissan Motor Company

Ltd (collectively "Nissan") for the alleged concealment of

defectively designed transmissions in certain Maxima, Altima, and

Quest vehicles.[1]  Pending before the Court is Defendant Nissan North America's Motion to Dismiss the First Amended Class Action Complaint ("Class Action Complaint") pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b).[2]

## I.

Certain Nissan vehicles contain a 5-speed automatic transmission known as the RE5F22A ("22A").  (Class Action Compl. ¶ 29.)  The 22A transmissions rely on a complex maze of channels and passages that directs hydraulic fluid to numerous valves called the valve body, which, when properly designed, enables a smooth shift to the appropriate gear.  (*Id.* ¶ 30.)  The transmission problems underlying this action allegedly result from the improper design and function of the 22A valve body, which caused delayed shift patterns, excessive heat buildup, slippage, harshness, premature internal part wear, metal debris, and catastrophic transmission failure.  (*Id.*)  Allegedly, a faulty Transmission Control Module also contributed to the 22A transmission failures.  (*Id.* ¶ 31.)  According to the Class Action Complaint, the defective transmissions not only fail well in advance of their expected useful life, but also pose

_____

[1]  The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) and (6) and 28 U.S.C. § 1367.

[2]  The Court notes that the Motion is filed only on behalf of Nissan North America, Inc., and it does not appear that Nissan Motor Company Ltd has entered an appearance in the case or been served with the Complaint.

significant safety risks due to an unpredictable acceleration response and sudden total transmission failure. (*Id.* ¶¶ 5-6.) As detailed below, the five named Plaintiffs in this action all experienced transmission problems in their Nissan vehicles.[3]

Plaintiff Tameka Nelson purchased a pre-owned 2006 Nissan Maxima in August 2006 from Rancho Valley Chevrolet in Pomona, California. (*Id.* ¶ 54.) At the time of purchase, her vehicle had approximately 16,000 miles. (*Id.*) Beginning in 2010, before the vehicle had been in service for five years and before it had been driven 60,000 miles, the transmission began to malfunction. (*Id.* ¶ 56.) On May 14, 2011, with only 77,551 miles, Nelson experienced catastrophic transmission failure and was informed by Nissan of San Bernardino that a new transmission was required. (*Id.* ¶ 57.) Nelson ultimately had her transmission problem repaired by a speciality transmission service center and incurred charges of $90.00 for a diagnostic fee and $2,696.46 in repair costs. (*Id.* ¶ 58.)

Plaintiff Richard Creel purchased a new 2005 Nissan Maxima

---

[3] The named Plaintiffs bring this action on their own behalf and on behalf of persons or entities in California, Pennsylvania, New Jersey, Maryland, Ohio and Illinois who are current or former owners or lessees of Nissan Maxima (2004-2006), Nissan Altima (2005-2006), and Nissan Quest (2004-2007) vehicles equipped with the 22A automatic transmissions. (Class Action Compl. ¶ 109.)

in August 2005 from Bowser Nissan[4] in Pleasant Hills,
Pennsylvania.  (*Id.* ¶ 61.)  Beginning in 2008, Creel began
experiencing transmission problems.  (*Id.* ¶ 63.)  On April 10,
2008, before the vehicle had been in service for five years and
with only 48,486 miles, Creel brought his vehicle to Bowser
Nissan for transmission repairs under the warranty.  Creel was
told that the shifting problems could not be duplicated and that
there was nothing wrong with the vehicle.  (*Id.* ¶ 64.)  On
January 7, 2009 with only 59,776 miles, Creel brought the vehicle
to Bowser Nissan again seeking repairs under the warranty. (*Id.* ¶
65.)  Creel was again told that the shifting problems could not
be duplicated and that there was nothing wrong with the vehicle.
(*Id.*)

After the shifting problems continued to worsen, on March 3,
2011, with 86,943 miles, Creel brought the vehicle to Bowser
Nissan seeking repairs.  (*Id.* ¶ 66.)  Again, Creel was told that
nothing was wrong with the transmission.  (*Id.*)  On March 18,
2011, Creel sent a complaint letter to Nissan North America.
(*Id.* ¶ 67.)  For a fee of $89.00, Creel took his vehicle to a
different Nissan dealership for a diagnostic test.  (*Id.*)
Pittsburgh East Nissan informed Creel that the transmission
needed to be replaced at a cost of $3,346.57.  (*Id.* ¶ 67.)  Creel

---

[4]  The Class Action Complaint also refers to Bowser Nissan
as Bowser Pontiac, Inc.  (*See* Class Action Compl. ¶¶ 61, 64-66.)

ultimately had the transmission replaced at an independent transmission center for a cost of $1,457.30. (*Id.* ¶ 69.)

