## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| TAMEKA NELSON, RICHARD CREEL, KARIM ABDULLAH, RUTH TAPLET, and NANCY EBNER individually and on behalf of all others similarly situated, | ) ) ) ) ) ) | No.  1:11-cv-05712-JEI-AMD |
| Plaintiffs, | ) ) | **CLASS ACTION** |
| vs. | ) ) ) | |
| NISSAN NORTH AMERICA, INC., a California corporation; NISSAN MOTOR COMPANY LTD., a Japanese Company, NISSAN EXTENDED SERVICES NORTH AMERICA, GP, a Tennessee partnership, | ) ) ) ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) ) ) | |

---

## PLAINTIFFS' REDACTED MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION

---

Michael A. Caddell
Cynthia B. Chapman
Cory S. Fein
CADDELL & CHAPMAN, P.C.
1331 Lamar, Suite 1070
Houston TX 77010

Joseph G. Sauder
Matthew D. Schelkopf
Benjamin F. Johns
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford PA 19041

H0036425.

## **TABLE OF CONTENTS**

I.    SUMMARY OF ARGUMENT .........................................................1

II.    FACTUAL BACKGROUND............................................................5

III.    PROCEDURAL HISTORY ...........................................................14

IV.    ARGUMENT.................................................................................17

    A.    THE PROPOSED CLASSES AND CLAIMS....................................17

    B.    APPLICABLE LEGAL STANDARDS ...........................................19

    C.    THE RULE 23 REQUIREMENTS ARE SATISFIED. ....................20

        1.    The Rule 23(a) Requirements Are Satisfied. ............20

            a.    Numerosity .......................................................20

            b.    Commonality ...................................................22

            c.    Typicality........................................................24

            d.    Adequacy of Representation..........................25

                1.    Class Counsel Are Adequate................................25

                2.    Plaintiffs Are Adequate Class Representatives.....................................29

            e.    Ascertainbility.................................................30

    D.    THE RULE 23(B)(3) REQUIREMENTS ARE SATISFIED. ..........31

        1.    Predominance........................................................33

        2.    Superiority.............................................................37

V.    CONCLUSION............................................................................40

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*A & L Indus. v. P. Cipollini, Inc.*,
No. 12-07598, 2013 U.S. Dist. LEXIS 142463
(D.N.J. Oct. 2, 2013)........................................................................25

*A & L Indus. v. P. Cipollini*,
No. 12-07598 (SRC), 2013 U.S. Dist. LEXIS 142463
(D.N.J. Oct. 2, 2013)........................................................................39

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)..........................................................................33

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
133 S. Ct. 1184 (2013)......................................................................37

*Baby Neal v. Casey*,
43 F.3d 48 (3d Cir. 1994) .................................................................23

*Barden v. Hurd Millwork Co.*,
249 F.R.D. 316 (E.D. Wis. 2008) .....................................................25

*Butler v. Sears, Roebuck & Co.*,
727 F.3d 796 (7th Cir. 2013), *cert. denied* 134 S. Ct. 1277 (2014) .............39

*Carnegie v. Household Int'l, Inc.*,
376 F.3d 656 (7th Cir. 2004) ...........................................................39

*Carrera v. Bayer Corp.*,
727 F.3d 300 (3d Cir. 2013) (May 2, 2014) ....................................30

*Daffin v. Ford Motor Co.*,
458 F.3d 549 (6th Cir. 2006) ...........................................................37

*Dal Ponte v. Am. Mortg. Express Corp.*,
No. 04-2152 (JEI), 2006 U.S. Dist. LEXIS 57675,
(D.N.J. Aug. 17, 2006) ..........................................................*passim*

*Davis v. Kraft Foods N. Am.*,
  No. 03-6060, 2006 U.S. Dist. LEXIS 3512,
  (E.D. Pa. Jan. 31, 2006) ..............................................................25

*Donachy v. Playground Destination Props., Inc.*,
  No. 10-4038 (RMB/KMW), 2013 U.S. Dist. LEXIS 101178
  (D.N.J. Jul. 19, 2013) ..................................................................28

*Ebin v. Kangadis Food, Inc.*,
  No. 13-2311, 2014 U.S. Dist. LEXIS 25838,
  (S.D.N.Y. Feb. 24, 2014) .............................................................34

*Gates v. Rohm & Haas Co.*,
  265 F.R.D. 208 (E.D.Pa. 2010) ......................................................4

*Gates v. Rohm & Haas Co.*,
  No. 06-1743, 2010 U.S. Dist. LEXIS 20343,
  (E.D. Pa. Mar. 5, 2010) ...............................................................19

*Glazer v. Whirlpool Corp. (In re Whirlpool Corp. Front-Loading
  Washer Prods. Liab. Litig.)*,
  722 F.3d 838 (6th Cir. 2013) .......................................................31

*Henderson v. Volvo Cars of N. Am., LLC*,
  No. 09-4146 (CCC), 2013 U.S. Dist. LEXIS 46291,
  (D.N.J. Mar. 22, 2013) ............................................................24, 35

*Henderson v. Volvo Cars of N. Am., LLC*,
  No. 09-4146 (DMC) (JAD), 2010 U.S. Dist. LEXIS 73624
  (D.N.J. July 21, 2010) .................................................................26

*In re Bulk [extruded] Graphite Prods. Antitrust Litig.*,
  No., 02-6030 (WHW), 2006 U.S. Dist. LEXIS 16619,
  (D.N.J. Apr. 4, 2006) ............................................................19, 32

*In re Checking Account Overdraft Litig.*,
  No. 1:09-MD-02036-JLK (S.D. Fla.) ............................................28

*In re DVI Inc. Sec. Litig.*,
    249 F.R.D. 196 (E.D. Pa. 2008) ....................................................................33

*In re DVI, Inc. Secs. Litig.*,
    639 F.3d 623 (3d Cir. 2011) ...............................................................32–33

*In re Elec. Books Antitrust Litig.*,
    No. 11 MD 2293, 2014 U.S. Dist. LEXIS 42537,
    (S.D.N.Y. Mar. 28, 2014) ..............................................................................30

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,
    256 F.R.D. 82 (D. Conn. 2009) ....................................................................32

*In re Hydrogen Peroxide Antitrust Litig.*,
    552 F. 3d at 311 (3d Cir. 2008) ....................................................................19

*In re K-Dur Antitrust Litig.*,
    686 F.3d 197 (3d Cir. 2012) ..........................................................................19

