**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN DIVISION**

TAMEKA NELSON, RICHARD CREEL,
KARIM ABDULLAH, RUTH TAPLET, and
NANCY EBNER individually and on behalf
of all others similarly situated,

Plaintiffs,

vs.

NISSAN NORTH AMERICA, INC., a
California corporation, and NISSAN
EXTENDED SERVICES NORTH
AMERICA, GP, a Tennessee partnership,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.:  1:11-cv-05712-JEI-AMD

**ORAL ARGUMENT REQUESTED**

---

**NISSAN NORTH AMERICA, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION**

---

Martin Healy
E. Paul Cauley, Jr. (admitted *pro hac vice*)
S. Vance Witte (admitted *pro hac vice*)

**SEDGWICK LLP**
*Attorneys for Defendant*
NISSAN NORTH AMERICA, INC.
Three Gateway Center, 12th Floor
Newark, New Jersey 07102
Telephone: 973.242.0002
Facsimile:  973.242.8099
martin.healy@sedgwicklaw.com

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS ............................................................................................... I

TABLE OF AUTHORITIES ...................................................................................... III

I. INTRODUCTION ................................................................................................... 1

II. FACTUAL BACKGROUND ................................................................................. 1

    A.   PLAINTIFFS' THEORY OF DEFECT ..................................................... 1

    B.   THE NISSAN LIMITED WARRANTY ................................................... 2

    C.   TRANSMISSION PERFORMANCE AND THE INDIVIDUAL
          NATURE OF TRANSMISSION ISSUES ................................................ 2

III. STANDARDS GOVERNING CLASS CERTIFICATION ................................. 5

IV. PLAINTIFFS MISIDENTIFY THE PROPOSED COMMON QUESTIONS ........................ 6

V. PLAINTIFFS' CLAIMS ARE NOT TYPICAL OF THE CLASSES THEY SEEK TO
REPRESENT ............................................................................................................. 9

VI. INDIVIDUAL QUESTIONS PREDOMINATE OVER ANY COMMON QUESTIONS ... 10

    A.   EXPRESS WARRANTY CLAIMS RAISE MULTIPLE SIGNIFICANT
          ISSUES ................................................................................................ 12

    B.   IMPLIED WARRANTY CLAIMS RAISE MULTIPLE INDIVIDUAL
          ISSUES ................................................................................................ 15
       1.  Vehicle Performance is a Significant Individual Issue ............................... 15
       2.  Manifestation Is a Significant Individual Issue ........................................ 17
       3.  Duration of the Warranty Is a Significant Individual Issue ....................... 18

    C.   THE STATE CONSUMER PROTECTION STATUTES RAISE
          SIGNIFICANT INDIVIDUAL ISSUES ................................................ 19
       1.  Whether NNA Violated the Statutes Depends Upon Vehicle Performance ............. 19
       2.  Whether the Alleged Omission Was Material Presents an Individual Issue ............. 20

    D.   CAUSATION IS A SIGNIFICANT INDIVIDUAL ISSUE .................... 21
       1.  Causation Is a Central Requirement to All Claims .................................... 22
       2.  Causation Can Only be Determined on an Individual Basis........................ 25

    E.      DAMAGES RAISES SIGNIFICANT INDIVIDUAL ISSUES.............................. 27

      1.  Certification Requires a Viable Classwide Damages Theory..................................... 27

      2.  Plaintiffs Have Failed to Present a Viable Classwide Damages Theory ................... 28

      3.  Other Differences Among the Class Members Preclude a Common
          Damages Determination........................................................................................... 31

    F.      THE UNJUST ENRICHMENT CLAIM POSES SIGNIFICANT
          INDIVIDUAL ISSUES ........................................................................................ 32

VII. A CLASS ACTION IS NOT THE SUPERIOR FORM OF ADJUDICATION.................. 32

    A.      THE NEED FOR INDIVIDUAL ISSUES DETERMINATIONS WILL
          RENDER CLASS LITIGATION INEFFICIENT ..................................................... 33

    B.      INDIVIDUAL LITIGATION AND AGENCY ACTION REPRESENT
          VIABLE ALTERNATIVES....................................................................................... 35

VIII. THE ALTERNATIVE CLASSES ARE NEITHER SUFFICIENTLY NUMEROUS NOR
ADEQUATELY ASCERTAINABLE........................................................................................ 36

IX. CONCLUSION.................................................................................................................... 38

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### CASES

*Abraham v. Volkswagen of Am. Inc.*,
    795 F.2d 238 (2d Cir. 1986) ................................................................. 14

*Algarin v. Maybelline, LLC*,
    (S.D. Cal. May 12, 2014) ...................................................................... 20

*Am. Suzuki Motor Corp. v. Superior Court*,
    37 Cal. App. 4th 1291 (1995) ........................................................... 16, 36

*Amchem Prods. Inc. v. Windsor*,
    521 U.S. 591 (1997) ............................................................................. 10

*Arcand v. Brother Intern. Corp.*,
    673 F. Supp. 2d 282 (D.N.J. 2009) ....................................................... 19

*Avery v. State Farm Mut. Auto Ins. Co.*,
    835 N.E.2d 801 (Ill. 2005) ................................................................... 23

*Baby Neal v. Casey*,
    43 F.3d 48 (3d Cir. 1994) ...................................................................... 9

*Bayshore Ford Truck v. Ford Motor Co.*,
    2010 WL 415329 (D.N.J. Jan. 29, 2010) .............................................. 30

*BLB Aviation South Carolina, LLC v. Jet Linx Aviation, LLC*,
    784 F.3d 829 (8th Cir. 2014) ................................................................ 29

*Briehl v. Gen. Motors Corp.*,
    172 F.3d 623 (8th Cir. 1999) ................................................................ 17

*Bright v. Asset Acceptance LLC*,
    292 F.R.D. 190 (D.N.J. 2013) ............................................................... 27

*Butler v. Sterling Inc.*,
    210 F.3d 371, (6th Cir. 2000) ............................................................... 24

*Carlson v. Gen. Motors Corp.*,
    883 F.2d 287 (4th Cir. 1989) ................................................................ 16

*Carrera v. Bayer Corp.*,
   727 F.3d 300 (3d Cir. 2013) ............................................................ 30, 36, 37

*Chin v. Chrysler Corp.*,
   182 F.R.D. 448 (D.N.J. 1998) .......................................................... 17, 26, 36

*Cole v. Gen. Motors Corp.*,
   484 F.3d 717 (5th Cir. 2007) ..................................................................... 8

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013) .................................................................... 5, 15, 27

*Curley v. Cumberland Farms Dairy, Inc.*,
   728 F. Supp. 1123 (D.N.J. 1989) ............................................................ 35

*Dabush v. Mercedes-Benz USA LLC*,
   874 A.2d 1110 (N.J. Super. 2005) .......................................................... 32

*Daffin v. Ford Motor Co.*,
   458 F.3d 549 (6th Cir. 2006) .................................................................. 14

*Danvers Motor Co., Inc. v. Ford Motor Co.*,
   543 F.3d 141 (3d Cir. 2008) ..................................................................... 7

*Daugherty v. American Honda Motor Co.*,
   144 Cal. App. 4th 824 (2006) .......................................................... 8, 12, 20

*Duffy v. Samsung Elec. Am. Inc.*,
   2007 WL 703197 (D.N.J. Mar. 2, 2007) ................................................ 24

*Dunkin v. Bosley*,
   82 Cal. App. 4th 171 (Cal. App. 2000) .................................................. 31

*Duquesne Light Co. v. Westinghouse Elec. Corp.*,
   66 F.3d 604 (3d Cir. 1995) ..................................................................... 14

*Edwards v. Ford Motor Co.*,
   2012 WL 2866424 (S.D. Cal. 2012) ....................................................... 21

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ................................................................................ 33

*Ford Motor Co. v. Fairley*,
   398 So. 2d 216 (Miss. 1981) .................................................................. 16

*Ford Motor Credit Co. v. Mendola*,
   48 A.3d 366 (N.J. Super. 2012) .............................................................. 22

*Frank v. DaimlerChrysler Corp.*,
  741 N.Y.S.2d 9 (N.Y. App. Div. 2002) ................................................................ 29

*Gen. Motors Corp. v. Brewer*,
  966 S.W.2d 56 (Tex. 1998) ................................................................................... 8

*Gen. Tel. Co. of Southwest v. Falcon*,
  457 U.S. 147 (1982) .............................................................................................. 6

*Green v. Green Mountain Coffee Roasters, Inc.*,
  279 F.R.D. 275 (D.N.J. 2011) ................................................................... 17, 18, 32

*Haskins v. First Am. Title Ins. Co.*,
  2014 WL 294654 (D.N.J. Jan. 27, 2014) ............................................................. 27

*Hayes v. Wal-Mart Stores, Inc.*,
  725 F.3d 349 (3d Cir. 2013) ........................................................................ 5, 28, 38

*Hornberger v. Gen. Motors Corp.*,
  929 F. Supp. 884 (E.D. Pa. 1996) ....................................................................... 16

*Hunt v. U.S. Tobacco*,
  538 F.3d 217 (3d Cir. 2008) ................................................................................ 24

*In re Bridgestone/Firestone Inc.*,
  288 F.3d 1012, 1019 (7th Cir. 2002) ................................................................... 36

*In re Canon Cameras*,
  237 F.R.D. 357 (S.D.N.Y. 2006) ......................................................................... 18

*In re Community Bank of N. Va.*,
  622 F.3d 275, 291 (3d Cir. 2010) .......................................................................... 6

*In re DVI Inc. Sec. Litig.*,
  639 F.3d 623 (3d Cir. 2011) ................................................................................ 11

*In re Ford Motor Co. E-350 Van Products Liab. Litig.*,
  2010 WL 2813788 (D.N.J. 2010) ........................................................................ 17

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,
  2001 WL 1266317 at *22 (D.N.J. Sept. 30, 1997) ........................................ 15, 22

*In re Hydrogen Peroxide Antitrust Litigation*,
  522 F.3d 305 (3d Cir. 2008) ............................................................................ 6, 11

*In re LifeUSA Holding Inc.*,
  242 F.3d 136 (3d Cir. 2001) ................................................................................ 35