Plaintiff Karim Abdullah purchased a pre-owned 2004 Nissan Maxima with approximately 37,000 miles from Acura of Turnersville in January 2006.[5] (*Id.* ¶ 73.) During the warranty period, Abdullah experienced transmission problems, and beginning in January 2009, with approximately 95,000 miles, the transmission problem escalated. (*Id.* ¶¶ 75-76.) In January 2010, at 110,000 miles, Abdullah's vehicle became inoperable because of the transmission failure. (*Id.* ¶ 77.) Abdullah incurred costs of $1,200 to repair the transmission from an independent service center. (*Id.* ¶ 79.)

Plaintiff Ruth Taplet purchased a used 2006 Nissan Maxima on August 6, 2007 from Nissan of South Holland in South Holland, Illinois. (*Id.* ¶ 82.) Taplet also purchased a 60 month/100,000 miles Gold Preferred Plan Service Agreement ("Service Agreement"), which allegedly covered all internal and external components for her transmission until the earlier of February 18, 2011 or 100,000 miles. (*Id.* ¶ 84.) On November 18, 2010, with 82,983 miles, Taplet noticed transmission problems. (*Id.* ¶ 85.) Taplet brought the vehicle to Kelly Nissan, and was told that the transmission needed replacement. (*Id.* ¶ 85.) However, Kelly

---

[5]  At the time of purchase, Abdullah was a resident of New Jersey; he subsequently moved to Maryland. (Class Action Compl. ¶ 73.)

Nissan refused to do the work under the Service Agreement and allegedly told her that if she wanted the Service Agreement to cover the transmission, she would have to take it to South Holland Nissan. (*Id.* ¶ 86.)  The next week, Taplet brought the vehicle to South Holland Nissan, which found no problem with the transmission and refused to make any repairs. (*Id.* ¶¶ 88-89.)  In March 2011, after the expiration of the Service Agreement, Taplet brought the vehicle back to South Holland Nissan, and she was informed that she needed a new transmission. (*Id.* ¶¶ 91-92.)

Plaintiff Nancy Ebner purchased a new 2004 Nissan Maxima in October 2003 from Fred Martin Nissan, LLC in Akron, Ohio. (*Id.* ¶ 95.)  Beginning in April 2004, with approximately 11,000 miles, Ebner began experiencing transmission problems; however, Fred Martin Nissan was unable to duplicate the problem. (*Id.* ¶ 97.)  In September 2004, with approximately 22,400 miles, Ebner brought the vehicle to Fred Martin Nissan, which reprogrammed the Transmission Control Module. (*Id.* ¶ 98.)  In March 2005, with approximately 30,600 miles, Ebner brought the vehicle back for transmission problems, but Fred Martin Nissan was again unable to duplicate the problem. (*Id.* ¶ 99.)  On June 5, 2011, Ebner filed a complaint with Nissan North America regarding her transmission problems. (*Id.* ¶ 100.)  Her claim was denied on the basis of the expiration of the 5 year/60,000 mile express warranty. (*Id.*)  In January 2010, with approximately 122,000 miles, Ebner's vehicle

became inoperable because of the transmission problems.  (*Id.* ¶ 101.)

The Class Action Complaint alleges that Nissan was well aware of the alarming failure rate of the 22A transmissions based on its own records of customer complaints, dealership repair records, National Highway Traffic Safety Administration records, complaints through consumer affairs websites, and its own durability testing.  (*Id.* ¶ 38.)  Plaintiffs assert that "Nissan actively concealed the material defect" and that the existence of the transmission problem was exclusively within Nissan's knowledge and control. (*Id.* ¶ 41.)

Plaintiffs initiated this action on September 30, 2011.  On December 5, 2011, Plaintiffs filed the instant Class Action Complaint asserting claims for breach of express warranty, breach of implied warranty of merchantability, unjust enrichment, and consumer fraud act claims under the state laws of New Jersey, California, Illinois, Ohio and Pennsylvania.  Defendant Nissan North America filed a Motion to Dismiss on January 9, 2012.

## II.

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted."  In order to survive a motion to dismiss, a complaint must allege facts that raise a right to relief above the speculative level. *Bell Atlantic Corp. v.*

*Twombly,* 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2).

While a court must accept as true all allegations in the plaintiff's complaint, and view them in the light most favorable to the plaintiff, *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008), a court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). The complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible. *Phillips*, 515 F.3d at 234. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

When evaluating a Rule 12(b)(6) motion to dismiss, the Court considers "only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of America*, 361 F.3d 217, 221 n.3 (3d Cir. 2004). A document that forms the basis of a claim is one that is "integral to or explicitly relied upon in the complaint." *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.

1997)).

## III.

A federal court in a diversity case must apply the forum state's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). New Jersey has adopted the "most significant relationship" test. *P.V. v. Camp Jaycee*, 197 N.J. 132, 142-43 (N.J. 2008). For the purposes of this Motion, the Court will apply the law of the state where each Plaintiff purchased and sought repair for her vehicle.