*In re OSB Antitrust Litig.*,
    No. 06-826, 2007 U.S. Dist. LEXIS 56584,
    (E.D. Pa. Aug. 3, 2007) ........................................................20, 22, 24–25

*In re Philips/Magnavox TV Litig.*,
    No. 09-3072 (CCC), 2012 U.S. Dist. LEXIS 67287,
    (D.N.J. May 14, 2012) ....................................................................................26

*In re Prudential Ins. Co. Sales Litig.*,
    148 F.3d 283 (3d Cir. 1998) ..........................................................................22

*In re Zurn Pex Plumbing Prod. Liab. Litig.*,
    644 F.3d 604 (8th Cir. 2011) ........................................................................37

*In re: Navistar 6.0 L Diesel Engine Products Liability Litigation*,
    No. 1:11-cv-02496 (N.D. Ill.) ......................................................................27

*Kalow & Springut, LLP v. Commence Corp.*,
    272 F.R.D. 397 (D.N.J. 2011) .........................................................................4

*Kalow & Springut, LLP v. Commence Corp.*,
  No. 07-3442 (JEI/AMD), 2012 U.S. Dist. LEXIS 173785,
  (D.N.J. Dec. 7, 2012) .....................................................................................34

*Keegan v. Am. Honda Motor Co., Inc.*,
  284 F.R.D. 504 (C.D. Cal. 2012) *leave to appeal denied,*
  12-80138, 2012 WL 7152289 (9th Cir. Nov. 9, 2012)...................................28

*Krell v. Prudential Ins. Co. of Am. (In re Prudential Ins. Co. Am.*
  *Sales Practice Litig. Agent Actions)*,
  148 F.3d 283 (3d Cir. 1998) ..........................................................................38

*Maniscalco v. Brother Int'l (USA) Corp.*,
  709 F.3d 202 (3d Cir. 2013) ..........................................................................17

*Murray v. Sullivan*,
  132 S. Ct. 1876 (2012)....................................................................................33

*Neale v. Volvo Cars of N. Am., LLC*,
  No. 2:10-cv-4407(DMC)(MF), 2013 U.S. Dist. LEXIS 43235,
  (D.N.J. Mar. 26, 2013)....................................................................................23

*Nelson v. Nissan N. Am., Inc.,*
  894 F. Supp. 2d 558 (D.N.J. 2012).................................................................15

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  259 F.3d 154 (3d Cir. 2001) ..........................................................................24

*Ritti v. U-Haul Int'l., Inc.*,
  05-4182, 2006 U.S. Dist. LEXIS 23393,
  (E.D. Pa. Apr. 26, 2006) ................................................................................29

*Rodriguez v. Nat'l City Bank*,
  726 F.3d 372 (3d Cir. 2013) ..........................................................................35

*Saunders v. Berks Credit & Collections, Inc.*,
  No. 00-3477, 2002 U.S. Dist. LEXIS 12718,
  (E.D. Pa. July 11, 2002)..................................................................................20

*Stewart v. Abraham*,
   275 F.3d 220 (3d Cir. 2001) ..........................................................................20

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011) ..........................................................................33

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011)............................................................................19, 22

*Whirlpool Corp. v. Glazer*,
   134 S. Ct. 1277 (2014)...................................................................................31

*Wiesfeld v. Sun Chem. Corp*.,
   84 F. App'x 257 (3d Cir. 2004) ......................................................................4

*Williams v. Pressler & Pressler, LLP*,
   No. 11-7296, 2013 U.S. Dist. LEXIS 139643,
   (D.N.J. Sept. 27, 2013) .................................................................................33

*Wilson v. County of Gloucester*,
   256 F.R.D. 479 (D.N.J. 2009) .......................................................................38

*Wolin v. Jaguar Land Rover North America*,
   617 F.3d 1168 (9th Cir. 2010) ......................................................................36

*Yamada v. Nobel Biocare Holding*,
   275 F.R.D. 573 (C.D. Cal. 2011).................................................................37

## <u>RULES</u>

FED. R. CIV. P. 23 ................................................................................*passim*

# I.   SUMMARY OF ARGUMENT

This case concerns a defectively designed 5-speed, automatic transmission that has been used in ███████ Nissan Maxima vehicles (model years ("MY") 2004–06) that were sold throughout the United States, including in each of the five Class States[1] (the "Class Vehicles").[2]  The Class Vehicles were sold and warrantied by Defendant Nissan North America, Inc. ("Nissan N.A."), and designed by Nissan's Japanese parent company, Nissan Motor Company Ltd ("Nissan Japan").  Extended warranty contracts for these vehicles were sold by another Nissan subsidiary, Defendant Nissan Extended Services North America, GP ("NESNA").  As used herein, "Nissan" shall refer to Defendants Nissan N.A. and NESNA.[3]

The design defect that plagues the Class Vehicles invariably subjects their transmissions to the "harsh shift" defect recognized by Defendants.[4]  The nature of

---

[1]  The Class States are New Jersey, California, Pennsylvania, Illinois and Ohio.

[2]  The "Class Vehicles" for which Plaintiffs seek class certification is different from how that phrase was defined in the Complaint; it has been narrowed to exclude Nissan Altima (MY 2005–06), and Quest (MY 2004–07) vehicles.  As discussed below, each of the Plaintiffs and proposed Class representatives purchased a Class Vehicle as that term is used herein.

[3]  Plaintiffs seek certification only as to Nissan and NESNA.  NESNA is included as a Defendant because it breached its extended service warranties.  In March 2013, Plaintiffs dismissed Nissan-Japan (D.E. # 71).

[4]  An automatic transmission, like those used in the Class Vehicles, is designed to shift smoothly between gears as the vehicle speeds up or slows down.  Shift shock is the failure of the transmission to shift smoothly between gears, often resulting in the driver experiencing a "shocking" and/or "slamming" sensation as if rear-ended

the defect has been confirmed by the extensive party and third-party discovery

conducted in this case. ████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████

       ████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████

---

by another vehicle.  When shift shock manifests in a vehicle, it presents a serious
safety issue as the vehicle lags and/or slips, in some instances not able to move at
all under its own power, when it attempts to shift into the correct gear and, instead,
remains in too low or too high of a gear, despite the driver's attempt to accelerate
or decelerate. This shift failure, combined with the slamming and/or shocking
feeling, presents a serious safety issue for operators of the vehicle and its
passengers.