*In re POM Wonderful LLC,*
  2014 WL 1225184 at *3 (C.D. Cal. Mar. 25, 2014) .............................................. 31

*In re Rail Freight Fuel Surcharge Antitrust Litig.,*
  725 F.3d 244 (D.C. Cir. 2013) ................................................................... 21, 27

*In re Schering Plough Corp. ERISA Litig.,*
  589 F.3d 585 (3d Cir. 2009) ............................................................................. 9

*In re Vioxx Class Cases,*
  180 Cal. App. 4th 116 (2009) ....................................................... 20, 21, 23, 31

*Johnson v. Harley-Davidson Motor Co.,*
  285 F.R.D. 573 (E.D. Cal. 2012) ................................................................... 22

*Korea Supply Co. v. Lockheed Martin Corp.,*
  29 Cal. 4th 1134 (2003) ................................................................................ 23

*Kwik-Set v. Superior Court,*
  51 Cal. 4th 310 (2011) ................................................................................... 8

*Lester v. Percudani,*
  217 F.R.D. 345 (M.D. Pa. 2003) ............................................................... 25, 35

*Lilly v. Hewlett-Packard Co.,*
  2006 WL 1064063 (S.D. Ohio Apr. 21, 2006) ................................................ 24

*Mack Trucks, Inc. v. Borg Warner Turbo Sys., Inc.,*
  508 Fed. App'x 180 (3d Cir. 2012) ................................................................. 7

*Maguire v. Sandy Mac, Inc.,*
  145 F.R.D. 50 (D.N.J. 1992) .......................................................................... 35

*Marcus v. BMW of N. Am.,*
  687 F.3d 583 (3d Cir. 2012) ...................................... 6, 9, 11, 12, 25, 26, 36, 37, 38

*Martin v. Ford Motor Co.,*
  292 F.R.D. 252 (E.D. Pa. 2013) ........................................................... 10, 17, 32

*Mazza v. Am. Honda Motor Co.,*
  666 F.3d 581 (9th Cir. 2012) ......................................................................... 22

*McLaughlin v. American Tobacco Co.,*
  522 F.3d 215 (2d Cir. 2008) .......................................................................... 30

*McManus v. Sturm Foods Inc.,*
  292 F.R.D. 606, 614 (S.D. Ill. 2013) ............................................................... 23

*Mirkin v. Wasserman*, 5 Cal. 4th 1082 (Cal. 1993) ............................................................. 23, 26

*Muehlbauer v. Gen. Motors Corp.*,
   2009 WL 874511 (N.D. Ill. Mar. 31, 2009) ...................................................................... 32

*N.J. Transit Corp v. Harsco Corp.*,
   497 F.3d 323, 324 (3d Cir. 2007) ...................................................................................... 18

*Nelson v. Pearson Ford Co.*,
   186 Cal. App. 4th 983 (2010) ............................................................................................ 22

*Newton v. Merrill Lynch*,
   259 F.3d 154 (3d Cir. 2001) .................................................................................... 11, 33, 34

*Nobile v. Ford Motor Co.*,
   2011 WL 900119 (D.N.J. 2011) .................................................................................. 18, 24

*Noble v. Porsche Cars of N. Am.*,
   694 F. Supp. 2d 333 (D.N.J. 2010) ............................................................................. 20, 24

*O'Neill v. Simplicity, Inc.*,
   574 F.3d 501 (8th Cir. 2009) ............................................................................................... 8

*Oggi Trattoria & Caffe Ltd. v. Isuzu Motors Am. Inc.*,
   865 N.E.2d 334 (Ill. App. 2007) ........................................................................................ 13

*Oliveira v. Amoco Oil Co.*,
   776 N.E.2d 151 (Ill. 2002) ................................................................................................. 23

*Oscar v. BMW of N. Am. LLC*,
   274 F.R.D. 498 (S.D.N.Y. 2011) ....................................................................................... 26

*Oshana v. Coca-Cola Corp.*,
   472 F.3d 506 (7th Cir. 2006) ............................................................................................. 23

*Parko v. Shell Oil Co.*,
   739 F.3d 1083 (7th Cir. 2014) ..................................................................................... 11, 28

*Perkins v. DaimlerChrysler Corp.*,
   890 A.2d 997 (N.J. Super. Ct. App. Div. 2006) ........................................................... 20, 24

*Rodney v. Northwest Airlines, Inc.*,
   146 F. App'x 783 (6th Cir. 2005) ...................................................................................... 11

*Sheris v. Nissan N. Am., Inc.*,
   WL 2354908 (D.N.J. June 3, 2008) ................................................................................... 16

*Siegel v. Shell Oil Co.,*
  612 F.3d 932 (7th Cir. 2010) ............................................................ 23

*Southwest Ref. Inc. v. Bernal,*
  22 S.W.3d 425 (Tex. 2000) ............................................................... 11

*Steering Comm. v. Exxon Mobil Corp.,*
  461 F.3d 598 (5th Cir. 2006) ............................................................ 27

*Theidemann v. Mercedes-Benz USA, LLC,*
  872 A.2d 783 (N.J. 2005) ............................................................ 23, 32

*Trunzo v. Citi Mortg.,*
  2014 WL 1317577 (W.D. Pa. March 31, 2014) ............................ 24, 25

*Vega v. T-Mobile USA, Inc.,*
  564 F.3d 1256 (11th Cir. 2009) .................................................... 33, 37

*Wal-Mart Stores v. Dukes,*
  131 S. Ct. 2541, 2550 (2011) ................................................ 5, 6, 8, 15, 34

*Weaver v. Chrysler Corp.,*
  172 F.R.D. 96 (S.D.N.Y. 1997) ......................................................... 17

*White v. DuPuy Inc.,*
  129 Ohio App. 3d 472 (1998) ............................................................ 13

*Williams v. Empire Funding Corp.,*
  227 F.R.D. 362 (E.D. Pa 2005) ........................................................ 24

*Wilson v. Hewlett-Packard Co.,*
  668 F.3d 1136 (9th Cir. 2012) ........................................................... 20

*Zisner v. Accufix Research Inst.,*
  253 F.3d 1180 (9th Cir. 2001) ........................................................... 33

## STATUTES

73 PA. CONS. STAT. ANN. § 201-9.2 ................................................... 35

815 ILL. COMP. STAT. 505/10a(c).......................................................... 35

CAL. BUS. & PROF. CODE § 17203 .................................................... 23

CAL. CIV. CODE § 1780(a).................................................................... 35

CAL. COM. CODE § 2715 ...................................................................... 31

N.J.S.A. 56:8-19 ................................................................................................................ 35

OHIO REV. CODE ANN. § 1345.09(F) ................................................................................ 35

## RULES

FED. R. CIV. P. 23 ........................................................................................................... 5, 33

# I.
# INTRODUCTION

The proposed classes and alternative classes fail to meet the requirements of Rule 23. While there are a host of insurmountable problems to certification, the most fundamental defect is the Plaintiffs' failure to seriously analyze the elements of the causes of action they assert in light of the Rule's requirements. Plaintiffs believe that all they have to do is present evidence of some theory of design "defect" applicable to every vehicle. But evidence of an alleged common "defect" does not, in itself, entitle any class member to a recovery under any of the causes of action alleged. The core liability determinations are individual to each class member. Moreover, Plaintiffs fail to address the vital issue of causation, ignoring recent Third Circuit authority rejecting certification in an indistinguishable case. Plaintiffs have also failed to demonstrate a viable means for assessing damages on a classwide basis. Class certification must be rejected.

# II.
# FACTUAL BACKGROUND

## A.    PLAINTIFFS' THEORY OF DEFECT

Plaintiffs initially pleaded that all NNA vehicles that used a 22A transmission were defective, and the proposed class included not only the Maxima, but also certain Altima and Quest vehicles. Plaintiffs no longer include the Altima or Quest as class vehicles.[1]  Indeed, Plaintiffs' expert bases his conclusion that the Maxima has a design defect on a comparison of repair rates and complaints of the Maxima with those of the Altima and Quest vehicles.

Plaintiffs' engineer, Michael Leshner, has concluded that all Maxima vehicles with 22A transmissions have an inherent design defect. He faults the Maxima's design for cooling the automatic transmission fluid. That design routes engine coolant from the vehicle's radiator to a

---

[1]   Plaintiffs' Redacted Memorandum of Law in Support of Their Motion for Class Certification [Dkt.# 106], at 1 n.2.

transmission cooler mounted to the transmission. He says the Maxima should have used a design that routes transmission fluid from the transmission to the vehicle's radiator.

**B.    THE NISSAN LIMITED WARRANTY**

The 2004 – 2006 Nissan Maxima vehicles, when originally sold, were covered by NNA's New Vehicle Warranty. The warranty's powertrain coverage, applicable to the transmission, indicates that NNA will repair any warranted defects in materials and workmanship during the warranty period of five years or 60,000 miles, whichever occurs first.[2]  To obtain warranty service, an individual must go to an authorized Nissan dealer in the United States.[3]  The warranty contains a conspicuous disclaimer limiting the duration of any implied warranty to the duration of the express warranty.[4]

**C.    TRANSMISSION PERFORMANCE AND THE INDIVIDUAL NATURE OF TRANSMISSION ISSUES**

Plaintiffs rely upon the higher warranty incident rate for the Maxima. What is important for the certification decision, however, is that the investigation into the differences in repair rates, and the solutions implemented to address any transmission issues do not support the theory that the transmission repairs had a single cause. Moreover, there is no common proof that allows a determination that every consumer has experienced a common defect.

For perspective, ███████████████████████████████████

██████████████████████████████████████████████████████

---

[2]    See a true and correct copy of the 2006 Nissan New Vehicle Limited Warranty, a true and correct copy of which is attached to the Certification of Martin Healy as Exhibit B (―2006 Warranty‖), at NELSON-NELSON000412-413. Each of the Plaintiffs received substantially the same warranties, copies of which are exhibits to the Motions for Summary Judgment filed regarding the claims of each Plaintiff.

[3]    2006 Warranty at NELSON-NELSON000413.

[4]    *Id.* at NELSON-NELSON000412.