**A. Breach of Express Warranty**

Plaintiffs allege that Nissan expressly warranted that its dealerships would repair transmission defects during a 5 year/60,000 mile warranty period. Plaintiffs contend that Nissan breached this express warranty because (1) Nissan was aware of the transmission defect and did not disclose it during the warranty period, and (2) even when the transmission problem manifested during the warranty period, Nissan refused to make any repairs. (Class Action Compl. ¶¶ 42-44.) Plaintiffs further allege that "[s]ince the Transmission Problem typically manifests shortly outside of the warranty period for the Class vehicles-- and given Defendants' knowledge of this concealed design defect, failure to disclose it, and superior bargaining power--Nissan's attempt to limit the warranty with respect to the Transmission Problem is unconscionable here." (*Id.* ¶ 9.)

Nissan moves to dismiss Plaintiffs' claims for breach of express warranty arguing that transmission problems requiring repair did not manifest until after the applicable time or mileage periods in the warranty had elapsed.

A threshold issue concerns the nature of the express warranty that Plaintiffs allege was breached.  In the Class Action Complaint, Plaintiffs allege that "Nissan expressly warranted that its dealerships would repair any defects in the powertrain (including the transmission) during the warranty period of 5 years or 60,000 miles, whichever came first." (Class Action Compl. ¶ 42.)  Nissan's Warranty Information Booklets for the years 2004-2006 provide that "[t]his warranty covers any repairs needed to correct defects in materials or workmanship of all parts and components of each new Nissan vehicle supplied by Nissan . . . ." (Healy Cert. Exs. A-C at 4.)  Thus, the express warranty is a warranty to repair defects in materials or workmanship during a fixed time and mileage period.

With this in mind, a review of the allegations in the Class Action Complaint demonstrates that Plaintiffs have generally alleged that transmission problems such as delayed shift patterns and slippage manifested during the warranty period. (*See* Class Action Compl. ¶¶ 56, 63-65, 75, 85, 97-99.)  However, only Plaintiffs Creel and Ebner make specific allegations that they sought transmission repairs from Nissan within the express

10

warranty period. (*Id.* ¶¶ 64-65, 97-99.)  While Plaintiffs Ebner and Abdullah did not seek repairs during the pendency of the warranty period, the Court does not find this fatal to their express warranty claims.  The Class Action Complaint alleges that Nissan knew that the vehicles had defective transmissions and failed to disclose this to Plaintiffs.  Further, Plaintiffs allege that they experienced symptoms of the alleged transmission defect prior to the expiration of the warranty.  In light of the fact that Plaintiffs allege that Nissan knew a defect covered under the warranty was present at the time of sale and that Plaintiffs allegedly experienced symptoms of the defect during the warranty period, the Court finds that Plaintiffs have sufficiently pled express warranty claims.

Moreover, the Court declines to apply the rule in *Abraham v. Volkswagen of America, Inc.*, 795 F.2d 238, 250 (2d Cir. 1986) to dismiss Plaintiffs' express warranty claims at this time because the allegations in the instant action indicate that the defect was not latent because the symptoms of the defect manifested prior to expiration of the express warranty.  The Court will therefore reserve judgment on the question of whether the transmission fails when it first exhibits symptoms of malfunction or whether failure requires complete inoperability.  *See Abraham v. Volkswagen of America, Inc.*, 795 F.2d 238, 250 (2d Cir. 1986)(noting that knowledge of the effective life of particular

11

vehicle components "is easily demonstrated by the fact that manufacturers must predict rates of failure of particular parts . . . in order to price warranties and thus can always be said to 'know' that many parts will fail after the warranty period has expired"); *see also Henderson v. Volvo Cars of N. Am.*, 2010 WL 2925913, at *9 (D.N.J. July 21, 2010)(holding that "a manufacturer's mere knowledge that a part will ultimately fail after the expiration of a warranty period is insufficient to provide a basis for a breach of warranty claim").

In further support of their breach of express warranty claims, Plaintiffs also argue that the 5 year/60,000 mile limit on the warranty is unconscionable.  In support, Plaintiffs contend that the warranty limit is procedurally unconscionable

> because of the uneven bargaining power of Nissan and the consumers that buy Nissan vehicles; because the warranty limit is presented to customers on a take-it-or-leave-it basis; because the warranty is not even provided to customers until after they purchase the vehicle; because the vehicles are purchased from Nissan dealerships which do not have authority to negotiate the terms of the warranty with customers; and because the warranty language is not prominent or conspicuous, but rather is buried within voluminous documentation given to customers after vehicle purchase.

(Class Action Compl. ¶ 46.)  The Plaintiffs also argue that the warranty period is substantively unconscionable because

> Nissan knowingly sold vehicles with the Transmission Problem, knowing that the Transmission Problem would frequently manifest

12

> just after the expiration of the warranty
> period, and that even when the Transmission
> Problem manifested before the expiration of
> the warranty period, Nissan dealerships could
> deny the existence of the problem until the
> warranty period expired.  Additionally Nissan
> knew about the Transmission Problem before the
> first vehicle with the Transmission Problem
> was sold, and knew with certainty that it
> would cause premature failure of the
> transmission.

(*Id.* ¶ 47.)