[5] ████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████
█████████████████████████████████████████
███████████

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

---

[6] *See* Schelkopf Dec., Exhibit 14, Aisin AW Co., Ltd. Quality Assurance Department's May 18, 2009 Report (NML000083–102); and Exhibit 2 (Leshner Report) at 13–14.

[7] *See* Schelkopf Dec., Exhibit 14 at AWTEC0026020.

[8] *See* Schelkopf Dec., Exhibit 14 at NNA010244.

[9] [REDACTED]



---

[10] The operative Complaint in this case is Plaintiffs' Second Amended Complaint, filed on May 6, 2013 (Dkt. 77). In the year since this filing, Plaintiffs have conducted extensive discovery, investigation and consultation with experts and, as a result, revised their class definitions. *See supra* n.2. Accordingly, Plaintiffs' proposed classes differ from those described in their most recent Complaint. A plaintiff is not bound by the class definition in its complaint and the court can consider revised class definitions proposed in a motion for class certification. *Kalow & Springut, LLP v. Commence Corp.*, 272 F.R.D. 397, 401–02 (D.N.J. 2011) *on reconsideration in part*, Case No. 07-3442 FLW, 2011 WL 3625853 (D.N.J. Aug. 15, 2011). *See also Wiesfeld v. Sun Chem. Corp.*, 84 F. App'x 257, 259 (3d Cir. 2004) (same); and *Gates v. Rohm & Haas Co.*, 265 F.R.D. 208, 215 n.10 (E.D.Pa. 2010) (same).

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████

## II.  FACTUAL BACKGROUND

████████████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████ ██ ████████████████████████

██████████████████████████████████████████ ██ █

---

[11]  Schelkopf Dec., Exhibit 2 (Leshner Report) at 7.
[12] █████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████████





[15] *Id.* at NNA10244.

[16] Schelkopf Dec., Exhibit 2 (Leshner Report) at 5–6.

H0036425.





---

[17]  Schelkopf Dec., Exhibit 14 at NML000085, 88.
[18]  *Id.* at NML000088, 91, 92.
[19]  *Id.* at NML000093, 95.



[20] *Id*. at NML000094.

[21] *Id*. at NML000090.

[24] *See* Schelkopf Dec., Exhibit 2 (Leshner Report).



---

[25] Schelkopf Dec., Exhibit 2 (Leshner Report) at 14–18.

[26]

[27] Schelkopf Dec., Exhibit 2 (Leshner Report) at 18–19.

[28] Schelkopf Dec., Exhibit 14, Aisin AW Co., Ltd. Quality Assurance Department's May 18, 2009 Report (NML000083–102); and Schelkopf Dec., Exhibit 2 (Leshner Report) at 18–19.

[29] *Id.*

[30]



[33] Schelkopf Dec., Exhibit 2 (Leshner Report) at 14–18.

H0036425.



[36] *Id.* at NNA010144.

███████████ ████████████████████████████████

██████████████████████████████████████████████

███████████████████ ███████████████████████████

█████████████████████████████████████████

█████████████████████████

        ████████████████████████████████████████

████████████████████████████████████████████

████████████████████ █ ██████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████ █ ██████████████████████████████

--------

[37] *Id.*

[38] *Id.* at AWTEC0005007.

[39] Schelkopf Dec., Exhibit 2 (Leshner Report) at 3.



[41] *See* n.39, *supra*.



### III.    <u>PROCEDURAL HISTORY</u>

Defendant Nissan N.A. filed a motion to dismiss Plaintiffs' initial complaint, which was argued before this Court on September 4, 2012. (Dkt. 43.)  On



September 7, the Court issued a Memorandum Opinion and Order that granted the motion in part, and denied it in part. *See Nelson v. Nissan N. Am., Inc.,* 894 F. Supp. 2d 558 (D.N.J. 2012). Specifically, the Court granted the motion to dismiss with respect to (1) all claims for unconscionability; (2) Tameka Nelson, Ruth Taplet and Nancy Ebner's claims for breach of implied warranty of merchantability (which were brought under Illinois, California and Ohio law[43]); and (3) Karim Abdullah's unjust enrichment claim under New Jersey law. *See* (Dkt. 45).

However, the Court denied the motion to dismiss as to (1) all claims for breach of express warranty (*i.e*., under the laws of California, Pennsylvania, New Jersey, Illinois and Ohio); (2) Richard Creel and Karim Abdullah's claim for breach of implied warranty of merchantability (under New Jersey and Pennsylvania law); (3) Richard Creel, Tameka Nelson, Ruth Taplet and Nancy Ebner's unjust enrichment claims (under Pennsylvania, California, Illinois and Ohio law); (4) Karim Abdullah's claim pursuant to the New Jersey Consumer Fraud Act ("NJCFA"); (5) Tameka Nelson's claims pursuant to the California Legal Remedies Act ("CLRA") and California Unfair Competition Law ("UCL"); (6) Richard Creel's claim pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"); (7) Ruth Taplet's claim pursuant to the

---

[43]  As the Court noted in its opinion, Plaintiffs were no longer pursuing breach of implied warranty claims for those states. *See Nelson*, 894 F. Supp. 2d at 566.

Illinois Consumer Fraud Act ("ICFA"); and (8) Ruth Ebner's claims pursuant to the Ohio Consumer Sales Practices Act ("OCSPA") and Ohio Deceptive Trade Practices Act ("ODTPA"). *See Nelson,* 894 F. Supp. 2d at 572–73.  In May 2013, Plaintiffs added NESNA as a Defendant.  (Dkt. 77.)  As discussed *infra*, Plaintiffs now seek class certification for certain of those state law claims that were sustained.

At bottom, Plaintiffs assert the same legal claims based on the same legal theories and same underlying facts against the same Defendants to remedy the same design defect.  They allege that the same exact components in the same cars are defective in the exact same way.  Plaintiffs will rely on common evidence to prove these claims, and the Court will be called upon to resolve common factual and legal questions.  As discussed below, numerous cases have recognized that class certification is warranted in cases involving a defectively designed product and a defendant's failure to disclose this material information and/or honor its warranty obligation to repair the defect.  For these reasons, and for those that follow, the proposed Classes should be certified.

# IV.   ARGUMENT

## A.   THE PROPOSED CLASSES AND CLAIMS

Plaintiffs seek to certify the following statewide classes pursuant to FED. R.