█████████████████████████████████████ In late 2008, NNA became aware of an increase in call volume to the Nissan Techline by dealers with repair questions.[6] Around the same time, ████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████

    The two companies cooperated in investigating potential causes. Contrary to Plaintiffs' assertion, neither Awtec, its parent company Aisin, nor NNA identified any one cause for transmission-related claims. Instead, ███████████████████████████████

████████ ████████ ██████ ███ ███ ███ ███████ ████████ ████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████ ██ ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[5] ██████████████████████████████████████████████████
████████████████

[6]   Deposition of John Connolly (Aug. 28, 2013), cited portions of which are attached to the Certification of Martin Healy as Exhibit D ("Connolly Dep."), at 18:6 – 19:14.

[7] ████████████████████████████████████████████████████
███████████████████████████████████

[8] ████████████████████████████████████████████████████
███████████████████████████████

██████████████████████████████████████████ These improvements addressed the quality concerns that had been raised, and the issue subsided.[10]

Likewise, problems with original equipment transmissions cannot be attributable a single cause capable of being established with common proof. Most consumers have not and will not have any transmission issues. Despite the quality issues that NNA and Awtec addressed, ████████ ███████████████████████████████████████████ Further, the data shows that the majority of vehicles will not require repair up to 100,000 miles.[12]

For any individual who *does* have a complaint regarding shift quality, including shift harshness, a case-by-case analysis is required to determine the cause of the problem. The harsh shifting symptoms described by Plaintiffs may have numerous causes other than the alleged defect.[13] Even Plaintiffs' expert concedes that other issues could cause these symptoms.[14] ████ ████████████████████████████████████████████████████████████

███████████████████████ Sometimes, what the driver may perceive as a transmission issue may actually be caused by another component such as the motor mount.[16] Where the transmission components are involved the problem may have nothing to do with overheating.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

---

[9]  █
[10] ████████████████████████████
[11] Exponent Report at 5.
[12] Exponent Report at 6; Kuhn Aff. ¶ 13.
[13] Kirk Dep. at 125:18 – 126:6; Connolly Dep. at 112:23 – 113:9; Exponent Report at 9-10 & 15.
[14] Deposition of Michael Leshner (Mar. 5, 2014), cited portions of which are attached to the Certification of Martin Healy as Exhibit G ("Leshner Dep."), at 181:18 – 182:8 & 183:11 – 186:20 & 187:20 – 188:5.
[15] ████████████████████
[16] Connolly Dep. at 17:4 – 8 & 37:5 – 7.

████████████████. And even if overheating has occurred it may be due to numerous factors beyond the vehicle itself including, maintenance, vehicle repairs driving habits, terrain and towing.[17]  "Consequently, understanding each individual customer issue is required which involves a detailed case by case investigation of the vehicle, its use, its history, and in some cases a transmission teardown to produce a reliable analysis and basis for any type of conclusion."[18]  No technical analysis of the named Plaintiffs' transmissions has been performed. The cause of their issues remain unknown.

### III.
### STANDARDS GOVERNING CLASS CERTIFICATION

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual parties only." *Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541, 2550 (2011). The plaintiff has the burden to demonstrate that a class action is a proper vehicle for a lawsuit. *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 353 (3d Cir. 2013)  (citing *Comcast Corp. v. Behrend*,

133 S. Ct. 1426 (2013).

A class proponent must show that each of the requirements of Federal Rule 23(a) is satisfied *and* that the requirement of one of Rule 23(b) (1), (2) or (3) has been met. FED. R. CIV. P. 23.

> To satisfy Rule 23(a): (1) the class must be "so numerous that joinder of all members is impracticable" (numerosity); (2) there must be "questions of law or fact common to the class" (commonality); (3) "the claims or defenses must be "typical of the claims or defenses of the class" (typicality); and (4) the named plaintiffs must "fairly and adequately protect the interest of the class" (adequacy of representation, or simply adequacy).

---

[17] Exponent Report at 10.
[18] Exponent Report at 10; Kirk Dep. at 113:14 – 116:15.

*In re Community Bank of N. Va.*, 622 F.3d 275, 291 (3d Cir. 2010). Plaintiffs here rely upon Rule 23(b)(3), which requires that common questions of law or fact predominate (predominance) and that the class action is the superior method for adjudication (superiority). *See id.*

Class certification is only proper "if the trial court is satisfied after a vigorous analysis that the prerequisites of Rule 23 have been met." *In re Hydrogen Peroxide Antitrust Litigation*, 522 F.3d 305 (3d Cir. 2008) (quoting *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982). When performing this rigorous analysis, "the court cannot be bashful." It "must resolve all factual or legal disputes touching on elements of the cause of action." *Marcus v. BMW of N. Am.*, 687 F.3d 583 (3d Cir. 2012) (quoting *In Re Hydrogen Peroxide* 552 F.3d at 307). "Some overlap with merits of the underlying claim may occur. The class determination generally involves considerations that are enmeshed in the factual or legal issues comprising the plaintiff's cause of action." *Dukes*, 131 S. Ct. at 2551-52 (quoting *Falcon*, 457 U.S. at 160). The court may have to resolve competing expert opinions on certification issues. *Marcus*, 687 F.3d at 601-02.

## IV.
## PLAINTIFFS MISIDENTIFY THE PROPOSED
## COMMON QUESTIONS

Commonality under Rule 23(a) is not merely a matter of identifying and enumerating matters common to the claims of all class members. Any competently crafted complaint can supply a list of supposedly common issues. *Dukes*, 131 S. Ct. at 2551. Rather, commonality requires identification of a "common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. What matters is not raising common questions, "but rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id*.

NNA will concentrate its analysis on the more demanding predominance requirement. *See Danvers Motor Co., Inc. v. Ford Motor Co.,* 543 F.3d 141, 148 (3d Cir. 2008) (commonality requirement is subsumed by the far more demanding predominance requirement). Nevertheless, it is appropriate to discuss the nature of the commonality requirement because Plaintiffs exaggerate the existence and relative importance of the supposedly common issues.

Some of the issues Plaintiffs identify as common have little capacity to drive the litigation because they are not subject to legitimate dispute. Whether NNA had knowledge of the alleged defect in transmission design at the time the vehicles in question were sold could theoretically form a common issue, but under the facts developed in *this* case, it is clear that NNA had no such knowledge, as the Motions for Summary Judgment establish.[19]  Similarly, Plaintiffs' express warranty claims are not based upon a defect in materials or workmanship but upon an alleged design defect which is not covered by the warranty. *See Mack Trucks, Inc. v. Borg Warner Turbo Sys., Inc.*, 508 F. App'x 180, 184 (3d Cir. 2012).

Plaintiffs emphasize that they are criticizing an alleged defective design present in all the vehicles. But this is not a products liability case where the existence of a product defect is an element of the cause of action. Defectiveness, in itself, is not an element of any of the causes of action Plaintiffs have attempted to plead. A violation of the express warranty occurs only if NNA fails to repair the defect when the vehicle is presented for repair during the term of the warranty. Hence, NNA's performance of the repair promise is the key issue, not abstract "defectiveness."

Likewise, the implied warranty of merchantability is breached only where the product is not reasonably fit for its intended purposes. An alleged "defect" that does not manifest itself does

---

[19]   *See, e.g.,* Brief in Support of Motion for Summary Judgment on Claims of Tameka Nelson [Dkt.# 111-18] at 14-16.

not entitle the purchasers to recover. *See, e.g.*, *O'Neill v. Simplicity, Inc.*, 574 F.3d 501 (8th Cir. 2009); *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 729 (5th Cir. 2007). A vehicle capable of adequately fulfilling its function of providing transportation is merchantable even if it has some characteristics the purchaser deems undesirable. *See, e.g.*, *Gen. Motors Corp. v. Brewer*, 966 S.W.2d 56, 57 (Tex. 1998). Reasonable fitness, not defectiveness, is the key issue.

Nor is "defectiveness" an element of the state consumer protection statutes, which are focused upon whether the seller has made a misrepresentation about the product or has failed to disclose some fact it had a duty to disclose. To take California law as an example, a seller has no duty in most cases to disclose a "defect" that manifests itself only after the expiration of the warranty. *See Daugherty v. American Honda Motor Co.,* 144 Cal. App. 4th 824, 838 (2006). Yet, a seller may be a liable for misrepresenting some characteristic of a product that contains no "defect" at all. *See Kwik-Set v. Superior Court,* 51 Cal. 4th 310, 328-29 (2011).

Plaintiffs' Memorandum also identifies some issues as "common" that are in fact individual. For example, whether NNA breached its repair obligation under the warranty depends upon whether the vehicle was presented for repair during the warranty period and whether NNA successfully repaired it. These are individual issues because classwide proof is not possible. *Dukes* teaches that the hallmark of a common question is its capacity to generate answers common to the class. 131 S. Ct. at 2551. Where, as here, the answer to a particular question may be either yes or no depending on the particular circumstances of the class member it is not a common question.

**V.**
**PLAINTIFFS' CLAIMS ARE NOT TYPICAL OF THE CLASSES**
**THEY SEEK TO REPRESENT**

"The concepts of typicality and commonality are closely related and often tend to merge." *Marcus*, 687 F.3d at 598 (citing *Baby Neal v. Casey,* 43 F.3d 48, 56 (3d Cir. 1994)). Both serve to assure that under the circumstances a class action is economical and that the interest of the class members will be fairly and adequately protected. *Id.* "Typicality derives its legal significance from its ability to screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present." *Id.*

In determining whether a named plaintiff's claims are "markedly different" from the claims of the class he or she seeks to represent, courts analyze three related issues:

(1)  the claims of the class representative must be generally the same as those of the class in terms of both: (a) the legal theory advanced; and (b) the factual circumstances underlying that theory;

(2)  the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and

(3)  the interests and incentives of the representative must be sufficiently aligned with those of the class.

*In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 (3d Cir. 2009). While factual variations among class members do not always preclude typicality, typicality will not be found where the class representative is subject to unique defenses which threaten to become the focus of the litigation. *Id.* at 598.