The Court finds these allegations insufficient to state a claim for unconscionability of the warranty limits.  First, there is nothing substantively unconscionable or unreasonable about a 5 year/60,000 mile warranty.  The cases relied on by Plaintiffs in which substantive unconscionability claims survived motions to dismiss are distinguishable.  *See In re Samsung DLP Television Class Action Litig.*, 2009 WL 3584352, at *1, 5 (D.N.J. Oct. 27, 2009)(denying motion to dismiss unconscionability claim with respect to a one year warranty on an HDTV); *Payne v. Fujifilm U.S.A., Inc.*, 2007 WL 4591281, at *3-5 (D.N.J. Dec. 28, 2007)(denying motion to dismiss unconscionability claim with respect to a one year warranty on a digital camera).  Moreover, Nissan's alleged knowledge of a transmission defect is an insufficient basis on which to find the warranty limit unconscionable.  *See Abraham v. Volkswagon of America, Inc.*, 795 F.2d 238, 250 (2d Cir. 1986); *Henderson v. Volvo Cars of N. Am., LLC*, 2010 WL 2925913, at *9 (D.N.J. July 21, 2010)(holding that a

car manufacturer's mere knowledge that a part will fail after the expiration of the warranty period is insufficient to make the time/mileage limitation unconscionable).

Second, the allegations of unequal bargaining power with respect to the terms of the warranty are also insufficient to state a claim for unconscionability. *See Alban v. BMW of North America, LLC*, 2011 WL 900114, at *9 (D.N.J. March 15, 2011)(allegations of gross disparity in bargaining power and that car purchaser had no meaningful choice in determining time and mileage limitation are insufficient to state a claim for unconscionability).

The Court further finds that Plaintiff Taplet has stated a claim for breach of express warranty.  Taplet alleges that she first began experiencing transmission problems not during the warranty period, but during the Service Agreement, which the Class Action Complaint refers to as a "warranty."  (*Id.* ¶¶ 84-92; Pls' Opp. at 5.)  Taplet's Service Agreement is issued by Nissan Extended Services North America, Inc. not Nissan North America, and expressly states that "THIS AGREEMENT IS NOT A WARRANTY, AN EXTENSION OF A NEW VEHICLE WARRANTY, OR AN IMPLIED OR GENERAL WARRANTY . . . ."  (Defs' Reply at Ex. E.)  While Defendant Nissan North America, Inc. does not appear to be a party to the Service Agreement, the Court declines to dismiss Taplet's express warranty claim at this time without discovery on the relationship

14

between Nissan Extended Services North America and Defendant Nissan North America.

Accordingly, Nissan's Motion to Dismiss will be granted with respect to all claims for unconscionability.  The Motion will be denied with respect to all claims for claims for breach of express warranty.

## B. Breach of Implied Warranty of Merchantability

As an initial matter, Plaintiffs are no longer pursuing breach of implied warranty claims under Illinois, California, or Ohio laws. (*See* Pls' Opp. at 11 n.12.)  Thus, the Court will limit its analysis to Plaintiff Creel's breach of implied warranty under Pennsylvania law and Plaintiff Abdullah's claim under New Jersey law.  Nissan moves to dismiss these claims arguing that (1) the vehicles were fit for their ordinary purpose because the transmissions did not need replacement until after expiration of the 60,000 mile express warranty; (2) the implied warranty of merchantability was conspicuously limited to the terms of the express warranty; and (3) the claims are barred by the statute of limitations.

"Pursuant to the implied warranty of merchantability, a merchant warrants that goods sold are fit for the ordinary purposes for which the goods are used."  *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, 2008 WL 4126264, at *19 (D.N.J. Sept. 3, 2008)(citing N.J. Stat. Ann. § 12A:2-314); *see also* 13

15

Pa. Cons. Stat. § 2314(b). "Merchantability does not mean that the goods are exactly as the buyer expected, but rather that the goods satisfy a minimum level of quality." *Sheris v. Nissan N. Am., Inc.*, 2008 WL 2354908, at *6 (D.N.J. June 2, 2008)(internal quotations and citation omitted); *see also Gall v. Allegheny Cty., Health Dept.*, 555 A.2d 786, 789-90 (Pa. 1989). As applied to cars, "the implied warranty of merchantability is simply a guarantee that they will operate in a safe condition and substantially free of defects [and, therefore,] where a car can provide safe, reliable transportation[,] it is generally considered merchantable." *Henderson v. Volvo Cars of N. Am., LLC*, 2010 WL 2925913, at *9 (D.N.J. July 21, 2010)(quoting *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 297 (4th Cir. 1989)).