CIV. P. 23(a), 23(b)(3), and 23(c)(5):[44]

All persons or entities in New Jersey who are current or former owners and/or lessees of a Class Vehicle (the "New Jersey Class")

All persons or entities in California who are current or former owners and/or lessees of a Class Vehicle (the "California Class")

All persons or entities in Pennsylvania who are current or former owners and/or lessees of a Class Vehicle (the "Pennsylvania Class")

All persons or entities in Illinois who are current or former owners and/or lessees of a Class Vehicle (the "Illinois Class")

All persons or entities in Ohio who are current or former owners and/or lessees of a Class Vehicle (the "Ohio Class")

A proposed order granting class certification to these classes is submitted

herewith.

Alternatively, Plaintiffs seek certification of smaller "Warranty Classes,"

defined as those within the state-wide classes listed above who presented their

vehicles to Nissan dealerships (as evidenced by contemporaneous records

generated by a Nissan dealership) during the warranty period complaining of harsh

---

[44]  The laws of the plaintiffs' respective home states govern their claims.  *See Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 208–10 (3d Cir. 2013).

shift and were denied free repairs.  A proposed, alternative order granting class certification to the warranty classes is submitted herewith.

Consistent with the Court's September 7 Order, Plaintiffs seek to maintain the following claims on behalf of each of the statewide classes:

With respect to the New Jersey Class, Plaintiffs seek certification of their claims for breach of express warranty, breach of the implied warranty of merchantability, and violation of the NJCFA.

With respect to the California Class, Plaintiffs seek certification of their claims for breach of express warranty, violation of the CLRA and the UCL, and unjust enrichment.

With respect to the Pennsylvania Class, Plaintiffs seek certification of their claims for breach of express warranty, breach of the implied warranty of merchantability, and unjust enrichment.

With respect to the Illinois Class, Plaintiffs seek certification of their claims for breach of express warranty, violation of the ICFA, and unjust enrichment.

With respect to the Ohio Class, Plaintiffs seek certification of their claims for breach of express warranty, violation of the OCSPA and the ODTPA, and unjust enrichment.

H0036425.

18

Attached as Exhibit D is a chart setting forth the elements for each of Plaintiffs' claims.  The claims for each of the proposed state-wide classes are also summarized in the proposed orders submitted herewith.

**B.    APPLICABLE LEGAL STANDARDS**

While the class certification inquiry requires a "rigorous analysis," *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011), a district court has "broad discretion in determining whether to certify a class." *Gates v. Rohm & Haas Co.*, No. 06-1743, 2010 U.S. Dist. LEXIS 20343, at *11 (E.D. Pa. Mar. 5, 2010) (citations omitted).

In deciding a motion for class certification, a district court should only inquire into the merits of the case to the extent necessary to address the Rule 23 elements.  *See In re K-Dur Antitrust Litig.*, 686 F.3d 197, 222 (3d Cir. 2012) (citing *In re Hydrogen Peroxide Antitrust Litig.*, 552 F. 3d at 311–12 (3d Cir. 2008)).  That is, while a court may delve beyond the pleadings to determine whether the requirements for class certification are satisfied, *see In re Hydrogen Peroxide*, 552 F.3d at 316, this should not extend to a merits inquiry unrelated to class certification, and plaintiffs need not actually establish the validity of their claims at the certification stage.  *Id.  See also, In re Bulk [extruded] Graphite Prods. Antitrust Litig.*, No., 02-6030 (WHW), 2006 U.S. Dist. LEXIS 16619, at *13, *30 (D.N.J. Apr. 4, 2006) (same).  Because Plaintiffs have demonstrated that

the elements of FED. R. CIV. P. 23(a) and 23(b)(3) are met in this case, they

respectfully request that the Court grant class certification.

**C.    THE RULE 23 REQUIREMENTS ARE SATISFIED.**

To certify a class under FED. R. CIV. P. 23, the moving party must establish

each of the four requirements of Rule 23(a), and that the action qualifies for at least

one of the three types described in Rule 23(b).  *See* FED. R. CIV. P. 23(a)–(b).  As

discussed below, these criteria are met here.

**1.    The Rule 23(a) Requirements Are Satisfied.**

FED. R. CIV. P. 23(a) requires a party moving for class certification to

establish numerosity, commonality, typicality, and adequacy.

**a.    Numerosity**

In order to be certified, the class must be "so numerous that joinder of its

members is impracticable."  *In re OSB Antitrust Litig.*, No. 06-826, 2007 U.S. Dist.

LEXIS 56584, at *5 (E.D. Pa. Aug. 3, 2007).  "Generally, if the named plaintiff

demonstrates the potential number of plaintiffs exceeds 40, the numerosity

requirement of Rule 23(a) has been met."  *Id.*  (citations omitted).  *See also,*

*Stewart v. Abraham,* 275 F.3d 220, 226–27 (3d Cir. 2001).  "Satisfaction

of . . . numerosity, does not require evidence of the exact number or identification

of the members of the proposed class . . ."  *Saunders v. Berks Credit & Collections,*

*Inc.*, No. 00-3477, 2002 U.S. Dist. LEXIS 12718, at *16 (E.D. Pa. July 11, 2002).

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████ ████████████████

█████████████████████████████████

| ██████ | ████████ | █████████ | █████████ | ██████ |
|--------|----------|-----------|-----------|--------|
| ████████████ | ██████ | ██████ | ██████ | ██████ |
| ██████████ | ██████ | ██████ | ██████ | ██████ |
| ████████████ | ██████ | ██████ | ██████ | ██████ |
| █████████ | ██████ | ██████ | ██████ | ██████ |
| █████ | ██████ | ██████ | ██████ | ██████ |
| ████████ | ███████ | ████████ | ████████ | ██████ |

██████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████

█████████████████████████████

---

██ ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

### b.    Commonality

"Plaintiffs must also demonstrate that there are questions of law or fact common to the class." *In re OSB Antitrust Litig.*, 2007 U.S. Dist. LEXIS 56584, at *5.  "A finding of commonality does not require that all class members share identical claims, and factual differences among the claims of the putative class members do not defeat certification." *In re Prudential Ins. Co. Sales Litig.*, 148 F.3d 283, 310 (3d Cir. 1998).  According to the Supreme Court, Rule 23(a)(2)'s commonality requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011).  Both the majority and dissenting opinions in that case agreed that "for purposes of Rule 23(a)(2) even a single common question will do." *Id*. at 2556.