The factual circumstances of Plaintiffs' claims indicate that their claims are not typical of the "legal and factual position(s)" of the class they seek to represent. Abdullah, Nelson, and Taplet did not experience any transmission symptoms during the term of the warranty, and

Abdullah never requested NNA to repair his transmission at any time. Because the implied warranty of merchantability is limited by NNA's disclaimer—and in some cases by operation of law—to the duration of the express warranty, these facts preclude their implied warranty claims as well. These individuals can hardly be typical representatives of a class of breach of warranty claimants. *See Martin v. Ford Motor Co.*, 292 F.R.D. 252 (E.D. Pa. 2013) (proposed representative who could not assert breach of warranty claim was not "typical"). Indeed, Abdullah, Nelson, and Taplet are not even *members* of the proposed alternative classes because they did not present their vehicles for repair during the terms of the warranties.[20]

Moreover, some Plaintiffs are subject to individual defenses. For instance, Abdullah's implied warranty claims and Ebner's statutory claims appear to be time-barred.[21] The necessity of litigating these defenses threatens to become a significant focus of the litigation.

## VI.
## INDIVIDUAL QUESTIONS PREDOMINATE OVER ANY COMMON QUESTIONS

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623 (1997). It is a far more demanding requirement than commonality under Rule 23(a). It is not

---

[20]   Deposition of Tameka Nelson (June 19, 2013), cited portions of which are attached to the Certification of Martin Healy as Exhibit H ("Nelson Dep."), at 32:22 – 34:25; Deposition of Ruth Taplet (Mar. 5, 2013), cited portions of which are attached to the Certification of Martin Healy as Exhibit at I ("Taplet Dep."),  at 20:12 – 15 & 25:3 – 13.; Deposition of Karim Abdullah (Apr. 10, 2013), cited portions of which are attached to the Certification of Martin Healy as Exhibit J ("Abdullah Dep."), at 94:3 – 23.
[21]   Brief in Support of Motion for Summary Judgment on Claims of Karim Abdullah [Dkt.# 113-15] at 14; Brief in Support of Motion for Summary Judgment on Claims of Nancy Ebner [Dkt.# 110-20] at 16-18.

satisfied by the mere showing of a common claim. *Hydrogen Peroxide*, 552 F.3d at 511. Predominance must be satisfied by a preponderance of the evidence. *Id.* at 322.

In assessing predominance, the court must exercise each element of the legal claim —through the prism" of Rule 23(b)(3). *In re DVI Inc. Sec. Litig.*, 639 F.3d 623, 630 (3d Cir. 2011). The central requirement is that the element of a legal claim be capable of proof through evidence common to the class rather than individual to its members. *Marcus*, 687 F.3d at 600 (quoting *Hydrogen Peroxide*, 552 F.3d at 311). —Because the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual, a district court must formulate some prediction as to how specific issues will play out in order to determine whether neither common nor individual issues predominate in a given case." *Id.* Ultimately, —if proof of the essential elements of the cause of action requires individual treatment then class certification is unsuitable." *Newton v. Merrill Lynch*, 259 F.3d 154, 172 (3d Cir. 2001). While it is obvious that a common claim requires common evidence, it must also be remembered that any individual evidence that the defendant could bring to bear on the question must also be considered in evaluating predominance. *See Rodney v. Northwest Airlines, Inc.*, 146 F. App'x 783, 786-87 (6th Cir. 2005); *Southwest Ref. Inc. v. Bernal*, 22 S.W.3d 425, 437 (Tex. 2000).

The most important question considered in evaluating predominance is the role that any common determination would have in determining the claims of the class members. —If resolving a common issue will not greatly simplify the litigation to judgment or settlement of claims of hundreds or thousands of claimants, the complications, the unwieldiness, the delay, and the danger that class treatment would expose the defendant or defendants to settlement-forcing risk are not costs worth incurring." *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014).

Plaintiffs' analysis of predominance is superficial. Aside from providing a chart which summarizes the elements of the various causes of action they do not attempt to demonstrate how the issues can be determined by common evidence. As shown below, most issues can only be determined individually. Plaintiffs argue that the defendant's conduct is always the dominant issue and when such conduct is the same for all members of the class, a common issue must necessarily predominate over individual issues. Yet, the Third Circuit's recent opinion in *Marcus* decisively routs this contention. There, despite allegations that all run-flat tires contained a design defect and were unusually susceptible to road hazard damage, the Court of Appeals found that the individual issue of *causation*—whether the road hazard damage in a given case was caused by the alleged defect or something else—predominated over the common design defect allegation. *Marcus*,  687 F.3d at 600.  Plaintiffs' failure to even address the *Marcus* opinion in their 40-page memorandum speaks volumes.

A.    **EXPRESS WARRANTY CLAIMS RAISE MULTIPLE SIGNIFICANT ISSUES**

Plaintiffs contend that the express warranty claims are dominated by the question of whether a common defect exists in all class vehicles. The assumption upon which this contention rests is that NNA must have breached its limited warranty if it failed to repair or replace any defective parts, regardless of, among other factors, when the issue arose or whether it was presented to a Nissan dealer. This assumption violates principles governing warranty law.

Any claim for breach of express warranty depends upon NNA's performance under the warranty. NNA did not warrant that the vehicles were free of defects. *See Daugherty v. Am. Honda Motor Co. Inc.*, 144 Cal. 4th 824, 832 (2006) (repair warranty not assurance that vehicle is free of defects). It agreed to repair certain defects, should they arise, during a certain defined term. Consequently, a claimant establishes liability only where the defendant failed to make a

necessary repair when the vehicle is presented. *See, e.g.*, *White v. DuPuy Inc.*, 129 Ohio App. 3d 472 (1998); *Oggi Trattoria & Caffe Ltd. v. Isuzu Motors Am. Inc.*, 865 N.E.2d 334, 340 (Ill. App. 2007).

Plaintiffs do not present evidence that NNA's conduct was the same toward all class members with respect to the warranty. Whether NNA complied with its repair obligation depends on circumstances unique to each individual motorist. If the vehicle never experienced the so-called defect, NNA did not breach its repair obligation. If the vehicle's owner did not bring the vehicle to an NNA dealer for repair, NNA did not breach its repair obligation. If the dealership successfully repaired the transmission, NNA did not breach its repair obligation. The existence of a ―defect‖ is but the first step in establishing express warranty liability. Additional significant individual factual determinations are inevitable.

Plaintiffs attempt to gloss over these difficulties by contending that Nissan dealers had a uniform repair practice of failing to test drive the vehicle for a sufficient length of time for the transmission condition to manifest itself. Yet, this claim is inconsistent with the evidence *and* Plaintiffs' own theory of defect. Recall that Leshner bases his opinion that the design is defective in part on what he terms an excessive number of warranty claims.[22] ████████████████ ████████████████████████████████████████████████ ▪ These claims arise only where a Nissan dealership *performs repairs* and seek reimbursement from NNA. Obviously, dealerships are not *uniformly* failing to diagnose transmission problems and

---

[22]   Leshner Dep. at 74:7 – 75:2.
[23]   ████████████████████

make repairs. Nor is this a case where successful repairs are impossible. Several of the Plaintiffs have testified that their vehicles have performed satisfactorily after repairs were made.[24]

Further, the express warranty is limited in duration. It does not cover repairs made after the applicable time or mileage period have elapsed. An allegation that a latent defect existed which only manifested itself after the warranty expires does not state a claim. *Abraham v. Volkswagen of Am. Inc.*, 795 F.2d 238, 250 (2d Cir. 1986). *See also Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 616-17 (3d Cir. 1995). As Plaintiffs' own experiences indicate, many of the class members experienced transmission issues only after the warranty had expired.[25] ███████████████████████████████████████████ ████████████████████████████████████████████ Whether the warranty was in effect at the time the vehicle experienced transmission issues is an inherently individual issue.

Plaintiffs cite *Daffin v. Ford Motor Co.,* 458 F.3d 549, 553 (6th Cir. 2006), where the Sixth Circuit affirmed an express warranty class despite its inclusion of persons who had not experienced the alleged warranty. It did so, however, only by evading the basic question of whether the express warranty claim required proof of manifestation during the warranty. The Sixth Circuit decided that question required considering a merits issue it was forbidden to address at the certification phase. The court was careful to point out that "if at a subsequent point in the litigation the district court determines that the express warranty is limited to defects that

---

[24]   Nelson Dep. at 34:15-22; Taplet Dep. at 37:7-15 & 58:1-3; Deposition of Richard Creel (Apr. 6, 2013), cited portions of which are attached to the Certification of Martin Healy as Exhibit K ("Creel Dep."), at 46:23-25 – 47:1-11; Abdullah Dep. cited at 111:6-11.

[25]   Nelson Dep. at 23:2-11 & 26:15 – 27:1 & 30:19-21; Taplet Dep. at 19:4-12 & 19:19-24; Abdullah Dep. at 74:9-21 – 75:1-2.

[26]  ████████████████████████████████

manifest themselves within the warranty period, the district court may consider at that point whether to modify or decertify the class." *Id.* at 554. After *Dukes* and *Comcast*, this reluctance to decide a merits issue that also bears upon class certification is no longer viable. Since Plaintiffs must establish an in-warranty manifestation to assert an express warranty claim, this court is bound to take that requirement into account in determining predominance.

For any particular class member, the following facts would have to be determined to establish an express warranty claim: (1) whether the vehicle had a defect in materials and workmanship; (2) whether that defect generated an issue with the vehicle; (3) whether the owner brought the vehicle to an NNA dealer for repair; (4) whether repairs were sought during the warranty period; and (5) whether NNA failed or refused to make the necessary repairs. Plaintiffs have essentially acknowledged these requirements in formulating their alternative classes, which are limited to persons who required but did not receive a repair during the warranty period. The need to litigate the numerous individual questions precludes a finding of predominance.