Both Creel and Abdullah allege that they began experiencing transmission problems within the 5 year/60,000 mile period and that these problems caused slippage, hesitation and an unpredictable acceleration response. (*See* Class Action Compl. ¶¶ 5, 63-65, 75, 195.) Plaintiffs have further alleged that the Nissan factory maintenance schedules did not even require having the transmission fluids flushed or changed during the life of the vehicle, unless it was used for towing or driving through rough or muddy roads. (*Id.* ¶ 34.) At this stage in the litigation, viewing the allegations in the light most favorable to Plaintiffs, this Court finds that Plaintiffs Creel and Abdullah

16

have stated a claim for breach of the implied warranty of
merchantability.[6]  *See Henderson*, 2010 WL 2925913, at *9-10
(finding that allegations of slippage, hesitation, harshness and
unexpected transmission failure which rendered vehicles unfit for
the ordinary purpose of driving are sufficient to survive a
motion to dismiss); *Hornberger v. GMC*, 929 F.Supp. 884, 888
(E.D.Pa. 1996)(holding that allegations of transmission failure
at 40,000 miles and three years after leasing the vehicle is
sufficient to state a claim for breach of implied warranty of
merchantability).

In addition, the Court does not find Nissan's limitation of
the Implied Warranty of Merchantability to the terms of the

---

[6]  Given Plaintiffs' allegations of fraudulent concealment
of the alleged transmission problems by Nissan, and Creel's
allegations that he repeatedly brought the vehicle in for
transmission repairs even before the express warranty expired,
the Court will decline at this stage of the litigation to make a
determination regarding the timeliness of Plaintiffs' implied
warranty of merchantability claims.  While the statute of
limitations for such a claim is four years from the tender or
sale of the allegedly defective product and not from the time the
breach is discovered, *see* N.J.S.A. § 12A:2-725 and 13 Pa. C.S.A.
§ 2725(a),(b), New Jersey and Pennsylvania state courts have
recognized equitable tolling doctrines based on fraudulent
concealment and the so-called repair doctrine.  *See Amodeo v.
Ryan Homes, Inc.*, 595 A.2d 1232, 1237 (Pa. Super.
1991)(recognizing equitable tolling doctrine where repairs were
attempted; representations were made that the repairs would cure
the defects, and the plaintiff relied upon the representations);
*Simpson v. Widger*, 311 N.J. Super 379, 391 (App. Div.
1998)(noting that "the presence of fraud may toll the running of
the statute [of limitations]" for breach of warranty claims); *see
also Foodtown v. Sigma Mktg Sys., Inc.*, 518 F.Supp. 485, 488
(D.N.J. 1980).

express warranty, specifically the time/mileage limitation, fatal to Plaintiffs' claims.  Both Plaintiffs allege that the transmission problems began prior to the expiration of the express warranty period.  At the pleading stage, the Court finds sufficient allegations to support a plausible claim that Creel and Abdullah's vehicles failed to provide a minimum level of quality even prior to the expiration of the 5 year/60,000 mile period.

**C. Unjust Enrichment**

Nissan moves to dismiss Plaintiffs' unjust enrichment claims arguing that they are precluded by the express warranties, which control the relationship between the parties.  Plaintiffs respond that they are pursuing the unjust enrichment claims only in the alternative.  Further, Plaintiffs also do not oppose dismissal of Abdullah's unjust enrichment claim under New Jersey law on the basis of New Jersey's privity requirement.[7]  Because a complaint may seek relief in the alternative, at this stage of the litigation, the Court finds it improper to dismiss Plaintiffs' unjust enrichment claims under California, Pennsylvania, Ohio and Illinois state law.

**D. State Consumer Protection Claims**

---

[7]  The Court notes that while unjust enrichment is not an independent cause of action under California law, see *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (Cal. App. 2004), because other claims under California law survive this motion, the Court will not dismiss the unjust enrichment claim on this basis.

As an initial matter, Nissan moves to dismiss Plaintiffs'
state law consumer protection claims on the basis that the
allegations do not satisfy the heightened pleading standard of
Fed. R. Civ. P. 9(b).

Under Fed. R. Civ. P. 9(b), "[i]n alleging fraud or mistake,
a party must state with particularity the circumstances
constituting fraud or mistake."  A plaintiff must state the
circumstances of the alleged fraud "with sufficient particularity
to place the defendant on notice of the 'precise misconduct with
which [it is] charged.'"  *Frederico v. Home Depot*, 507 F.3d 188,
200 (3d Cir. 2007)(citing *Lum v. Bank of Am.*, 361 F.3d 217, 223-
24 (3d Cir. 2004).  "To satisfy this standard, the plaintiff must
plead or allege the date, time and place of the alleged fraud or
otherwise inject precision or some measure of substantiation into
a fraud allegation."  *Id.*

Plaintiffs' fraud claims are based on Nissan's failure to
disclose the alleged transmission defects to consumers.  The
Class Action Complaint specifically alleges the material
information Nissan knew and withheld from consumers.  (Class
Action Compl. ¶¶ 1-2, 8-9, 33, 154, 190.)  Plaintiffs further
allege that Nissan possessed exclusive knowledge of information
about the problem, (*id.* ¶¶ 2, 38-39, 41, 105-06); the materiality
of that information (*id.* ¶¶ 4-6, 10, 56, 63, 76, 85, 97, 134,
153); Plaintiffs' reliance on the materiality of the non-

disclosed information (*id.* ¶¶ 49-50, 122, 134); and damages, *(id.* ¶¶ 4, 7, 10, 48, 52, 58-59, 70, 79, 90, 102-03, 124, 196). Courts have held similar allegations to be sufficient to satisfy Fed. R. Civ. P. 9(b). *See, e.g., Maniscalo v. Brother Int'l Corp.*, 627 F.Supp.2d 494, 500 (D.N.J. 2009); *Harper v. LG Elecs. USA, Inc.*, 595 F.Supp.2d 486, 491 (D.N.J 2009); *Dewey v. Volkswagen LG*, 558 F.Supp.2d 505, 527-28 (D.N.J. 2008). The Court finds Plaintiffs' pleadings with regard to their omission-based fraud claims sufficient to satisfy the Rule 9(b) standard. The Court will next consider Nissan's specific arguments with regard to the state consumer protection claims.