H0036425.                                        22

███████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████

This is more than sufficient to satisfy commonality.  Indeed, "[t]he Third Circuit has set a low bar for the commonality requirement . . ." *Dal Ponte v. Am. Mortg. Express Corp*., No. 04-2152 (JEI), 2006 U.S. Dist. LEXIS 57675, at *10, n.4 (D.N.J. Aug. 17, 2006).  "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.  Because the requirement may be satisfied by a single common issue, it is easily met. . . ." *Id*. at *9 (*citing Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)); *see also Neale v. Volvo Cars of N. Am*., LLC, No. 2:10-cv-4407(DMC)(MF), 2013 U.S. Dist. LEXIS 43235, at *25 (D.N.J. Mar. 26, 2013) (collecting cases), *appeal docketed,* No. 14-1540 (3d Cir. Mar. 6, 2014)  (common questions sufficient to satisfy Rule 23(a)(2) "include whether the sunroof drainage systems in the Class Vehicles are defective, whether Defendants knew of the defect but failed to disclose it to the Class, and whether the maintenance instructions were inadequate and/or uniformly deficient."); *Henderson v. Volvo Cars of N. Am., LLC*,

No. 09-4146 (CCC), 2013 U.S. Dist. LEXIS 46291, at \*12-13 (D.N.J. Mar. 22, 2013) ("Several common questions of law and fact exist in this case, including whether the transmissions in the Class Vehicles suffered from a design defect, whether Volvo had a duty to disclose the alleged defect, whether the warranty limitations on Class Vehicles are unconscionable or otherwise unenforceable, and whether Plaintiffs have actionable claims.").  Commonality is likewise met here.

### c.    Typicality

"Plaintiffs must show that the claims of the class representatives are typical of the claims of the class as a whole." *In re OSB Antitrust Litig.*, 2007 U.S. Dist. LEXIS 56584, at \*6.  "If the claims of the named plaintiffs and class members involve the same conduct by the defendant, typicality is established." *Inmates of the Northumberland County*, No. 08-cv-345, 2009 U.S. Dist. LEXIS 126479, at \*71 (M.D. Pa. Mar. 17, 2009) (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 259 F.3d 154, 183–84 (3d Cir. 2001)).

Here, each of the Plaintiffs purchased a Class Vehicle, suffered economic injuries as a result of the transmission defect, and have stated viable breach of express warranty claims.  As explained above, the transmission problem is the result of a uniform design defect which, by definition, is common to all of the Class Vehicles.  Plaintiffs and Class members are pursuing the same claims premised on the same theories based on the same alleged misconduct by Nissan.

Typicality is, therefore, present here.  *See A & L Indus. v. P. Cipollini, Inc.*, No. 12-07598, 2013 U.S. Dist. LEXIS 142463, at *9 (D.N.J. Oct. 2, 2013) (typicality satisfied where "the claims of all class members, named plaintiff included, arise from the 'same event or practice or course of conduct,'"); *Barden v. Hurd Millwork Co.*, 249 F.R.D. 316, 319 (E.D. Wis. 2008) (typicality met where the plaintiff's claim "turns on the same alleged defect and the same warranty as the claims of class members."); *Neale*, 2013 U.S. Dist. LEXIS 43235, at *29 (". . . typicality is readily satisfied here because Plaintiffs allege that Volvo uniformly did not disclose the design defect common to all of the Class Vehicles.").

### d.      Adequacy of Representation

Plaintiffs must also demonstrate that they will "fairly and adequately protect the interests of the class."  *In re OSB Antitrust Litig.*, 2007 U.S. Dist. LEXIS 56584 at *6 (citing FED. R. CIV. P. 23(a)(4)).  "This requirement has two components: 1) adequacy of class counsel, and 2) adequacy of the class representative."  *Davis v. Kraft Foods N. Am.*, No. 03-6060, 2006 U.S. Dist. LEXIS 3512, at *27 (E.D. Pa. Jan. 31, 2006).  Both requirements are satisfied here.

### 1.      *Class Counsel Are Adequate.*

"To meet the adequacy requirement, counsel must have the ability and incentive to represent the class vigorously."  *Davis*, 2006 U.S. Dist. LEXIS 3512, at *27.  The proposed Class Counsel consists of the law firm of Chimicles &

Tikellis LLP ("the Chimicles Firm") and Caddell & Chapman ("the Caddell Firm").[48]  The Chimicles Firm and the Caddell Firm both have extensive experience litigating automotive and other class action lawsuits on behalf of consumers.  *See* Schelkopf Dec., ¶¶ 33-36; Declaration of Cory Fein ("Fein Dec.") (attached hereto as Exhibit B), ¶¶ 7-13.  For example, the Chimicles Firm recently served as Lead Counsel in *Henderson v. Volvo Cars of North America LLC, et al.*, No. 2:09-CV-04146-CCC-JAD (D.N.J.), which was a class action lawsuit brought on behalf of over 90,000 purchasers and lessees of Volvo vehicles with defective automatic transmissions.  Schelkopf Dec, Exhibit 17.  After largely defeating Volvo's motion to dismiss,[49] the parties negotiated and agreed upon a nationwide settlement that provided substantial benefits to class members, and which received final approval in March 2013.  *Id.*  Additionally, Judge Cavanaugh appointed the Chimicles Firm as co-lead counsel for the certified classes in *Neale*,[50] and Judge Cecchi observed in another case that the firm has "experience litigating complex class actions and obtaining class action settlements in consumer protection cases. . ."[51]

---

[48]  FED. R. CIV. P. 23(c)(1)(B) requires a class certification order to appoint class counsel.

[49]  *Henderson v. Volvo Cars of N. Am., LLC*, No. 09-4146 (DMC) (JAD), 2010 U.S. Dist. LEXIS 73624 (D.N.J. July 21, 2010).

[50]  *See Neale*, 2013 U.S. Dist. LEXIS 43235, at *30.

[51]  *In re Philips/Magnavox TV Litig.*, No. 09-3072 (CCC), 2012 U.S. Dist. LEXIS 67287, at *16–17 (D.N.J. May 14, 2012) (granting final approval to a $4 million

The Caddell Firm also has a long track record of successfully representing consumers in class actions, including class actions involving defective vehicles. Most recently, in *In re Navistar Diesel Engine Products Liability Litigation MDL No.* 2223 (where Michael Caddell served as Lead Counsel, Cory Fein chaired the Discovery Committee and Cynthia Chapman chaired the Law Committee), Caddell & Chapman achieved a settlement on behalf of hundreds of thousands of consumers, which Professor William Rubenstein, a prominent class action expert and Harvard Law professor, described as "a terrific settlement providing significant value to the class easily warrant[ing] . . . final approval."[52] Further, prominent class-action expert Professor Geoffrey Miller attested: "I am familiar with the Lead Counsel, Caddell & Chapman, and consider the attorneys at that firm to be among the finest class action attorneys I have encountered in more than a quarter century of work in this area," "I know Counsel to be highly ethical attorneys," and "Lead Counsel, with the assistance of the Court, performed admirably."[53]  Also recently, in another matter involving defective automobiles, Caddell & Chapman achieved a settlement after prevailing on a motion to dismiss,

___

class action settlement on behalf of consumers whose flat screen televisions failed due to an alleged design defect).