## B.   IMPLIED WARRANTY CLAIMS RAISE MULTIPLE INDIVIDUAL ISSUES

### 1.   *Vehicle Performance is a Significant Individual Issue*

The implied warranty of merchantability is implied in every contract for the sale of goods. The warranty is limited, however, both in scope and duration. It does not function to assure that the product will fulfill the buyer's expectations but provides for a minimum level of quality. *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.,* 2001 WL 1266317, at *22 (D.N.J. Sept. 30, 1997) (dismissing plaintiffs' claim for breach of implied warranty of merchantability under New Jersey and California law because they drove their vehicles for years before experiencing the ignition switch issue). The implied warranty requires only that the good in question be fit for the ordinary purposes for which such good is used. *Id.* (citing *Am. Suzuki*

*Motor Corp. v. Superior Court,* 37 Cal. App. 4th 1291, 1295-96 (1995)). The controlling question is whether the vehicle is *merchantable*. ―Where a car can provide safe, reliable transportation, it is generally considered merchantable." *Carlson v. Gen. Motors Corp.,* 883 F.2d 287, 297 (4th Cir. 1989). The implied warranty is breached only when the defect renders the vehicle unfit for its ordinary purpose of providing transportation. *Sheris v. Nissan N. Am., Inc.*, 2008 WL 2354908, at *6 (D.N.J. June 3, 2008).

Thus, determining whether there has been breach of the warranty requires an examination of how a particular vehicle has actually performed. Where the vehicle has performed adequately for a sufficient time and mileage, it may be judged merchantable as a matter of law. For instance, in *Sheris*, plaintiff complained of a brake defect that did not appear until after the vehicle had been driven approximately 20,000 miles. The court found that such trouble-free service established that the vehicle had been merchantable when sold. *See Sheris,* 2008 WL 2354908, at *5-6. *See also Ford Motor Co. v. Fairley,* 398 So. 2d 216, 219 (Miss. 1981) (implied warranty claim rejected where a vehicle had been driven more than two years and 26,649 miles before the alleged piston scuffing defect was experienced). Even courts which decline to apply mileage and time-of-service limitations as a matter of law recognize that the vehicle's actual service is a significant factor bearing upon whether the warranty has been breached. *See Hornberger v. Gen. Motors Corp.,* 929 F. Supp. 884, 888 (E.D. Pa. 1996) (material question of fact regarding merchantability existed as to whether transmission of newly leased vehicle would fail after being driven approximately 40,000 miles).

Consequently, the actual experiences of each class member must be assessed to determine whether their vehicles were merchantable. Some class members, such as Abdullah, experienced no problems until many years and tens of thousands of miles after they purchased

their vehicles. Others, like Creel, experienced issues far earlier in their ownership experience. Likewise, the named Plaintiffs reported different degrees of inconvenience as the result of the alleged transmission defect. Some of them reported only intermittent issues and some drove their vehicles for years without seeking any repairs.[27]  Under the varying circumstances presented by just the five named Plaintiffs, a trier of fact could find some vehicles merchantable while some were not. This is a an individual issue that must be determined on a case-by-case baiss. *See Martin v. Ford Motor Co.,* 292 F.R.D. 252, 277 (E.D. Pa. 2013) (common issues did not predominate where plaintiffs' experiences with supposedly defective rear axles). *See also Green v. Green Mountain Coffee Roasters, Inc.,* 279 F.R.D. 275, 285 (D.N.J. 2011) (declining to find predominance for implied warranty of merchantability claim where the court would have to make individual inquiries as to the cause and extent of the defect).

### 2.    *Manifestation Is a Significant Individual Issue*

The mere threat that a product may fail in the future is not sufficient to create liability for breach of the implied warranty of merchantability. "It is well established that purchasers of an allegedly defective product have no legally recognizable claim where the alleged defect has not manifested itself in the product they own." *Briehl v. Gen. Motors Corp.,* 172 F.3d 623, 628 (8th Cir. 1999) (quoting *Weaver v. Chrysler Corp.,* 172 F.R.D. 96, 99 (S.D.N.Y. 1997)). *See also In re Ford Motor Co. E-350 Van Products Liab. Litig.,* 2010 WL 2813788 (D.N.J. 2010); *Chin v. Chrysler Corp.,* 182 F.R.D. 448, 460 (D.N.J. 1998) ("In most jurisdictions, the courts recognize

---

[27]   Deposition of Nancy Ebner (Apr. 8, 2013), cited portions of which are attached to the Certification of Martin Healy as Exhibit L ("Ebner Dep."), at 22:18-25 & 23:1-15 & 27:22-25 – 28:1-14 & 38:18-25 – 39:1-25 – 40:1-21 & 41:21-25 – 42:1-9; Creel Dep. at 29:15 – 30:5 & 35:2-25 – 36:1-2; Abdullah Dep. at 15:17 – 16:3 & 75:4-10 & 80:12 – 85:15.

that unless a product actually manifests the alleged defect, no cause of action for breach of express or implied warranty or fraud is actionable").

While Plaintiffs assert that purchasers ―invariably" experienced harsh shifting, they cite no evidence to support this claim; the factual record contradicts it. ███████████

████████████████████ ███████████████████████

████████████████████ ███████████████████████

███████████████████

Because any successful claimant will have to demonstrate manifestation of the alleged defect, an important individual question is necessarily raised. *See Green,* 279 F.R.D. at 285 (rejecting certification where not every member of the proposed class experienced the alleged defect). *In re Canon Cameras,* 237 F.R.D. 357, 359 (S.D.N.Y. 2006) (finding predominance lacking on implied warranty claim where many of the cameras in question had not manifested a defect).

### 3.   *Duration of the Warranty Is a Significant Individual Issue*

The warranty of merchantability is limited in duration. The Nissan limited warranty at issue here expressly limited the duration of any implied warranty to the duration of the express warranty. Such contractual limitations are generally valid and enforceable. Indeed, in some jurisdictions, such as New Jersey, the implied warranty is limited by operation of law to the duration of the express warranty. *Nobile v. Ford Motor Co.*, 2011 WL 900119, at *4 (D.N.J. 2011). *See also N.J. Transit Corp v. Harsco Corp.,* 497 F.3d 323, 324 (3d Cir. 2007) (plaintiff could not rely on implied warranty of merchantability where the contract's express warranty had

---

28



expired at the time of the loss). Consequently, any class member would have to establish not only that the design of the transmission is flawed in the abstract, but that the flawed design manifested itself in such a way and to such an extent that the vehicle was not fit for its intended purposes during the period the implied warranty was in effect. This requires a close examination of the circumstances of each class member.

C.   THE STATE CONSUMER PROTECTION STATUTES RAISE SIGNIFICANT INDIVIDUAL ISSUES

1.   *Whether NNA Violated the Statutes Depends Upon Vehicle Performance*

Plaintiffs' statutory claims depend upon the theory that NNA failed to disclose that the Nissan Maxima had a higher rate of transmission repairs than certain other vehicles. NNA contends that all such claims must fail because there is no evidence that NNA was aware of any defect when it sold the vehicles, and indeed, NNA is entitled to summary judgment on all consumer protection statute claims. But even if NNA was aware of and failed to disclose the Maxima's allegedly greater susceptibility to transmission repairs, it would not necessarily follow that NNA violated the various statutes. The question of whether NNA had a duty to disclose the information becomes central. ―Implicit in the showing of an omission is the underlying duty on the part of the defendant to disclose what he concealed to induce the purchase." *Arcand v. Brother Intern. Corp.,* 673 F. Supp. 2d 282, 297 (D.N.J. 2009).

NNA had no duty to inform purchasers that they might have to pay for repairs occurring after the vehicle's warranty expired. In purchasing the vehicle with its limited warranty, these purchasers agreed that they would have the responsibility to pay for any post-warranty repairs. Consequently, any fact relating to the probability of such repairs could not be material. Any contrary rule would effectively remove all limits from the manufacturer's warranty, a result that

courts have rejected. *See, e.g., Perkins v. DaimlerChrysler Corp.,* 890 A.2d 997, 1005 (N.J. Super. Ct. App. Div. 2006). A plaintiff may not state a consumer fraud claim where the product performed satisfactorily throughout the term of the warranty. *Noble v. Porsche Cars of N. Am.,* 694 F. Supp. 2d 333, 337-38 (D.N.J. 2010).

Similarly, an allegation that the vehicle may require repairs after the warranty is not a *material* fact requiring disclosure. *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 833 (2006); *see also Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012). Plaintiffs avoided dismissal of their statutory claims by pointing to allegations that the alleged defect has safety implications, creating a duty to disclose where the risk of post-warranty repairs would not have. *See Wilson*, 668 F.3d at 1141-1142 (discussing exception to the no-duty-to-disclose rule involving allegations of safety defects). This position is of no help to them on class certification because it merely highlights the existence of another individual issue—materiality.

### 2. *Whether the Alleged Omission Was Material Presents an Individual Issue*

Materiality may vary from consumer to consumer with respect to the allegations raised here. Although some states, like California, allow causation to be presumed where the alleged omission was material, doing so in a case like this would be inappropriate where the materiality of the omission or misrepresentation may vary from class member to class member. *See In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (2009); *Algarin v. Maybelline, LLC*, WL 1883772 (S.D. Cal. May 12, 2014).

Here, the alleged omission which relates to the higher repair rates is allegedly attributed to the Maxima's transmission design. However, this fact is not material to every prospective purchaser. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

There is no basis to conclude that such a repair rate would be material to all consumers. Plaintiffs cite a speculative safety concern, but in light of the total absence of proof of any real world safety effect, the court cannot conclude that the matter would be material to every consumer or that the materiality of the supposed defect can be determined through common evidence. Indeed, no court has held that any safety-related allegation is material as a matter of law regardless of how speculative or insubstantial the alleged risk is. There is ample evidence that the alleged risk here is miniscule or nonexistent. After all, ten years and millions of miles after the subject Maximas entered the market, Plaintiffs' expert was unaware of a single accident caused by the conditions of the transmission.[31]   A reasonable consumer could easily determine that the risk involved was so insubstantial that it would not influence his decision to purchase the vehicle. *See, e.g., Edwards v. Ford Motor Co.*, 2012 WL 2866424 (S.D. Cal. 2012) (safety defect allegation not uniformly material to entire class); *In re Vioxx*, 180 Cal. App. 4th at 129 (materiality not subject to classwide proof where some physicians would have prescribed and some patients would have chosen to take medication even if allegedly omitted information been disclosed).