### 1. New Jersey Consumer Fraud Act

To state a claim under the New Jersey Consumer Fraud Act ("NJCFA"), a plaintiff must demonstrate (1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss. *Payan v. GreenPoint Mortg. Funding, Inc.*, 681 F.Supp.2d 564, 572 (D.N.J. 2010)(citing *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009).

In moving to dismiss Abdullah's NJCFA claim, Nissan essentially argues that Abdullah has not sufficiently alleged a knowing omission. In making such an argument, Nissan relies on *Perkins v. Daimlerchrysler Corp.*, 383 N.J. Super. 99 (App. Div. 2006). First, as noted above, the Court finds that the Amended

Class Action Complaint sufficiently alleges for the purpose of a motion to dismiss that Nissan knew and withheld from consumers information about the transmission failures. (Class Action Compl. ¶¶ 1-2, 8-9, 33, 154, 190.)

Second, the Court does not find the holding in *Perkins* instructive given key factual differences from the instant action.  The *Perkins* court affirmed dismissal of NJCFA claims stemming from a vehicle's allegedly faulty tubular steel exhaust manifold, holding that "the failure of manufacturer or seller to advise a purchaser that a part of a vehicle may breakdown or require repair after the expiration of the warranty period cannot constitute a violation of the [NJ]CFA."  383 N.J. Super. at 112. In reaching this conclusion, the *Perkins* court noted that plaintiff had failed to allege that the part created a danger to others or that the part actually required repair or replacement. *Id.* Here, however, the Complaint alleges that the transmission problems created a dangerous condition created by, inter alia, the vehicle's delayed and unpredictable acceleration response. (Class Action Compl. ¶¶ 5, 56, 76-77.)  Abdullah also alleges that he experienced total transmission failure and incurred charges of $1,200 to repair the problem.  (*Id.* ¶¶ 77-79.)

Because the Court finds that Abdullah has stated a claim for relief pursuant to the NJCFA, Nissan's motion to dismiss this claim will be denied.

21

## 2. California Consumer Protection Claims

### i.  Consumer Legal Remedies Act ("CLRA") claim

The CLRA prohibits specified "unfair methods of competition and unfair or deceptive acts or practices" in transactions for the sale or lease of goods to consumers.  Cal. Civ. Code § 1770(a).  Plaintiffs allege that Nissan violated the CLRA by "knowingly and intentionally concealing from Plaintiffs and class members that the class vehicles suffer from a design defect . . . ."  (Class Action Compl. ¶ 128.)  For an alleged omission to be actionable under the CLRA "the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose."  *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835 (Cal. App. 2006).  Under California law, absent an unreasonable risk to personal safety, a manufacturer is not liable under the CLRA for failing to disclose a defect that manifests itself after expiration of the express warranty period. even if the manufacturer knows about the defect.  *Id.* at 835.

Nissan moves to dismiss Nelson's CLRA claim arguing that she has failed to allege (1) a defect that manifested during the warranty period and (2) a defect posing an unreasonable risk to personal safety.  The Court does not agree.  Viewing the allegations in the Class Action Complaint in the light most favorable to Plaintiffs, the Court finds that Nelson has alleged

a defect posing an unreasonable risk to personal safety, and one
which first manifested prior to the expiration of the express
warranty.  (*See* Class Action Compl. ¶¶ 56, 5.)

The Court further finds Nissan's arguments that Nelson lacks
standing to bring a claim for fraudulent non-disclosure of a
defect unavailing.  Nissan argues that Nelson has failed to plead
that she experienced an unreasonable risk to personal safety, or
suffered a personal injury as a result of the defect or that she
was unable to stop her vehicle.  A review of the Class Action
Complaint indicates that Nissan's arguments are simply not
correct.  As noted *supra*, Nelson has pled that the transmission
defect posed an unreasonable risk to personal safety and that she
personally experienced the defect while operating her vehicle.

### ii. Unfair Competition Law ("UCL") claim

To prevail on a claim for a violation of the UCL, a
plaintiff must establish that defendant engaged in an unlawful,
unfair or fraudulent business practice.  See Cal. Bus & Prof.
Code § 17200, *et seq*.  With respect to an unlawful business
practice, the UCL "borrow violations of other law and treats them
as unlawful practices that the unfair competition law makes
independently actionable."  *Cel-Tech Comms., Inc. v. Los Angeles
Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (Cal. 1999).