[52]  Rubenstein Declaration, filed in *In re: Navistar 6.0 L Diesel Engine Products Liability Litigation*, No. 1:11-cv-02496 (N.D. Ill.), ECF Dkt. No. 278-7 at 2, May 15, 2013.

[53]  Miller Declaration, filed in *In re: Navistar 6.0 L Diesel Engine Products Liability* Litigation, No. 1:11-cv-02496 (N.D. Ill.), ECF Dkt. No. 278-10, May 15, 2013.

a motion for class certification, and an interlocutory appeal to the U.S. Court of Appeals for the Ninth Circuit Court. *See Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504 (C.D. Cal. 2012) *leave to appeal denied,* 12-80138, 2012 WL 7152289 (9th Cir. Nov. 9, 2012). Currently, Caddell & Chapman is serving as class counsel in multiple class actions involving allegations concerning defective automobiles.

It is also noteworthy that these two firms have worked closely and cooperatively together for several years on this and other consumer class action lawsuits. *See, e.g., In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK (S.D. Fla.) (the two firms were Team Leaders in the prosecution of a consumer class action against Comerica Bank, which resulted in a $14.5 million settlement). The Chimicles and Caddell Firms are also currently representing the plaintiffs and certified class in *Neale*, and the plaintiffs in *Donachy v. Playground Destination Props., Inc*. before Judge Bumb.[54]

The Chimicles and Caddell Firms have both invested considerable time and resources in prosecuting the instant case. Schelkopf Dec., ¶¶ 39-44; Fein Dec., ¶ 21 They have attended and defended all of the Plaintiffs' depositions, and have conducted depositions of Nissan witnesses, two depositions of Nissan's proposed experts, and three depositions of third party AWTEC designees. *Id.* They have the

---

[54]  *See Donachy v. Playground Destination Props., Inc*., No. 10-4038 (RMB/KMW), 2013 U.S. Dist. LEXIS 101178 (D.N.J. Jul. 19, 2013).

experience, ability, and incentive to continue to represent the Class vigorously and effectively, and respectfully request that they be appointed Class Counsel here.

### 2. *Plaintiffs Are Adequate Class Representatives.*

In addressing the adequacy of a proposed class representative, district courts examine whether he or she "has the ability and incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class." *Ritti v. U-Haul Int'l., Inc.*, 05-4182, 2006 U.S. Dist. LEXIS 23393, at *15 (E.D. Pa. Apr. 26, 2006).

The five Plaintiffs in this case—Tameka Nelson, Richard Creel, Karim Abdullah, Ruth Taplet and Nancy Ebner—are all adequate class representatives. Like the absent class members they seek to represent, each of them has purchased a Class Vehicle with a defective transmission and has been injured as a result of Nissan's conduct. They are also adequate representatives of the Warranty Class; this Court has already denied Nissan's motion to dismiss each of their claims for breach of express warranty. *See Nelson*, 894 F. Supp. 2d at 564-65.

Each of the Plaintiffs have also overseen the prosecution of this case, participated in meetings and worked closely with counsel, responded to Nissan's discovery requests, and were deposed by Nissan's attorneys. They have no

conflicts with members of the Class, and are committed to pursuing this case on its behalf.  Adequacy is, therefore, satisfied here.

###     e.        Ascertainbility

While not an explicit element of FED. R. CIV. P. 23(a), courts have also recognized a requirement that class members be ascertainable.  *Carrera v. Bayer Corp.*, 727 F.3d 300, 305–06 (3d Cir. N.J. 2013).  This requirement is readily satisfied here, as the class members can be identified from the records of Nissan (and in the case of the Warranty Classes, from the records of Nissan dealerships which refused to provide free repairs during warranty).[55]  *See Dal Ponte v. Am. Mortg. Express Corp.*, No. 04-2152 (JEI), 2006 U.S. Dist. LEXIS 57675, at *27 (D.N.J. Aug. 17, 2006) (". . . the proposed class members, while sufficiently numerous, are not indefinite or immense in number, and should be identifiable from the records of [the defendant]."); *In re Elec. Books Antitrust Litig.*, No. 11 MD 2293, 2014 U.S. Dist. LEXIS 42537, at *72 (S.D.N.Y. Mar. 28, 2014) (class ascertainable where "the parties have in their possession detailed transaction records . . ."); *Neale,* 2013 U.S. Dist. LEXIS 43235, at *14–15. *Cf.*, *Carrera,* 727 F.3d at 304, 311 (discussing ascertainbility issues that can arise with respect to



consumers that bought multi-vitamins for between $8.99 and $16.99 and were

unlikely to have retained a receipt).  Moreover, class membership is defined with

clear, objective criteria.  *See, Glazer v. Whirlpool Corp. (In re Whirlpool Corp.*

*Front-Loading Washer Prods. Liab. Litig.)*, 722 F.3d 838, 844 (6th Cir. 2013)

(affirming district court's certification of a class "comprised of current Ohio

residents who purchased one of the specified Duets [washing machines] in Ohio

primarily for personal, family, or household purposes and not for resale, . . ."),

*cert. denied Whirlpool Corp. v. Glazer*, 134 S. Ct. 1277 (2014).  Along with each

of the other Rule 23(a) requirements, ascertainability is also satisfied here.

## D.   THE RULE 23(B)(3) REQUIREMENTS ARE SATISFIED.

Plaintiffs seek class certification under Rule 23(b)(3), which provides that

certification is appropriate where "the court finds that the questions of law or fact

common to class members predominate over any questions affecting only

individual members, and that a class action is superior to other available methods

for fairly and efficiently adjudicating the controversy."  FED. R. CIV. P. 23(b)(3).

These requirements of Rule 23(b)(3) are referred to as the "predominance" and the

"superiority" requirements.  The Rule further provides that the following factors

are pertinent to this analysis:

> (A)  the class members' interests in individually controlling the
>      prosecution or defense of separate actions;
> (B)  the extent and nature of any litigation concerning the controversy
>      already begun by or against class members;

    (C)  the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

    (D)  the likely difficulties in managing a class action.