## D.   CAUSATION IS A SIGNIFICANT INDIVIDUAL ISSUE

Perhaps the most conspicuous omission in Plaintiffs' Memorandum and Trial Plan is the failure to address the vital issue of causation. Any claimant must show that the violation caused an actual injury, and to certify a class, "we do expect the common evidence to show all class members suffered *some* injury." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 251 (D.C. Cir. 2013). "Common questions of fact cannot predominate where there exists no reliable means of proving class-wide injury in fact." *Id.* at 251-52. It is insufficient merely to

---

[31]   Leshner Dep. at 206:24 – 207:6.

show that the defendant violated some duty imposed by law. Writing in a similar case, a judge of this court noted,

> It is axiomatic that individual causation remains a prerequisite to class membership. Resolution of the general causation' question of whether the subject switches are capable of causing the damage alleged by the vehicle owners does not show commonality under Rule 23(a) (2). The question is not whether the switches have the capacity to cause harm, but rather the highly individualistic inquiry of whether it did cause harm and to whom. In other words, there can be no inclusion of individuals in either of plaintiffs' proposed subclasses unless that person can show that the subject switches caused damage to their vehicle.

*In re Ford Motor Co. Ignition Switch Pros. Liab. Litig.*, 194 F.R.D. 484, 490 (D.N.J. 2000).

### 1.   *Causation Is a Central Requirement to All Claims*

Causation is a requirement for a breach of express or implied warranty claims. *Ford Motor Credit Co. v. Mendola*, 48 A.3d 366, 375 (N.J. Super. 2012) (express warranty); *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, 2012 WL 379944, at *22 (D.N.J. Feb. 6, 2012) (implied warranty).

In each of the five states involved in this litigation, recovery under the consumer statutes depends upon the claimant establishing that the defendant's conduct *caused harm* to the particular claimant.

A claim under California's Consumer Legal Remedies Act (CLRA) requires proof of causation which in, turn, requires proof of reliance. *Mazza v. Am. Honda Motor Co.,* 666 F.3d 581, 595-96 (9th Cir. 2012). *Johnson v. Harley-Davidson Motor Co.,* 285 F.R.D. 573, 584 (E.D. Cal. 2012) (citing *Nelson v. Pearson Ford Co.*, 186 Cal. App. 4th 983, 1022 (2010)). Where an omission is asserted, each claimant must prove that had the information been disclosed he or she

would have been aware of it and acted differently. *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (Cal. 1993).

The California Unfair Competition Law (UCL) permits recovery of injunctive relief and restitution but not damages. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (Cal. 2003). A court may make such orders and judgment as are necessary –to restore to any person in interest any money or property . . . which may have been acquired by means of such unfair completion." *In re Vioxx*, 180 Cal. 4th at 130-31 (citing CAL. BUS. & PROF. CODE § 17203). To obtain restitution, a claimant must establish the actual value of what the plaintiff received. *Id.* at 131.

The Illinois Consumer Fraud Act (ICFA) requires proof that a claimant experienced actual damages proximately caused by the unlawful conduct. *Oshana v. Coca-Cola Corp.*, 472 F.3d 506, 513-14 (7th Cir. 2006) (citing *Avery v. State Farm Mut. Auto Ins. Co.*, 835 N.E.2d 801, 850 (Ill. 2005)); *Oliveira v. Amoco Oil Co.,* 776 N.E.2d 151, 164 (Ill. 2002). A plaintiff must show that, absent the defendant's deception, plaintiff would not have made the alleged injurious purchase. *McManus v. Sturm Foods Inc.,* 292 F.R.D. 606*,* 614 (S.D. Ill. 2013) (citing *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010)). Causation may not be inferred under the ICFA. *Id*.

Under New Jersey's Consumer Fraud Act (NJCFA), a claimant must establish that he or she has sustained an –ascertainable loss" as the result of the alleged unlawful act. *Theidemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783 (N.J. 2005). Whether a litigant has sustained such a loss requires an examination of the particulars of the bargain, including the accompanying warranty. In *Theidemann*, the New Jersey Supreme Court held that a claimant had not sustained ascertainable loss when the allegedly defective fuel gauge in his automobile had been repaired

under the manufacturer's warranty. The court reasoned that defects can and do arise in complex products such as automobiles and the fact that a defect occurs does not in itself establish an ascertainable loss. *Id.* at 251. The vehicle's warranty provides part of the basis of the bargain between the parties. Consequently, where the warranty addresses the defect, the consumer has not sustained the required ―loss‖ under the statute. *Id.*

Since, the warranty forms part of the bargain, costs of repairs occurring after the warranty expires are not an ―ascertainable loss‖ under the NJCFA because the purchaser has agreed to bear such costs. *Perkins v. DaimlerChrysler Corp.*, 890 A.2d 997, 1004 (App. Div. 2006). *Noble v. Porsche*, 694 F. Supp. 2d 333, 337-38 (.D.N.J. 2010); *Duffy v. Samsung Elec. Am. Inc.*, 2007 WL 703197 (D.N.J. Mar. 2, 2007). Such claimants have not sustained an ascertainable loss even when they allege that the defect has safety implications. *Nobile*, 2011 WL 900119, at *6; *Duffy*, 2007 WL 703197, at *6.

Ohio's Consumer Sales Practices Act (OCSPA) requires a claimant to demonstrate that his or her damages were proximately caused by the defendant's deceptive act. *Butler v. Sterling Inc.,* 210 F.3d 371, *4, (6th Cir. 2000). The requisite causal link is absent where a claimant cannot show that defendant's conduct did not affect the decision to purchase the product at issue. *See Lilly v. Hewlett-Packard Co.*, 2006 WL 1064063 (S.D. Ohio Apr. 21, 2006).

Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCL) contains a ―stringent causation requirement.‖ *Trunzo v. Citi Mortg.,* 2014 WL 1317577 (W.D. Pa. March 31, 2014). *See also Williams v. Empire Funding Corp.,* 227 F.R.D. 362, 366 (E.D. Pa. 2005). As the Third Circuit has noted, the Pennsylvania Supreme Court has ―categorically and repeatedly‖ stated that the causation provision requires a claimant to prove justifiable reliance. *Hunt v. U.S. Tobacco*, 538 F.3d 217, 221 (3d Cir. 2008). Moreover, no presumption of reliance is available

under the statute. *Hunt*, 538 F.3d at 227. It follows that predominance for claims under the UTPCL is not shown merely by demonstrating that the defendant pursued a common course of conduct toward the class. If causation and damages must be determined on an individual basis class certification is not appropriate. *Trunzo*, 2014 WL 1317577, at *14; *Lester v. Percudani*, 217 F.R.D. 345, 353 (M.D. Pa. 2003).

### 2. *Causation Can Only be Determined on an Individual Basis*

As indicated above, the transmission issues reported by Plaintiffs may be caused by numerous factors unrelated to the alleged defect. Indeed, the reported issues are similar to a non-specific physical symptom such as a cough, which could be caused by anything from hay fever to throat cancer. The common cold may cause coughs but it would be a serious mistake to attribute all coughs to the common cold.

The need to make an individual determination of the causation in each vehicle that has displayed transmission issues defeats the predominance requirement. The Third Circuit addressed this very same issue in *Marcus*. Plaintiff alleged that the run-flat tires with which his vehicle was equipped were defective because they were unusually susceptible to road hazard damage. However, road hazard damage could occur even if the tire was not defective and the cause for each particular instance of damage had to be determined. The court reasoned,

> [T]hese damages allegations beg the question of what caused class members' tires to go flat and need replacement. Causation is pivotal to each of Marcus's claims. Here the District Court should have addressed an undisputed fundamental point: any tire can "go flat" for myriad reasons. Even "defective" tires can go flat for reasons completely unrelated to their defects. Critically, to determine why a particular class member's Bridgestone RFT has "gone flat and been replaced" requires an examination of that class member's tire. These individual inquiries are incompatible with Rule 23(b) (3)'s predominance requirement.

25

*Id.* at 604 (citations omitted); *see also Oscar v. BMW of N. Am. LLC*, 274 F.R.D. 498, 511 (S.D.N.Y. 2011); *Chin v. Chrysler Corp.,* 182 F.R.D. 448, 455 (D.N.J. 1998) (refusing to certify a class of purchasers and lessees of vehicles with alleged defective anti-lock brake systems because, among other things, "[e]ven where the alleged defect has manifested itself, individual issues of actual cause must be adjudicated").

The same result is mandated here. For every class vehicle, the trier of fact would need to determine whether transmission problems occurred, and, if so, what was the case of those problems. As in *Marcus*, the need for literally thousands of individual causation determinations precludes a finding of predominance.

Any attempt to evade this problem by arguing that all class members have been injured merely by purchasing a vehicle that contains a "defect" must fail. As indicated above, the law does not permit recovery of damages based upon the mere existence of a supposed "defect" that has not yet manifested and caused actual loss.

But even if the court did entertain some value-based theory of damages without requiring a manifestation of the alleged defect, the need to establish causation still defeats predominance. If each class member parted with money to buy his or her vehicle, why did he or she do so? Would his or her decision have been different if NNA had disclosed that the Maxima had a higher repair rate than the Altima or Quest? *See, e.g.*, *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (Cal. 1993). If the class contains persons who would have purchased the vehicle even if they were made aware of the "facts" as alleged by Plaintiffs, it contains persons who cannot demonstrate that they have sustained an "ascertainable loss" because of the defendant's conduct. *See McManus v. Sturm Foods, Inc.*, 292 F.R.D. 606, 613-14 (S.D.Ill. 2013). The need to make that inquiry on an individual basis precludes the possibility that common issues predominate.

E.    **DAMAGES RAISES SIGNIFICANT INDIVIDUAL ISSUES**

Although class certification is not precluded merely because the amount of damages of the class members vary, courts must assess the degree to which the need to make individual damages determinations would overwhelm the common issues. *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 602 (5th Cir. 2006). Here there is simply no valid remedial scheme, consistent with the controlling substantive law, that would avoid the need to make detailed individual damages determinations.