Plaintiffs claim that Nissan violated the UCL by knowingly
and intentionally concealing a design defect.  Plaintiffs further

23

allege that Nissan had an affirmative duty to disclose the design defect and that Plaintiffs could not be reasonably expected to learn or discover the true facts related to the transmission defect.  (Class Action Compl. ¶ 133.)  Nissan moves to dismiss the UCL claim, arguing that Nelson has not sufficiently alleged an unlawful, unfair or fraudulent business practice.  The Court does not agree.

Here, as noted *supra*, Nelson has adequately pleaded claims for breach of warranty and under the CLRA.  Accordingly, an unlawful business practice under the UCL has been adequately alleged.  Because a plaintiff need only plead an unlawful, or unfair or fraudulent business practice to state a claim under the UCL, the Court need not consider at this time the sufficiency of Plaintiffs' allegations that Nissan also engaged in unfair and fraudulent business practices as well.  Accordingly, because Nelson has adequately alleged that Nissan engaged in an unlawful business practice, Nissan's motion will be denied.

### 3. Pennsylvania Consumer Fraud Claim

Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") prohibits "unfair methods of competition" or "unfair or deceptive acts or practices" in the conduct of trade or commerce.  73 Pa. Con. Stat. Ann. § 201-3. The statute creates a private right of action for persons upon whom unfair or deceptive acts or practices are employed and who,

as a result, suffer an ascertainable loss.  *Id.* § 201-9.2.  The
Class Action Complaint alleges that Nissan engaged in the
following unlawful practices under UTPCPL § 201-2(4):

> (v) Representing that goods or services have
> sponsorship, approval, characteristics,
> ingredients, uses, benefits or quantities that
> they do not have or that a person has a
> sponsorship, approval, status, affiliation or
> connection that he does not have;
>
> (vii) Representing that goods or services are
> of a particular standard, quality or grade, or
> that goods are of a particular style or model,
> if they are of another;
>
> (xiv) Failing to comply with the terms of any
> written guarantee or warranty given to the
> buyer at, prior to or after a contract for the
> purchase of goods or services is made; and
>
> (xxi) Engaging in any other fraudulent or
> deceptive conduct which creates a likelihood
> of confusion or of misunderstanding.

(Class Action Compl. ¶ 174); 73 Pa. Con. Stat. Ann. § 201-
2(4)(v), (vii), (xiv), (xxi).

Nissan moves to dismiss Creel's UTPCPL claim arguing that he
has failed to identify any representation that his transmission
would not require repair at 86,000 miles.[8]

---

[8]  Nissan also argues that Creel's claim is barred by the
economic loss rule.  The Court does not agree.  With respect to
the argument that this claim is barred by the economic loss rule,
the Court does not agree.  The economic loss doctrine "prohibits
plaintiffs from recovering in tort economic losses to which their
entitlement flowers only from a contract."  *Duquesne Light Co. v.
Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995).
"Where [a] plaintiff's only alleged damage is a diminution in the
value of a product plaintiff has purchased, Pennsylvania law says
that plaintiff's redress comes from the law of contract, not the

The Court finds that Creel has alleged a UTPCPL claim premised on a breach of warranty.  Creel specifically alleges that he brought his vehicle into Bowser Nissan complaining of transmission problems twice during the warranty period, and was told that nothing was wrong with the transmission.  (Class Action Compl. ¶¶ 64-65.)  For the purposes of a motion to dismiss, Creel has sufficiently alleged a colorable UTPCPL claim and Nissan's Motion to Dismiss will be denied.

### 4. Illinois Consumer Fraud Claim

To state a claim under the Illinois Consumer Fraud Act ("ICFA"), a plaintiff must allege "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception."  *Avery v. State Farm Mut. Auto Ins. Co.*, 835

---

law of tort."  *Stein v. Fenestra Am., LLC*, 2010 WL 816346, at *3 (E.D.Pa. Mar. 9, 2010).  Under the fraud exception, a plaintiff may recover in tort for purely economic losses where plaintiff alleges an intentional tort such as fraud.  *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 676 (3d Cir. 2002).  However, the Third Circuit, in predicting how the Pennsylvania Supreme Court would rule, limited the fraud exception and held that the economic loss doctrine applies to bar tort claims for purely economic loss even where plaintiff alleges an intentional tort such as fraud, if the misrepresentation relates to the quality of goods sold.  *Id.* at 677.  Here, however, Creel's UTPCPL claim is not based in tort, but rather is premised on a breach of warranty claim.  Thus, the economic loss rule is not implicated.

N.E.2d 801, 856 (Ill. 2005).

Nissan moves to dismiss Taplet's ICFA claim, arguing that the allegations fail to show that Nissan knew of the alleged transmission defect prior to the time of Taplet's purchase.  A review of the allegations in the First Amended Class Action Complaint indicates that Plaintiffs have alleged generally that Nissan was aware of the transmission defect prior to Taplet's purchase. (Compl. ¶ 47.)  However, the Complaint also refers to specific customer complaints that were made prior to Taplet's purchase.  (*Id.* ¶ 106.)  Viewing the allegations in the light most favorable to Plaintiffs, the Court finds that Taplet has stated an ICFA claim.  Accordingly, Nissan's Motion to Dismiss will be denied.