FED. R. CIV. P. 23(b)(3)(A)–(D).

The Third Circuit has stated in the context of analyzing the predominance requirement that the "the task for plaintiffs at class certification is to demonstrate that the element of [the legal claim] is capable of proof at trial through evidence that is common to the class rather than individual to its members." *In re DVI, Inc. Secs. Litig.*, 639 F.3d 623, 630 (3d Cir. 2011) (quoting *Hydrogen Peroxide*, 552 F.3d at 311–12)). In other words, Rule 23(b)(3) does not require a plaintiff to actually *prove* their case on the merits at the class certification stage; rather, the inquiry is whether the elements of their claims "*may be proven* by evidence common to all class members." *In re Bulk [extruded] Graphite Prods. Antitrust Litig.*, 2006 U.S. Dist. LEXIS 16619, at *30 (emphasis supplied); *Accord*, *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 256 F.R.D. 82, 90 (D. Conn. 2009) (same; collecting cases). Plaintiffs have done so in this case with the proposed Trial Plan submitted herewith as Exhibit C. As noted above, Plaintiffs have also submitted a chart detailing all of the elements of each cause of action for which they seek certification as Exhibit D. Every one of Plaintiffs' claims will rise (or fall) based upon evidence common to the entire class.

### 1.    Predominance

"Predominance measures whether the class is sufficiently cohesive to warrant certification." *In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 207 (E.D. Pa. 2008).  It requires more than a common claim; rather, issues common to the class must predominate over individual issues.  *Neale*, 2013 U.S. Dist. LEXIS 43235, at *32.  While a district court should not "relax its certification analysis, or presume a requirement for certification is met," the Supreme Court has stated that the predominance requirement is "readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws . . ." *In re DVI, Inc. Secs. Litig.*, 639 F.3d at 629 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).

The Third Circuit's analysis of predominance in *Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011) (en banc), *cert. denied sub nom. Murray v. Sullivan*, 132 S. Ct. 1876 (2012) is instructive.  *Sullivan* recognized that "the focus of the predominance inquiry is on whether the <u>defendant's conduct</u> was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan,* 667 F. 3d at 298 (emphasis supplied).  Other courts have adopted this reading of *Sullivan* in the context of certifying contested litigation classes. *See Williams v. Pressler & Pressler, LLP*, No. 11-7296, 2013 U.S. Dist. LEXIS 139643, at *29 (D.N.J. Sept. 27, 2013) (focus of the

predominance inquiry "is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct.") (citing *Sullivan,* 667 F.3d at 298).[56]

Just as in *Williams* and in *Sullivan*, predominance is satisfied here because the proper focus is on Nissan's common conduct.  All of the claims asserted by Plaintiffs are based upon uniform defects in the transmission systems in the Class Vehicles sold by Nissan, and Nissan's uniform omissions about the same.  Because this necessarily focuses on the defendant's common conduct, predominance is satisfied. *See also, Kalow & Springut, LLP v. Commence Corp*., No. 07-3442 (JEI/AMD), 2012 U.S. Dist. LEXIS 173785, at *12 (D.N.J. Dec. 7, 2012) (predominance was met where the same legal issue was presented—"*i.e.*, is [the defendant] liable under the NJCFA?"—and the suit focused on the defendant's common conduct as to class members); *Dal Ponte v. Am. Mortg. Express Corp*., No. 04-2152 (JEI), 2006 U.S. Dist. LEXIS 57675, at *25 (D.N.J. Aug. 17, 2006) ("Given the allegation that [defendant] engaged in an uniform pattern of improper conduct toward all proposed class members, common issues will predominate in the proof of these claims as well.").

---

[56]  *See also, Ebin v. Kangadis Food, Inc*., No. 13-2311, 2014 U.S. Dist. LEXIS 25838, at *6–7 (S.D.N.Y. Feb. 24, 2014) ("With respect to the New Jersey Subclass, an additional common issue is whether [the defendant] breached express warranties, breached the implied warranty of merchantability, and violated the New Jersey Consumer Fraud  Act . . . ") (Rakoff, J.).

Indeed, Judge Cecchi recently found predominance (and the other Rule 23

requirements) to be satisfied in a similar consumer class action involving

defectively designed transmissions in automobiles.  In pertinent part, the Court

observed that

> . . . the Class Members share common questions of law and fact, such
> as whether Volvo knowingly manufactured and sold defective
> automobiles without informing consumers.  Furthermore, liability in
> this case depends on Volvo's alleged conduct in manufacturing and
> selling the Class Vehicles.  <u>Evidence in the record supports the
> conclusion that common questions predominate over individual
> questions particular to any putative Class Member</u>.  Consequently, the
> predominance requirement is satisfied.

*Henderson v. Volvo Cars of N. Am., LLC*, No. 09-4146 (CCC), 2013 U.S. Dist.

LEXIS 46291, at *17–18 (D.N.J. Mar. 22, 2013) (emphasis supplied).  While that

observation was made in the context of a class action settlement, the Court's

analysis and conclusion are equally applicable here.[57]  Predominance is satisfied.

Plaintiffs' breach of warranty claims (and alternative unjust enrichment

claims) are also based on common issues.  The relevant provisions of Nissan's

---

[57]  The certification of a settlement class, like in *Henderson* and *Sullivan*, is also
subject to Rule 23's rigorous analysis.  *See Rodriguez v. Nat'l City Bank*, 726 F.3d
372, 380 (3d Cir. 2013) (". . . our policy in favor of voluntary settlement does not
alter the 'rigorous analysis' needed to ensure that the Rule 23 requirements are
satisfied.") (citations omitted); *Sullivan*, 667 F.3d at 335 ("The same analytical
rigor is required for litigation and settlement certification . . . .") (Scirica, J.,
concurring).