1.    *Certification Requires a Viable Classwide Damages Theory*

Each class member must establish that he or she has sustained damages recoverable under the relevant cause of action. If "questions of . . . damages calculations will inevitably overwhelm questions common to the class certification is inappropriate." *Comcast*, 133 S. Ct. at 1433. The *Comcast* court stated that plaintiffs must show that "damages are capable of measurement on a classwide basis." *Id*; *see also Haskins v. First Am. Title Ins. Co.*, 2014 WL 294654, at *15 (D.N.J. Jan. 27, 2014);; *Bright v. Asset Acceptance LLC*, 292 F.R.D. 190, 202 (D.N.J. 2013). As the District of Columbia Circuit Court of Appeals succinctly expressed: "No damages model, no predominance, no class certification." *In re Rail Freight In re Rail Freight Fuel Surcharge Antitrust Litigation-MDL,* 725 F.3d 244, 253 (D.C. Cir. 2013).

*Comcast v. Behrend* also highlights the requirement that the damages model presented must *match* the recovery available under the applicable law. In *Comcast*, plaintiffs' damages model proposed four different theories of antitrust impact, and the district court rejected all but one. *Comcast,* 133 S. Ct. at 1431. The sole ground for asserting that damages could be calculated on a classwide basis was a model that assumed the validity of all four theories. The Supreme Court rejected the use of the model. Permitting class certification on a model that did not match

the plaintiffs' sole valid theory of liability indicated a failure to conduct the rigorous analysis required by Rule 23. *Id.* at 1433. Without a valid damages model, predominance could not be shown for  ̶  questions of individual damage calculations will inevitably overwhelm question common to the class." *Id.*

It is insufficient to suggest, as Plaintiffs have in their trial plan, that the issue of how to determine classwide damages be deferred until the liability phase of the trial is complete. Actual, not promised, compliance with the predominance requirement is necessary and the court must be satisfied *now* that Plaintiffs have a valid theory of classwide damages. *Parko v. Shell Oil Co.*, 739 F.3d 1053, 1086-87 (7th Cir. 2014);  *see also Hayes v. Wal-Mart Stores, Inc.,* 725 F.3d 349, 358 (3d Cir. 2013) (the trial court cannot take a wait-and-see approach to any requirement of Rule 23).

### 2. *Plaintiffs Have Failed to Present a Viable Classwide Damages Theory*

Plaintiffs do not demonstrate how damages can be measured on a classwide basis. Indeed, their Memorandum does not even hint at a common measure of damages applicable to all claims. The available evidence refutes any notion that individual determination will be unnecessary. Indeed, the five Plaintiffs reported widely varying economic consequences associated with their transmission issues. Abdullah paid approximately $1200 for his repair.[32] Creel paid approximately $1450.[33]  Ebner has not had her vehicle repaired but reports out-of-pocket loss of around $800.[34]  Nelson had her transmission replaced for about $2700.[35]  Taplet

---

[32]  Abdullah Dep. at 15:17–22.
[33]  Creel Dep. at 43:2-7 & 44:24 – 45:6 & 45:14 – 46:22.
[34]  Ebner Dep. at 54:25 – 55:1-4.
[35]  Nelson Dep. at 33:22 – 34:11.

has expended over $2600 for vehicle repairs.[36]  While Ebner has attempted to sell her vehicle and asserts that the transmission issues have reduced its value, the other Plaintiffs' vehicles have been satisfactorily repaired and they have no plans to sell their vehicles.[37]  Some of the Plaintiffs have had to pay for rental cars while their vehicles were out of service, while others were able to use other vehicles without incurring an out-of-pocket loss.[38]  In short, Plaintiffs assert that they have been damaged in varying ways in varying amounts. The kind *and* extent of damage each has sustained can only be determined on an individual basis.

Plaintiffs vaguely suggest that some form of loss-of-value damages could be determined on a classwide basis based on the amount required to repair or replace the transmission. This suggestion, made without any authority, is not viable. First, cost of repair has never been used as a measure of damages for a product that *has not been* repaired or *does not need* repair. *See Frank v. DaimlerChrysler Corp.*, 741 N.Y.S.2d 9, 16-17 (N.Y. App. Div. 2002) ("[I]t would be manifestly unfair to require a manufacturer to become, in essence, an indemnifier for a loss that may never occur."). Second, the cost of repair remedy is also inappropriate where the vehicle purchaser actually received a successful repair under the warranty. Third, the evidence shows that the actual repair costs vary substantially. Any attempt to apply some sort of average to the entire class would under-compensate class members with higher than average costs while over-compensating those with lower costs. Fourth, repair costs do not provide an appropriate measure of damages where the award of such costs would amount to economic waste. *See, e.g.*, *BLB Aviation South Carolina, LLC v. Jet Linx Aviation, LLC*, 784 F.3d 829, 841 (8th Cir. 2014).

---

[36]   Taplet Dep. at 37:16 – 19.
[37]   Nelson Dep. at 34:15-20; Taplet Dep. at 37:7-15 & 58:1-3 & 58:12-20; Creel Dep. at 46:23-25 – 47:1-11 & 13:17-19; Abdullah Dep. at 123:24 – 124:1.
[38]   Nelson Dep. at 43:16-25; Creel Dep. at 64:8-17; Ebner Dep. at 55:25 – 56:17; Abdullah Dep. at 88:12 – 89:4; Taplet Dep. at 52:12 – 53:6.

Finally, Plaintiffs' suggestion fails to take into account situations where the vehicle has had multiple owners. There is no rationale to require NNA to pay for more than one repair to the same vehicle. In short, the notion that cost-to-repair provides a valid measure of damages applicable to all class members does not survive even minimal scrutiny.

Equally problematic is the absence of any equitable distribution scheme. Plaintiffs assert this is no impediment to class certification because defendants have no interest in the process and thus should not be permitted to participate in it. The Third Circuit rejected this position in *Carrera v. Bayer Corp.,* 727 F.3d 300, 310 (3d Cir. 2013)*,* holding that defendants had a valid interest in an equitable distribution since an inequitable distribution could lead to future assertions that the class had not been adequately represented and was thus not bound by the judgment. *Id.*

Moreover, Plaintiffs' proposal amounts to an impermissible ―fluid recovery" scheme. In *McLaughlin v. American Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008), the court considered a damages methodology similar to what Plaintiffs propose here where aggregate liability was determined with the resulting fund being distributed according to a simplified claims process. The Second Circuit held that this approach violated the Rules Enabling Act and the defendant's due process rights. The procedure threatened to result in an astronomical damages figure that did not accurately reflect the number of plaintiffs actually injured and bore little or no relationship to the economic harm actually caused. *Id.* at 231. The fluid recovery technique impermissibly increases the defendant's liability by allowing individuals who could not have substantiated their individual claims to share in the recovery. *Id.* at 231-32. *See also Bayshore Ford Truck v. Ford Motor Co.*, 2010 WL 415329 (D.N.J. Jan. 29, 2010) (decertifying class because any aggregate

damages model had to preserve Ford's right to question the damages claims of individual class members).

3.   *Other Differences Among the Class Members Preclude a Common Damages Determination*

Plaintiffs have pleaded for consequential damages and some of them have sustained consequential loss by paying for rental cars during the times their vehicles were out of service. The Uniform Commercial Code provides for the recovery of such consequential losses in a proper case. *See, e.g.,* CAL. COM. CODE § 2715. The existence and extent of consequential damages provide another individual issue.

The restitution remedy under California's UCL and other statutes adds an additional measure of complexity to the damages problem. Under the statute, "the difference between what the plaintiff paid and the value of what the plaintiff received is a proper measure of restitution." *In re Vioxx Class Cases,* 180 Cal. App. 4th 116, 131 (2009). A party seeking restitution must return any benefit that it has received. *Dunkin v. Bosley,* 82 Cal. App. 4th 171, 198 (Cal. App. 2000). Hence, restitution recovery requires evidence of the value the claimant received from the product. *In re POM Wonderful LLC,* 2014 WL 1225184, at *3 (C.D. Cal. Mar. 25, 2014) (citing *In re Vioxx,* 180 Cal. App. 4th at 131). The class members obviously received some value from their vehicles. How much value they received depends upon how the vehicles performed, which is an individual issue that cannot be determined upon a classwide basis.

The proposed classes include all vehicle purchasers and lessees. Plaintiffs' damages approach fails to distinguish between vehicle owners and lessees. Lessees will not have experienced any demonstrable loss in the vehicle's resale value because they do not own the vehicle and cannot sell it. *See Dabush v. Mercedes-Benz USA LLC,* 874 A.2d 1110, 1120-21

(N.J. Super. 2005). In short, even if the basic liability facts were established, there is no one-size-fits-all remedy.

**F.      THE UNJUST ENRICHMENT CLAIM POSES SIGNIFICANT INDIVIDUAL ISSUES**

The precise nature of the unjust enrichment claim varies substantially from state to state. *Martin v. Ford Motor Co.*, 292 F.R.D. 252, 280 (E.D. Pa. 2013); *Muehlbauer v. Gen. Motors Corp.*, 2009 WL 874511 at \*6 (N.D. Ill. Mar. 31, 2009). Nevertheless, at its most fundamental level, unjust enrichment requires a determination of the benefit received by the defendant in comparison to the value received by the plaintiffs. Here, both sides of the transaction require individual adjudication. Some class members leased their vehicles. Others purchased them. Some vehicles were purchased new, others used. (It is difficult to see how NNA benefits from sales of used Maximas.)   Accordingly, the benefit conferred on NNA was not the same. *See Martin*, 292 F.R.D. at 280.

Moreover, the benefit received by the class members was not the same. A majority of vehicles passed through their expected lifespans without experiencing transmission problems. Those purchasers and lessees received the full value of the bargain. *See Green* , 279 F.R.D. at 284 (D.N.J. 2011). Persons whose transmissions were repaired under warranty also received full value for the warranty that forms a part of the bargain. *Theidemann*, 872 A.2d at 794-95 (N.J. 2005). Any adjudication must necessarily involve a consideration of the circumstances surrounding the purchase and use of each vehicle. Individual issues predominate.

**VII.**
**A CLASS ACTION IS NOT THE SUPERIOR FORM OF ADJUDICATION**

Rule 23(b)(3) requires finding *both* that common issues predominate *and* that a class action is superior to other available methods for fairly and efficiently adjudicating the

controversy. The rule sets forth four non-exclusive considerations pertinent to these findings: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1277 (11th Cir. 2009). "In determining superiority, courts must consider the four factors of Rule 23(b)(3)." *Zisner v. Accufix Research Inst.,* 253 F.3d 1180, 1190 (9th Cir. 2001). Plaintiffs' Memorandum lacks any serious discussion of these factors. When they *are* examined, it is apparent that class litigation is not the superior manner of resolving the dispute.