### 5. Ohio Consumer Protection Claims

Ebner brings claims under the Ohio Consumer Sales Practices Act ("OCSPA") and the Ohio Deceptive Trade Practices Act ("ODTPA").  The Court will consider each in turn.

#### i. OCSPA Claim

The OCSPA prohibits suppliers from committing either unfair or deceptive consumer sales practices or unconscionable acts or practices.  *See* Ohio Rev. Code Ann. § 1345.  The OSCPA "defines unfair or deceptive consumer sales practices as those that mislead consumers about the nature of the product they are receiving, whule unconscionable acts or practices relate to a

supplier manipulating a customer's understanding of the nature of the transaction at issue." *McKinney v. Bayer Corp.*, 744 F.Supp.2d 733, 742-43 (N.D. Ohio 2010).

Nissan moves to dismiss Plaintiff Ebner's OSCPA claim arguing that she has failed to allege that Nissan's conduct was previously declared deceptive or unconscionable in an administrative rule or judicial decision, as required by OSCPA jurisprudence when such a claim is brought on behalf of a class. A review of the allegations in the Class Action Complaint indicates that Plaintiff Ebner has alleged that Nissan acted in the face of prior notice that its conduct was deceptive, unfair or unconscionable. (Class Action Compl. ¶ 171.) Further, in their opposition brief, Plaintiffs cite several judicial decisions that have sustained OCSPA claims where a manufacturer made similar material omissions and misrepresentations regarding a product. (*See* Pls' Opp. Br. at 35.) Accordingly, the Court will deny Nissan's motion to dismiss the OSCPA claim.

### ii. ODTPA Claim

The ODTPA proscribes certain "deceptive trade practices" which create a likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services. Ohio Rev. Code § 4165.02(A)(1)-(2). The statute confers standing on persons injured by deceptive trade practices and defines a person as an "individual, corporation, government .

. . or any other legal or commercial entity."  *Id.* §
4165.03(A)(1)-(2), § 4165.01(D).

Nissan moves to dismiss Ebner's ODTPA claim arguing that as
an individual consumer she lacks standing to sue.  The Court
notes that this is an unsettled question of state law and in the
absence of guidance from the Ohio Supreme Court, other courts are
split on whether ODTPA governs only conduct between commercial
entities as opposed to conduct between a commercial entity and a
consumer.  *See McKinney v. Bayer Corp.*, 744 F.Supp.2d 733, 749-50
(N.D. Ohio 2010)(collecting cases).

The leading case on this issue from the Ohio appellate court
affirms the well-established rule that Ohio courts look to the
federal Lanham Act when interpreting claims under the ODTPA.
*Dawson v. Blockbuster, Inc.*, 2006 WL 1061769, at *3 (Ohio App.
Ct. Mar. 16, 2006).  In reliance on the fact that the Lanham Act
denies standing to consumers and that Ohio courts apply the same
analysis to the ODTPA, the *Dawson* court went on to affirm the
trial court's dismissal of an individual plaintiff's ODTPA claim.
*Id.* at *4.  However, the plaintiff in *Dawson* was neither a
commercial entity nor a consumer, since the goods at issue were
given to him as a gift.  *Id.*  In contrast to the *Dawson* holding,
the Southern District of Ohio relied on the statutory language of
the ODTPA to find that an individual person could maintain a
cause of action.  *Bower v. Int'l Bus. Machines, Inc.*, 495

F.Supp.2d 837, 842 (S.D. Ohio 2007).

In the absence of clear guidance from the Ohio Supreme Court and in light of the conflicting case law on the issue and the plain statutory language, this Court will decline to dismiss Ebner's ODTPA claim on the basis of standing at this time.

**IV.**

For the foregoing reasons, Nissan's Motion to Dismiss will be granted in part and denied in part.  Nissan's Motion to Dismiss will be granted with respect to (1) all claims for unconscionability; (2) Nelson, Taplet and Ebner's claims for breach of implied warranty of merchantability; and (3) Abdullah's unjust enrichment claim under New Jersey law.

The Motion will be denied with respect to (1) all claims for breach of express warranty; (2) Creel and Abdullah's claim for breach of implied warranty of merchantability; (3) Creel, Nelson, Taplet and Ebner's unjust enrichment claims; (4) Abdullah's claim pursuant to the NJCFA; (5) Nelson's claims pursuant to the CLRA and UCL; (6) Creel's claim pursuant to the UTPCPL; (7) Taplet's claim pursuant to the ICFA; Ebner's claims pursuant to the OCSPA and ODTPA.

An appropriate order will be issued.


Dated: September 6, 2012

                                    ___s/Joseph E. Irenas___
                                    **JOSEPH E. IRENAS, S.U.S.D.J.**

                                    30