Limited Warranty are the same for all Class Vehicles.[58] ███████████

████████████████████████████████████The relevant

warranties all cover the Powertrain (including the transmission) contained in the

Class Vehicles for 5 years or 60,000 miles, and covers "any repairs needed to

correct defects in materials or workmanship."[59]  As with the Nissan original

warranty, the NESNA extended service agreement also requires "a Nissan dealer to

repair or replace all covered parts . . . due solely to defects in Nissan materials or

faulty workmanship . . ."[60]  Nissan cannot reasonably dispute that each member of

the proposed Class received the identical repair or replace warranty with its

purchase.  Accordingly, Plaintiffs' breach of express warranty claim hinges on

uniform allegations common to all Class Members:  Nissan breached its Limited

Warranty when it failed to properly repair the defective transmission common to

all Class Vehicles.  Predominance is easily satisfied in light of these core, common

issues.  *See Wolin v. Jaguar Land Rover North America*, 617 F.3d 1168, 1173–74

(9th Cir. 2010), *Yamada v. Nobel Biocare Holding*, 275 F.R.D. 573, 577, 580

(C.D. Cal. 2011) (finding breach of express warranty claims susceptible to

classwide proof); *see also In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d

---

[58]  *See* Schelkopf Dec., Exhibit 14 (2004 Warranty) at NNA2700, 03, 06–07; *id.*
(2005 Warranty) at NNA2648, 51, and 54; *id.* (2006 Warranty) at NNA002751, 56,
59–60.
[59]  *Id.*
[60]  (Dkt. 38-2 at ¶ 1).

604, 617 (8th Cir. 2011) (The interpretation and application of a warranty is a common question that lends itself to efficient class wide resolution under Rule 23.); *Daffin v. Ford Motor Co.*, 458 F.3d 549, 550 (6th Cir. 2006) (same).

███████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████████

███

### 2.    Superiority

Plaintiffs have also satisfied the superiority requirement of FED. R. CIV. P. 23(b)(3), which requires a court to consider whether "'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013) (*quoting* FED. R. CIV. P. 23(b)(3)).  This inquiry involves a balancing "'in terms of fairness and efficiency, the merits of a class action against those of alternative

available methods of adjudication.'" *Dal Ponte v. Am. Mortg. Express Corp.*, 2006 U.S. Dist. LEXIS 57675, at *26 (quoting *Krell v. Prudential Ins. Co. of Am. (In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions)*, 148 F.3d 283, 316 (3d Cir. 1998)).

A class action is considered to be superior where individual class members have little interest in individually controlling the prosecution or defense of separate actions because each has a very small claim relative to the cost of prosecuting a lawsuit. *See Wilson v. County of Gloucester*, 256 F.R.D. 479, 490 (D.N.J. 2009) ("The Court agrees that the nature of the claim asserted suggests that most individual litigants would not independently pursue their claims."). In this case, given the costs of experts alone, any given class member's expense to prosecute an individual transmission defect claim against Nissan would be significant, and would greatly exceed their actual damages. Consequently, *not* granting class certification here would, as a practical matter, effectively deny any relief to these Class members. As Judge Posner aptly observed, "[t]he realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013), *cert. denied* 134 S. Ct. 1277 (2014) (quoting *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004)).

In addition, resolving all claims of Plaintiffs and class members in a single proceeding allows for substantial economies of time, effort and expense for the litigants as well as the Court.  Judge Chesler recently stated—in an opinion certifying a Rule 23(b)(3) class—that "[d]etermining Defendant's liability in one proceeding results in substantial efficiency gains for the parties and the court system."  *A & L Indus. v. P. Cipollini*, No. 12-07598 (SRC), 2013 U.S. Dist. LEXIS 142463, at *17 (D.N.J. Oct. 2, 2013).

Finally, as far as the undersigned are aware, there are no other lawsuits currently pending against Nissan related to the transmission defect.  This also supports the conclusion that resolution of Plaintiffs' claims in this class action is superior.  *See Dal Ponte v. Am. Mortg. Express Corp.*, 2006 U.S. Dist. LEXIS 57675, at *26–27 (noting the lack of other lawsuits based on the same facts when finding superiority requirement was met).  The undersigned also do not foresee any practical difficulties in managing this case as a class action going forward.  *See Wilson*, 256 F.R.D. at 490.  Plaintiffs' Trial Plan, which sets forth a proposal for how these future proceedings may proceed, is submitted herewith as Exhibit C. Superiority is, accordingly, satisfied.

## V.     **CONCLUSION**

Judge Cavanaugh's observation from his opinion certifying the proposed

classes in *Neale* is apt:

> This is a classic example of a case that warrants class action.
> Plaintiffs seek to represent six statewide classes of Volvo purchasers
> or lessees whose individual damages may well be small enough to
> render individual litigation prohibitively expensive.

*Neale*, 2013 U.S. Dist. LEXIS 43235, at *34

This case, too, presents the classic example of a case that warrants class

certification.  For the foregoing reasons, Plaintiffs respectfully request that this

Court enter the proposed Order certifying the Classes, appointing Plaintiffs as the

Class representatives, and designating the Chimicles Firm and Caddell Firm as Co-

Lead counsel for the Classes.

DATED:  May 30, 2014               Respectfully submitted,

                          By:   /s/ Matthew D. Schelkopf
                                Joseph G. Sauder
                                Matthew D. Schelkopf
                                Benjamin F. Johns
                                CHIMICLES & TIKELLIS LLP
                                One Haverford Centre
                                361 West Lancaster Avenue
                                Haverford PA 19041
                                Telephone:  (610) 642-8500
                                Facsimile:  (610) 649-3633
                                JGS@chimicles.com
                                MDS@chimicles.com
                                BFJ@chimicles.com

H0036425.                                         40

Michael A. Caddell (pro hac vice)
Cynthia B. Chapman (pro hac vice)
Cory S. Fein (pro hac vice)
CADDELL & CHAPMAN
1331 Lamar, Suite 1070
Houston TX 77010
Telephone:  (713) 751-0400
Facsimile:  (713) 751-0906
mac@caddellchapman.com
cbc@caddellchapman.com
csf@caddellchapman.com

***Attorneys for Plaintiffs and the Proposed
Classes***

## <u>CERTIFICATE OF SERVICE</u>

I, Matthew D. Schelkopf, certify that on May 30, 2014 I filed the foregoing

Plaintiffs' Motion for Class Certification, Supporting Memorandum of Law,

Alternative Proposed Orders and related exhibits and declarations using the

Court's CM/ECF system, thereby causing these materials to be electronically

served upon all counsel of record in this case.  I further certify that I caused

unredacted versions of the foregoing materials to be served on this date on the

following counsel of record for Defendants, via U.S. Mail and e-mail:

> Martin J. Healy, Esquire
> Sedgwick LLP
> Three Gateway Center
> 12th Floor
> Newark, New Jersey 07102-4072
>
> E. Paul Cauley, Jr., Esquire
> Sedgwick LLP
> 1717 Main Street
> Suite 5400
> Dallas, Texas  75201-7367

*/s/Matthew D.* Schelkopf
Matthew D. Schelkopf

H0036425.