## A.   THE NEED FOR INDIVIDUAL ISSUES DETERMINATIONS WILL RENDER CLASS LITIGATION INEFFICIENT

A class action must represent the best "available method for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3); *Newton v. Merrill Lynch, Pierce Fenner & Smith, Inc.,* 259 F.3d 154, 191 (3d Cir. 2001). Whether the proposed class action is manageable is a key determinant of whether it provides a superior form of adjudication. The court must consider "the whole range of practical problems that may render the class action format inappropriate for a particular suit." *Newton*, 259 F.3d at 191 (citing *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 164 (1974)).

Here, the practical problems of trying this suit as a class action are both readily apparent and overwhelming. For any given claimant, a whole array of factual determinations will be necessary, including: (1) Did the vehicle encounter transmission problems? (2) Were they experienced during the warranty? (3) Did the claimant seek a repair from NNA? (4) Did NNA

fail to repair the vehicle?  (5) Was the vehicle reasonably fit to provide transportation?  (6) If not, when did the vehicle cease to be reasonably fit?  (7) Would the claimant have acted differently if the claimant had been informed of the Maxima's rate of repairs and complaints?  (8) What caused the transmission problems the claimant encountered?  (9) What were the costs of repair?  (10) How was the value of the vehicle affected, if it all?  None of these determinations may be made through common proof. Yet all of them must be made before the claims of any class member may be fully determined. Resolution of the very few ‑common" issues simply does not advance the ball very far toward the goal line.

Moreover, any attempt to litigate the claims must preserve NNA's rights to assert individual defenses to the claims asserted. *See Dukes,* 131 S. Ct. at 2561 (rejecting trial plan that denied defendant's right to present individual defenses as a violation of the Rules Enabling Act); *Newton,* 259 F.3d at 191-92 (ability of defendant to raise individual issues was factor bearing upon manageability). For instance, NNA has moved for summary judgment, in part, on the basis of statute of limitations against Abdullah and Ebner. NNA will also be able to challenge the standing of many of the class members to recover under the various consumer statutes.[39]  The need to litigate these defenses on an individual basis further evades the minimal utility of the class procedure. Plaintiff's Trial Plan does not take any of the individual issues or defenses into account and provides no hint about how they are to be resolved. Of course, this Court cannot take such a cavalier attitude towards these significant issues.

---

[39]   The statutes generally permit recovery only to those claimants purchasing products for personal use rather than business use. The proposed class includes businesses, which would not be entitled to recover under the statutes.

## B.   INDIVIDUAL LITIGATION AND AGENCY ACTION REPRESENT VIABLE ALTERNATIVES

Plaintiffs rely upon the assertion that the damages recoverable for each plaintiff are too small to justify individual litigation and thus a class action forms the only practical means of adjudicating the claims. This factor ―by itself is insufficient to overcome the hurdles of predominance and superiority and efficient and fair management of a trial which Rule 23(b) requires.‖ *In re LifeUSA Holding Inc.,* 242 F.3d 136, 148 n.13 (3d Cir. 2001). As demonstrated, class litigation involves serious manageability issues, which Plaintiffs have failed to resolve in their trial plan. The court may not simply assume that Plaintiffs will somehow overcome these issues.

Equally important, the court must consider the extent to which fee shifting and other provisions of the various consumer protection statutes make individual litigation viable to enforce the rights of any class members that may have legitimate claims. *See Maguire v. Sandy Mac, Inc.,* 145 F.R.D. 50, 53 (D.N.J. 1992). *See also Lester v. Percudani*, 217 F.R.D. 345, 354 (M.D. Pa. 2003) (finding class litigation was not superior in light of fee shifting provision of Pennsylvania‗s UTPCL and the clear predominance of individual issues); *Curley v. Cumberland Farms Dairy, Inc.*, 728 F. Supp. 1123, 1133 (D.N.J. 1989) (declining to certify small-damages RICO claim in light of fee-shifting provision contained in the statute).

Each of the state consumer protection statutes at issue has provisions allowing a prevailing party to recover attorneys‗ fees. *See, e.g.,* N.J.S.A. 56:8-19; 73 PA. CONS. STAT. ANN. § 201-9.2; OHIO REV. CODE ANN. § 1345.09(F); CAL. CIV. CODE § 1780(a); 815 ILL. COMP. STAT. 505/10a(c). These provisions are specifically designed to encourage litigants with relatively small damages to sue under the Statute. The court should not presume that a class action is the only means by which the rights of the class members may be vindicated.

Plaintiffs and their expert have alleged that the so-called transmission defect poses a safety risk. Ten years of experience with more than 200,000 vehicles would seem to refute this speculation. However, to the extent Plaintiffs continue to assert that safety is a genuine concern, they have a far superior remedy than can be provided by class litigation. They may petition the National Highway Traffic Safety Administration (NHTSA) to require a recall of the subject vehicles. Numerous courts have recognized that the administrative remedy is superior to class litigation to address claims that an alleged defect that has not yet manifested itself in the majority of vehicles poses a safety risk. *See In re Bridgestone/Firestone Inc.*, 288 F.3d 1012,  1019 (7th Cir. 2002) (―Regulation by NHTSA, coupled with tort litigation by persons suffering physical injury, is far superior to a suit by millions of uninjured buyers for dealing with consumer products that are said to be failure-prone"); *Chin v. Chrysler Corp.*, 182 F.R.D. at 463-65; *Am. Suzuki Motor Corp. v. Superior Court,* 37 Cal. App. 4th 1291-99 (Cal. Ct. App. 1995) (NHTSA recall remedy was superior to implied warranty action).

## VIII.
## THE ALTERNATIVE CLASSES ARE NEITHER SUFFICIENTLY NUMEROUS NOR ADEQUATELY ASCERTAINABLE

An ―essential prerequisite" to certification is that the proposed class must be currently and readily ascertainable based on objective criteria. *Marcus*, 687 F.3d at 592-93. If class members are impossible to identify without extensive or individualized fact-finding or ―mini-trials," a class action is inappropriate. *Id.*

Class membership may not be established by a method that relies upon the would-be class members say so. In *Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013), the Third Circuit held that a class of persons who purchased a dietary supplement from retail sellers was not sufficiently ascertainable because there were no objective records of the identities of such

purchasers. The Court of Appeals explained that the defendant had the right to challenge any person's mere assertion that he or she was a class member. *Id* at 307. The Court of Appeals rejected the suggestion that the affidavits of class members were a sufficient basis to establish class membership because this approach did not permit the defendants to challenge class membership. *Id.* at 309.

The alternative classes do not meet the Third Circuit's ascertainability test. To be a member of the alternative class a person must have owned or leased a class vehicle, experienced a transmission problem during the term of the warranty, presented it for repair at a Nissan dealership and the dealership must have refused to repair it. There are no objective records kept regarding repairs *that are not made*. Membership in the class must necessarily be based on the testimony of each alleged class member and, under *Carrera*, NNA has the right to challenge the testimony on an individual basis. Since class membership cannot be established without individualized fact finding, class certification is inappropriate.

Moreover, Plaintiffs have not established the numeroisty of the proposed alternative classes. Under Rule 23(a)(1), the class must be so numerous that joinder of all members is impracticable. *Marcus*, 687 F.3d at 594. The Third Circuit emphasized that evidence that is sufficient to establish numerosity for a nationwide class is not sufficient to establish numerosity for a particular statewide class. *Id*; *see also Vega v. T-Mobile USA Inc.*, 564 F.3d 1256, 1266-68 (11th Cir. 2009). Plaintiffs have presented no evidence sufficient to show that the alternative classes are sufficiently numerous. In *Marcus*, the proposed class consisted of New Jersey purchasers and lessees of 2006 – 2009 model year BMWs that were equipped with Bridgestone RFTs that had gone flat and had been replaced. The Court of Appeals held that the numerosity requirement had not been satisfied in the absence of evidence of the number of persons who met

the criteria for class membership. *Marcus*, 687 F.3d at 596. Similarly, in *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349 (3d Cir. 2013), the court of appeals found that numerosity was not satisfied where plaintiffs failed to show the number of claimants with the particular transactions that defined the class. *Id.* at 359.

Plaintiffs present no evidence of the number of persons in each state who meet *all* of the criteria for class membership. Indeed, in at least three cases, Plaintiffs themselves do not meet them. Abdullah, Nelson, and Taplet testified that they did not seek any repairs during the warranty period.[40]   ―If there are no members of the class other than the named representatives, then Rule 23(a)(1) obviously has not been satisfied.‖  *Id.* at 597. Under *Marcus*, the numerosity requirement has not been satisfied for the alternative classes.

## IX.
## CONCLUSION

Plaintiffs' broad-brush approach to certification cannot withstand the rigorous analysis that the court is required to make. Each of the asserted claims depends upon multiple determinations that can only be made on an individual basis. The efficiencies of class litigation cannot be realized in this case without an impermissible distortion of the substantive law. Accordingly, the Court should deny the motion.

---

[40]   Abdullah Dep. at 74:9-21 – 75:1-2; Nelson Dep. at 32:22 – 34:25; Taplet Dep. at 20:12-15 & 25:3-13.

Respectfully submitted,


By:      *s/ Martin Healy*
Martin Healy
E. Paul Cauley, Jr. (admitted *pro hac vice*)
S. Vance Witte (admitted *pro hac vice*)
SEDGWICK LLP
*Attorneys for Defendants*
*Nissan North America, Inc. and*
*Nissan Extended Services North America, GP*

Three Gateway Center, 12th Floor
Newark, New Jersey 07102
Telephone: 973.242.0002
Facsimile:  973.242.8099
martin.healy@sedgwicklaw.com

1717 Main Street, Suite 5400
Dallas, TX  75201
Telephone: (469) 227-8200
Facsimile: (469) 227-8004
paul.cauley@sedgwicklaw.com
vance.wittie@sedgwicklaw.com