## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

TAMEKA NELSON, RICHARD CREEL, KARIM ABDULLAH, RUTH TAPLET, and NANCY EBNER individually and on behalf of all others similarly situated,

         Plaintiffs,

    vs.

NISSAN NORTH AMERICA, INC., a California corporation; NISSAN MOTOR COMPANY LTD., a Japanese Company, NISSAN EXTENDED SERVICES NORTH AMERICA, GP, a Tennessee partnership,

         Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No.  1:11-cv-05712-JEI-AMD

**CLASS ACTION**

**JURY TRIAL DEMANDED**

---

## PLAINTIFFS' REPLY IN SUPPORT OF CLASS CERTIFICATION

---

Michael A. Caddell
Cynthia B. Chapman
Cory S. Fein
CADDELL & CHAPMAN, P.C.
1331 Lamar, Suite 1070
Houston TX 77010

Joseph G. Sauder
Matthew D. Schelkopf
Benjamin F. Johns
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford PA 19041

H0038522.

# TABLE OF CONTENTS

I.  INTRODUCTION ....................................................................................1

II. FACTUAL BACKGROUND......................................................................1

    A.  The Evidence Supports Plaintiffs' Theory of a Common Defect .........1

    B.  The Defect Tends to Manifest After Three Years.................................2

    C.  Issues with Remanufactured Transmissions are Irrelevant..................2

    D.  The Evidence Overwhelmingly Shows a Common Defect .................3

    E.  Nissan Grossly Underestimates the Transmission Failure Rate ..........5

    F.  Harsh Shift is Caused by the Defect ...................................................6

III. ARGUMENT...........................................................................................7

    A.  Common Questions are Properly Identified........................................7

    B.  Plaintiffs' Claims Are Typical. ...........................................................7

    C.  Common Questions Predominate With Respect to Plaintiffs'
        Claims.................................................................................................9

        1.  Express Warranty Claims .........................................................9

        2.  Implied Warranty Claims.........................................................10

        3.  State Consumer Protection Claims ...........................................13

        4.  Causation..................................................................................13

        5.  Damages...................................................................................14

        6.  Unjust Enrichment ...................................................................16

      D.    Class Action is Superior.....................................................................17

      E.    Alternative Classes are Sufficiently Numerous and
             Adequately Ascertainable ................................................................19

IV.    CONCLUSION..........................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*,
  133 S. Ct. 1184 (2013)......................................................................................13

*Banks v. Nissan N. Am., Inc.*,
  No. 11-2022 PJH, 2013 WL 6700299
  (N.D. Cal. Dec. 19, 2013).........................................................................18–19

*Carrera v. Bayer Corp.*,
  727 F.3d 300 (3d Cir. 2013) ..........................................................................19

*Chakejian v. Equifax Info. Servs. LLC*,
  256 F.R.D. 492 (E.D. Pa. 2009) ...................................................................18

*Chin v. Chrysler Corp.*,
  182 F.R.D. 448 (D.N.J. 1998) .......................................................................18

*City Select Auto Sales, Inc. v. David Randall Assocs.*,
  296 F.R.D. 299 (D.N.J. 2013) .......................................................................19

*ClubCom, Inc. v. Captive Media, Inc.*,
  No. 07-1462, 2009 U.S. Dist. LEXIS 7960
  (W.D. Pa. Jan. 31, 2009)................................................................................16

*Comcast Corp.  v. Behrend*,
  133 S. Ct. 1426, 1433 (Mar. 27, 2013).........................................................14

*Daffin v. Ford Motor Co.*,
  No. 1-00-458, 2004 WL 5705647
  (S.D. Ohio July 15, 2004) *aff'd*, 458 F.3d 549 (6th Cir. 2006) ..............13, 18

*Dal Ponte v. Am. Mortg. Express Corp.*,
  No. 04-2152 (JEI), 2006 U.S. Dist. LEXIS 57675
  (D.N.J. Aug. 17, 2006) ..................................................................................11

*Dzielak v. Whirlpool Corp.*,
    2014 U.S. Dist. LEXIS 83148, 50, 2014 WL 2758746
    (D.N.J. June 16, 2014) .....................................................................................16

*Ebin v. Kangadis Food, Inc.*,
    297 F.R.D. 561 (S.D.N.Y. 2014) .....................................................................12

*Ebin v. Kangadis Food, Inc.*,
    No. 13-2311, 2014 U.S. Dist. LEXIS 25838
    (S.D.N.Y. Feb. 24, 2014) .................................................................................11

*Elias v. Ungar's Food Prods., Inc.*,
    252 F.R.D. 233 (D.N.J. 2008) ............................................................................9

*Ewert v. eBay, Inc.*,
    No. C–07–02198 RMW, 2010 WL 4269259
    (N.D.Cal. Oct. 25, 2010) .................................................................................13

*Gates v. City of Chicago*,
    2011 WL 1811187
    (N.D. Ill. May 12, 2011) ..................................................................................15

*Green v. Green Mt. Coffee Roasters, Inc.*,
    279 F.R.D. 275 (D.N.J. 2011) ..........................................................................11

*Hayes v. Wal-Mart Stores, Inc.*,
    725 F.3d 349 (3d Cir. 2013) ............................................................................19

*Henderson v. Volvo Cars of N. Am., LLC*,
    No. 09-4146 (CCC), 2013 U.S. Dist. LEXIS 46291
    (D.N.J. Mar. 22, 2013) .....................................................................................11

*In re Bridgestone/Firestone Inc.*,
    288 F.3d 1012 (7th Cir. 2002) ..........................................................................18

*In re Bulk [extruded] Graphite Prods. Antitrust Litig.*,
    No. 02-6030, 2006 U.S. Dist. LEXIS 16619
    (D.N.J. Apr. 4, 2006) .........................................................................................7

iv

*In re Canon Cameras Litig.*,
   237 F.R.D. 357 (S.D.N.Y. 2006) ............................................................11–12

*In re Certainteed Fiber Cement Siding Litig.*,
   MDL 2270, 2014 WL 1096030
   (E.D. Pa. Mar. 20, 2014) ..............................................................................7

*In re Merck & Co., Sec. Derivative & ERISA Litig.*,
   No. 05-1151, 2013 U.S. Dist. LEXIS 13511
   (D.N.J. Jan. 30, 2013) ...............................................................................7–8

*In re Neurontin Antitrust Litig.*,
   02-1390, 2011 U.S. Dist. LEXIS 7453
   (D.N.J. Jan. 25, 2011) ...................................................................................20

*In re Remeron End-Payor Antitrust Litig.*,
   No. 02-2007 (FSH), 2005 U.S. Dist. LEXIS 27011
   (D.N.J. Sept. 13, 2005) ..................................................................................8

*In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*,
   722 F.3d 838 (6th Cir. 2013) *cert. denied*,
   134 S. Ct. 1277 (U.S. 2014) ..........................................................................16

*Jacob v. Duane Reade, Inc.*,
   293 F.R.D. 578 (S.D.N.Y. 2013) ............................................................14–15

*Jermyn v. Best Buy Stores, L.P.*,
   256 F.R.D. 418 (S.D.N.Y. 2009) ..................................................................16

*Joseph v. General Motors Corp.*,
   109 F.R.D. 635 (D. Colo.1986) .....................................................................17

*Kalow & Springut, LLP v. Commence Corp.*,
   No. 07-3442 (JEI/AMD), 2012 U.S. Dist. LEXIS 173785
   (D.N.J. Dec. 7, 2012) ..............................................................................10–11

*Keegan v. Am. Honda Motor Co., Inc.*,
   284 F.R.D. 504, 530–31 (C.D. Cal. 2012), *leave to appeal denied*,
   2012 WL 7152289 (9th Cir. Nov. 9, 2012) .............................................13–14

*Makaeff v. Trump Univ., LLC*,
　No. 10-CV-0940-GPC-WVG, 2014 WL 688164
　(S.D. Cal. Feb. 21, 2014) ...............................................................................14

*Martin v. Ford Motor Co.*,
　292 F.R.D. 252 (E.D. Pa. 2013) .......................................................8, 11–12

*Muehlbauer v. GMC*,
　431 F. Supp. 2d 847 (N.D. Ill. 2006)............................................................16

*Parkinson v. Hyundai Motor Am.*,
　258 F.R.D. 580 (C.D. Cal. 2008) ..................................................................17

*Rodriguez v. It's Just Lunch, Int'l*,
　No. 07 CIV. 9227 SHS, 2014 WL 1921187
　(S.D.N.Y. May 14, 2014) ...............................................................................13

*Slipchenko v. Brunel Energy, Inc.*,
　2013 WL 4677918
　(S.D. Tex., Aug. 30, 2013) .............................................................................15

*Stewart v. Abraham*,
　275 F.3d 220 (3d Cir. 2001) ..........................................................................20

*Sullivan v. DB Invs., Inc.*,
　667 F.3d 273 (3d Cir. 2011), *cert. denied sub. nom.*,
　*Murray v. Sullivan*, 132 S. Ct. 1876 (2012) .................................................10

*Summerfield v. Equifax Info. Servs. LLC*,
　264 F.R.D. 133 (D.N.J. 2009) ........................................................................18

*Terrill v. Electrolux Home Products, Inc.*,
　295 F.R.D. 671 (S.D. Ga. 2013) ......................................................................9

*Williams v. Pressler & Pressler, LLP*,
　No. 11-7296, 2013 U.S. Dist. LEXIS 139643
　(D.N.J. Sept. 27, 2013) ...................................................................................10

*Wilson v. County of Gloucester*,
　256 F.R.D. 479 (D.N.J. 2009) ...............................................................7, 9, 16

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) ...............................................................*passim*

# I.     INTRODUCTION

In challenging virtually every element of Rule 23, Nissan advocates a standard for class certification which would make it impossible to certify any case involving a defective product.  The applicable law, however, does not impose these exacting hurdles in cases involving a product that suffers from a uniform, concealed defect.  All of the Class Vehicles contain the same defect, which leads to the same injury, and which harms all putative class members in the same manner.  Accordingly, class certification should be granted.

# II.     FACTUAL BACKGROUND

## A.     The Evidence Supports Plaintiffs' Theory of a Common Defect

Nissan falsely claims that Plaintiffs' expert bases his conclusion regarding the Class Vehicle's defect on a comparison of repair rates and complaints.  To the contrary, Plaintiffs' expert primarily relies on the thorough report of Aisin, the company that Nissan selected to manufacture the transmissions at issue.  Nissan also claims that the investigation into the transmission issues "do not support the theory that the transmission repairs had a single cause," and that "problems with original equipment transmissions cannot be attributable [to] a single cause capable of being established with common proof."  (Dkt. 137 at 2, 4.)  The investigation, however, unequivocally supports the theory of a single defect (actually, a

combination of two inter-related defects) that is common to every Class vehicle, and these defects can and will be established with common proof.  (*Id.* at 3, 9–14.)

**B.     The Defect Tends to Manifest After Three Years**

Nissan highlights that there was "no material difference in the repair rate of the Maxima as compared with the Altima and Quest vehicles with 22A transmissions ***during the first three years*** in service." (Dkt. 137 at 2–3) (emphasis added.)  This fact is irrelevant because Plaintiffs' theory, as confirmed by Aisin's analysis[1], is that the defect does not tend to manifest during the first three years because it takes time for the excessive heat to break down the transmission.

**C.     Issues with Remanufactured Transmissions are Irrelevant**

Nissan contends that it "identified a number of issues with ***replacement (remanufactured) transmissions*** affecting the repair rate."[2]   (Dkt. 137 at 3)



(emphasis added.)   Plaintiffs do not seek to recover damages resulting from malfunctions in remanufactured transmissions.[3]   Moreover, the only reason so many remanufactured transmissions were installed in the Class Vehicle Maximas was because so many of the original equipment transmissions were failing.  Nissan has no grounds for rejecting Aisin and AWTEC's findings regarding the high rate of malfunctions in Class Vehicle Maximas with *original* transmissions.

**D.      The Evidence Overwhelmingly Shows a Common Defect**

Despite mountains of evidence regarding the common defect causing malfunctions in the Class Vehicle Maximas, Nissan claims ignorance.  Nissan's corporate designee implausibly claimed that he had seen no indications of a higher incident rate in original transmissions; was unable to answer whether certain test results dealt with remanufactured or original transmissions; disputed multiple findings regarding the defect with no basis, and claimed he was "not aware of anything that could cause an increase in incident rate for OE transmissions."[4]  This

---

[3]  The three issues with the *replacement remanufactured* transmissions (referred to as "remans") listed by Nissan, and improvements in Awtec's *remanufacturing* process are completely irrelevant to the present case which involves only defects causing malfunctions in *original* transmissions.



3

testimony is not credible and flatly contradicts all of the documentary evidence of a

common defect, including:



■ ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████

**E.      Nissan Grossly Underestimates the Transmission Failure Rate**

████████████████████████████████████████

████████████████████████    ████████████████

████████████████████████████████████████

████████████████████████████████████████

███████ ▪  ██████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████▪  █████████████████████

████████████████████████████████████████

████████

_____

■ ████████████████████████████████████████
██████ ████████ ████████ ████████ ██ ████████ ██ ████████
████████████████

[6]  *See* Plaintiffs' Opening Memorandum of Law in Support of their Motion for Class Certification, at 13–14.

**F.      Harsh Shift is Caused by the Defect**

Finally, Nissan argues that a class should not be certified because the harsh shift could be caused by causes other than the alleged defect. Nissan argues that "what the driver may perceive as a transmission issue may actually be caused by another component such as the motor mount." (Dkt. 138 at 4.)  Nissan's argument ignores the fact that the class members brought their vehicles into Nissan dealerships for repairs as required by the warranty, and if harsh shift was caused by something other than the defect, the dealership would have repaired it. For example, Nissan claims that a worn motor mount could be another cause of shift. However, a worn motor mount would have been easily diagnosed and repaired.



███████████████████████████████████████████████████

█████████

## III.   ARGUMENT

### A.   Common Questions are Properly Identified.

Although Nissan focuses on the substance and merits of Plaintiffs' theory, the relevant class certification inquiry for the commonality requirement is whether Plaintiffs have "put forth at least one common issue of law or fact." *Wilson v. County of Gloucester*, 256 F.R.D. 479, 486 (D.N.J. 2009) (Irenas, J.) Contrary to Nissan's contention, whether the Class Vehicles are defective (and whether it breached a duty to disclose this fact) are common issues sufficient to satisfy commonality.[7]

### B.   Plaintiffs' Claims Are Typical.

Typicality evaluates whether the named plaintiffs' claims are typical of the class, so that their incentives are aligned with those of the class. *In re Bulk [extruded] Graphite Prods. Antitrust Litig.*, No. 02-6030, 2006 U.S. Dist. LEXIS 16619, *15–16, (D.N.J. Apr. 4, 2006).   Typicality does not require complete

---

[7] *See In re Certainteed Fiber Cement Siding Litig.*, MDL 2270, 2014 WL 1096030 at *10 (E.D. Pa. Mar. 20, 2014) (in a case involving breach of warranty, whether a product's failure was caused by a defect is a common question capable of resolution on a class-wide basis); W*olin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1173 (9th Cir. 2010) (commonality requirement is "easily" satisfied where plaintiffs' claims "involve the same alleged defect, covered by the same warranty, and found in vehicles of the same make and model".).

uniformity.  *See, e.g.*, *In re Merck & Co., Sec. Derivative & ERISA Litig.*, No. 05-1151, 2013 U.S. Dist. LEXIS 13511, *40 (D.N.J. Jan. 30, 2013) (stating factual differences between plaintiffs' claims and absent class members does not defeat typicality).  Indeed, the "Third Circuit has 'set a low threshold for satisfying' the typicality requirement" when the claims of plaintiffs and the class involve the same conduct by the defendant.  *In re Remeron End-Payor Antitrust Litig.*, No. 02-2007 (FSH), 2005 U.S. Dist. LEXIS 27011, *24 (D.N.J. Sept. 13, 2005) (citation omitted).  Here, each Plaintiff purchased a Class Vehicle, suffered economic injuries caused by the defect, and stated viable claims based on Nissan's conduct.  Experiencing the defect at different times and mileages does not bar a finding of typicality.  *See id.* at *16 ("A finding of typicality will generally not be precluded even if there are 'pronounced factual differences' where there is a strong similarity of legal theories.")  All of Plaintiffs' claims arise "from the same event or practice or course of conduct that gives rise to the claims of the class members . . . [and] are based on the same legal theor[ies]."  *In re Merck & Co., Sec. Derivative & ERISA Litig.*, 2013 U.S. Dist. LEXIS 13511 at *40 (citation omitted) (finding typicality satisfied and certifying a class).

Nissan's reliance on *Martin v. Ford Motor Co.*, 292 F.R.D. 252 (E.D. Pa. 2013), is misplaced.  The *Martin* plaintiff was the sole representative of a 23-state subclass and failed to satisfy typicality as he did not have a viable breach of

express warranty claim.  *Id.* at 269.  The situation here is markedly different, as Plaintiffs are seeking certification of viable claims and the common thread tying Plaintiffs and the putative classes together is Defendants' concealment of the defect in the Class Vehicles and the damages associated therewith.

## C.     Common Questions Predominate With Respect to Plaintiffs' Claims.

### 1.     Express Warranty Claims

The need to determine individual issues on Plaintiffs' express warranty claims does not preclude a finding of predominance.[8]  The issues which Nissan contends require "individual factual determinations" are generally undisputed facts which will not absorb any of the Court's time.  For example, records from Nissan dealerships will establish whether a vehicle was brought into a Nissan dealership during the warranty period, whether the vehicle owner complained of harsh shift, whether the dealership diagnosed the harsh shift as something other than the defect at issue in this case (*e.g.*, worn motor mounts), and whether the dealership repaired the defect.  Thus, there is no "need to litigate the numerous individual questions." The relevant question is whether "individual determinations . . . will overshadow

---

[8]  *See Terrill v. Electrolux Home Products, Inc*., 295 F.R.D. 671, 690 (S.D. Ga. 2013) (finding common issues predominated in express warranty claim); *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1173 (9th Cir. 2010) (same); *Elias v. Ungar's Food Prods., Inc*., 252 F.R.D. 233, 238–39 (D.N.J. 2008) (affirming Report and Recommendation certifying a class including breach of express warranty claims).

H0038522.                                   9

the common issues to be litigated on a class-wide basis." *Wilson*, 256 F.R.D. at 489  Here, they will not; the litigation of the express warranty claim will focus on the nature of the common defect and whether Nissan breached the express warranty when owners complained of harsh shift during the warranty period and Nissan failed to provide a repair.  The remainder of the "individual issues" will not be the subject of litigation, but rather will be ministerial determinations made from undisputed facts reflected in Nissan dealership records.

## 2.    Implied Warranty Claims

Nissan argues that the implied warranty claims cannot be certified due to individual issues regarding merchantability and manifestation.  Dkt. 137 at 15–19. It mistakenly urges the Court to focus on individual vehicle performance and driving habits but, as Plaintiffs explained in their opening brief,[9] "the focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Invs., Inc*., 667 F.3d 273, 298 (3d Cir. 2011), *cert. denied sub. nom.*, *Murray v. Sullivan*, 132 S. Ct. 1876 (2012).  Nissan's brief overlooks *Sullivan* and other opinions of this Court which recognize this

---

[9]  Dkt. 107 at 33.

10

principle.[10] The three cases that Nissan cites do not compel a different result.  In

*Green v. Green Mt. Coffee Roasters, Inc.*, 279 F.R.D. 275, 278 (D.N.J. 2011)[11], the

Court concluded that predominance was absent because the complaint failed to

plead that all class members experienced a defect, and "individual inquiries" would

be necessary to determine the cause and extent of the defect.  *Id.* at 285.  Similarly,

in *Martin*, *supra,* , the  court rejected a damage theory based solely on reduced

resale value rather than out-of-pocket repair costs incurred as a result of the

defendant's failure to repair the defect during the warranty.  292 F.R.D. at 274–

75.[12]  In *In re Canon Cameras Litig.*, 237 F.R.D. 357 (S.D.N.Y. 2006), fewer than

---

[10]  *See* Dkt. 107 at 33–35 (citing *Williams v. Pressler & Pressler, LLP*, No. 11-7296, 2013 U.S. Dist. LEXIS 139643, at *29 (D.N.J. Sept. 27, 2013).  *See also, Kalow & Springut, LLP v. Commence Corp.*, No. 07-3442 (JEI/AMD), 2012 U.S. Dist. LEXIS 173785, at *12 (D.N.J. Dec. 7, 2012); *Dal Ponte v. Am. Mortg. Express Corp.*, No. 04-2152 (JEI), 2006 U.S. Dist. LEXIS 57675, at *25 (D.N.J. Aug. 17, 2006); *Henderson v. Volvo Cars of N. Am., LLC*, No. 09-4146 (CCC), 2013 U.S. Dist. LEXIS 46291, at *17–18 (D.N.J. Mar. 22, 2013); *Ebin v. Kangadis Food, Inc.*, No. 13-2311, 2014 U.S. Dist. LEXIS 25838, at *6–7 (S.D.N.Y. Feb. 24, 2014).

[11]  Additionally, *Green* was issued on the same day as the Third Circuit's *en banc* decision in *Sullivan* and, therefore, the *Green* court did not have the benefit of *Sullivan* in conducting its performance analysis.  To the extent *Green* can be read to suggest that a plaintiff in a product defect case is required to demonstrate that 100% of the class members have had the problem manifest, Plaintiffs respectfully submit that it is inconsistent with the weight of authority rejecting such an impossible burden.  *See* Dkt. 107 at 36–37.

[12]  Additionally, *Martin* involved a safety recall which "create[d] an additional hurdle" and "complicate[d]" the class certification analysis because class members had already received three different levels of relief from Ford.  *Martin*, 292 F.R.D. at 277, n.30.  Moreover, *Martin* distinguished *Daffin* and *Wolin* because the classes

0.2% of the cameras malfunctioned and it was "undisputed" that the malfunctions may have been caused by a variety of unrelated factors, thus requiring "highly individualized fact-finding." *Id.* at 359–60. Judge Rakoff accordingly denied class certification, though he acknowledged that "this problem, in the abstract, may be present in many product design cases in which a class is nonetheless certified…"[13] *Id.* By contrast, in the present case, the Aisin report, after an extensive analysis, explained the common cause and how all vehicles experience the defect. No individual inquiries are required to identify who experienced the malfunction and the cause of the defect.

Nissan argues that every member of a breach of warranty class must have actually experienced the defect. *See* Dkt. 137 at 17–18. As discussed in Plaintiffs' opening brief, this principle has been rejected by the majority of circuit courts to

---

in those cases were "comprised of vehicle owners whose vehicles were still covered by the terms of the manufacturer's original warranty," whereas the plaintiff in *Martin* concerned an alleged defect in vehicles that were seven to twelve years old. *Martin,* 292 F.R.D. at 271, n.20. Accordingly, this case is much closer to the Circuit Court decisions in *Daffin* and *Wolin* than to this district court decision in *Martin.*

[13] Notably, Judge Rakoff, in a recent class certification decision cited in Plaintiffs' opening brief, employed a Rule 23(b)(3) predominance analysis that focused on evidence common to class members. *See Ebin v. Kangadis Food, Inc*., 297 F.R.D. 561, 569 (S.D.N.Y. 2014) ("The same evidence will determine whether the substance inside conforms to the express warranty.").

address the issue. *See, e.g., Wolin*, 617 F.3d at 1174.[14] Nissan's contention that the "duration of the warranty" is an individualized issue is belied by the record, because the warranties are identical in all material respects and have allegedly been breached in the same way. This claim should, accordingly, be certified. *See Wolin*, 617 F.3d at 1174.

### 3. State Consumer Protection Claims

Nissan's argument is founded on multiple false premises, including that it "is entitled to summary judgment on all consumer protection statute claims," and that the key fact it failed to disclose was the high rate of repair and that vehicle owners would have to pay for post-warranty repairs (rather than the existence of the defect). (Dkt. 137 at 19–20.) Plaintiffs refuted these arguments in their summary judgment opposition briefs. (*See* Dkt Nos. 124–133.) Further, Nissan's argument that materiality is an individual issue has been repeatedly rejected.[15]

---

[14]   Alternatively, the Court could certify a warranty class of those who did experience the defect.

[15]   *See Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013) (where materiality of omissions is judged according to an objective standard, it is a question common to all members of the class); *Ewert v. eBay, Inc.*, No. C–07–02198 RMW, 2010 WL 4269259, at *8 (N.D.Cal. Oct. 25, 2010) ("Because materiality is determined based on an objective, reasonable person standard, the issue of whether the alleged misrepresentations were material can be addressed with class-wide evidence."); and *Rodriguez v. It's Just Lunch, Int'l*, No. 07 CIV. 9227 SHS, 2014 WL 1921187 at *6 (S.D.N.Y. May 14, 2014) (same).

### 4. Causation

Nissan's argument that causation is an individual issue that precludes class certification also fails.[16]  Nissan cites *Marcus v. BMW* for the proposition that individual determination of causation in each vehicle defeats predominance. However, the key in *Marcus* was that the tires could go flat due to the defect, or could go flat due to running over a "jagged chunk of metal" or a "sharp object" which would have caused the same exact damage to a non-defective tire.  *Id.* at 604–05.  In the present case, there is no credible evidence for any cause for the unrepaired harsh shift defect other than the defect described in the Aisin analysis.[17]

### 5. Damages

---

[16]  *See Daffin*, 458 F.3d at 553 ("[plaintiff]and the other class members' claims arise from the same practice (delivery of non-conforming vehicle), the same defect (the allegedly defective throttle body assembly), and are based on the same legal theory (breach of express warranty)"); and *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 530–31 (C.D. Cal. 2012), *leave to appeal denied*, 2012 WL 7152289 (9th Cir. Nov. 9, 2012).   Additionally, similar unfair trade and competition laws from other states "with small differences in wording . . . appear to employ the same causation and reliance standard . . ." *Makaeff v. Trump Univ., LLC*, No. 10-CV-0940-GPC-WVG, 2014 WL 688164 at *14 (S.D. Cal. Feb. 21, 2014) (finding that common issues predominated for alleged violations of California, Florida and New York statutory claims).

Nissan misconstrues the dicta from *Comcast* that plaintiffs must show that "damages are capable of measurement on a classwide basis." (Dkt. 27 citing *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (Mar. 27, 2013.) "In the wake of *Comcast* . . . district and circuit courts alike have grappled with the scope, effect, and application of Comcast' s holding, and in particular, its interaction with non-antitrust class actions." *Jacob v. Duane Reade, Inc*., 293 F.R.D. 578, 581 (S.D.N.Y. 2013). After a thorough analysis of several cases, the *Jacob* court found that "[w]hile *Comcast* surely requires some inquiry into the relationship between injury and damages at the class certification stage, this Court understands *Comcast* to require a linkage between those two, rather than forbidding bifurcation in the event of individualized proof." *Id.* at 588. The court accordingly certified the class as to liability and required plaintiffs, "if successful on the merits, to proceed individually on their damages claim." *Id.* at 592. In the present case, the damages claims are extremely simple compared to antitrust or wage-and-hour cases. Damages will be proved with expert testimony and invoices showing the price paid for transmission repairs.

> "If the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification."

*Slipchenko v. Brunel Energy, Inc*., 2013 WL 4677918, at *13 (S.D. Tex., Aug. 30, 2013); *see also Gates v. City of Chicago*, 2011 WL 1811187, *7 (N.D. Ill. May 12, 2011).  Indeed, it "would drive a stake through the heart of the class action device, in cases in which damages were sought rather than an injunction or a declaratory judgment, to require that every member of the class have identical damages." *Slipchenko*, 2013 WL 4677918, at *13.  Courts have noted "it has been commonly recognized that the necessity for calculation of damages on an individual basis should not preclude class determination when the common issues which determine liability predominate."  *Wilson v. County of Gloucester*, 256 F.R.D. 479, 490 (D.N.J. 2009).  *See also In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig*., 722 F.3d 838, 860–61 (6th Cir. 2013) *cert. denied*, 134 S. Ct. 1277 (2014) (analyzing *Comcast* and finding that individual damages issues do not preclude predominance of common issues).

### 6.    Unjust Enrichment

Nissan first argues that unjust enrichment law varies by state.  Courts, however, have held that there are no significant disparities between the unjust enrichment laws of the states Plaintiffs seek to have certified here (California, Pennsylvania, Illinois, and Ohio[18]).  Courts have also rejected Nissan's argument

---

[18]  *See, e.g.*, *ClubCom, Inc. v. Captive Media, Inc.*, No. 07-1462, 2009 U.S. Dist. LEXIS 7960, *25, (W.D. Pa. Jan. 31, 2009) (finding "virtually no difference

that the benefit conferred in an unjust enrichment action turns on individual proof

when the claim is based upon the defendant's "omissions, non-disclosures and

deceptive corporate policy." *See Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418,

435–36 (S.D.N.Y. 2009) (finding common issues predominate based on a

defendant's company-wide policy to not honor price matches, despite

representations to the contrary).  Nissan's argument that that those owners and

lessees who did not experience problems with their transmissions do not have

viable unjust enrichment claims is similarly unpersuasive.[19]

Nissan's remaining arguments regarding certification of the unjust

enrichment claims boil down to differences in damages determinations, which does

---

between the law of Pennsylvania and California in regard to claims for unjust
enrichment"); *Muehlbauer v. GMC*, 431 F. Supp. 2d 847, 851 (N.D. Ill. 2006)
(finding California and Illinois elements of unjust enrichment are similar); *Dzielak
v. Whirlpool Corp.*, 2014 U.S. Dist. LEXIS 83148, 50, 2014 WL 2758746 (D.N.J.
June 16, 2014) (agreeing there are no significant differences between, *inter alia*,
California and Ohio unjust enrichment law).

[19]   Nissan's suggestion that the class must exclude former owners exposes a
fundamental misunderstanding of the nature of the injuries for which Plaintiffs seek
relief.  As detailed in the Second Amended Complaint, Plaintiffs seek relief for, *inter
alia*, the fact that they would not have purchased the Class Vehicles or would have paid
less for them, in addition to the diminished resale value of the Class Vehicles.  SAC ¶ 1,
50, 108.  Because these are cognizable injuries, former owners are properly included in
the class definition.  Indeed, courts routinely certify classes in similar automobile defect
cases which include both current and former vehicle owners.  *See, e.g., Parkinson v.
Hyundai Motor Am.*, 258 F.R.D. 580, 587 (C.D. Cal. 2008) (certifying a class
consisting of "[a]ll current and former owners or lessees" of a vehicle with an allegedly
defective gear shift); *Joseph v. General Motors Corp.*, 109 F.R.D. 635 (D. Colo.1986)
(certifying class of current or former owners of automobile with alleged design defects).

not preclude class certification.  (See Section III(C)(5).)  As such, the potential for slight variations in recoverable damages does not alter the conclusion that common issues predominate regarding Plaintiffs' unjust enrichment claims.

## D.     Class Action is Superior

Nissan's reliance on individual issues—now for the proposition that a class action is not superior—are unpersuasive for the reasons set forth above in the predominance section.   Nissan also suggests that the existence of fee shifting provisions "make individual litigation viable"—yet it offers not a single example of an individual case that has been pursued.  *See* Dkt. 137 at 35.  Not surprisingly, courts have rejected such speculative arguments.[20]   Nissan's argument that petitioning the NHTSA is superior to pursuing a class action is similarly unpersuasive.  One court recently rejected this same argument by Nissan.  *Banks v. Nissan N. Am., Inc*., No. 11-2022 PJH, 2013 WL 6700299, at *7 (N.D. Cal. Dec. 19, 2013)  (*See Banks* brief, Dkt. 111 at 14.)  *See also Daffin v. Ford Motor Co*., No. 1-00-458, 2004 WL 5705647 (S.D. Ohio July 15, 2004) *aff'd*, 458 F.3d 549 (6th Cir. 2006).  The cases cited by Nissan are inapposite.[21]

––––––––––––––––––––––––

[20]  *See, e.g., Summerfield v. Equifax Info. Servs. LLC*, 264 F.R.D. 133, 143 (D.N.J. 2009) (rejecting argument that fee-shifting provisions make class actions not superior); *Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492, 501 (E.D. Pa. 2009) (same).
[21]  *See, e.g., Chin v. Chrysler Corp*., 182 F.R.D. 448, 463 (D.N.J. 1998) (where Chrysler had already issued a voluntary recall and reimbursed vehicle owners

**E.**     **Alternative Classes are Sufficiently Numerous and Adequately Ascertainable**

Nissan argues that the proposed warranty classes fail to meet the ascertainability requirement because there are no records kept regarding repairs that are not made.  Nissan's position, however, overlooks that membership in the proposed warranty classes is to be predicated on its comprehensive sales records and records from Nissan dealerships which have refused to provide free repairs during the warranty period.  Dkt. 107 at 30.  ███████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████  Thus, the proposed warranty classes are defined with reference to objective criteria and there are reliable and administratively feasible mechanisms for determining whether putative class members fall within the class definition. *See City Select Auto Sales, Inc. v. David Randall Assocs.*, 296 F.R.D. 299, 313 (D.N.J. 2013) (stating ascertainability standard) (citing *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013)); *Banks v. Nissan N. Am., Inc.*, No. 11-2022, 2013 U.S. Dist. LEXIS 178510, at *23, *27 (Dec. 19, 2013) (rejecting Nissan's arguments that the proposed class was not ascertainable and overbroad and

---

leaving no useful remedy that the Court could give class members); *In re Bridgestone/Firestone Inc.*, 288 F.3d 1012, 1019 (7th Cir. 2002) (where class members sought damages for tires that had not malfunctioned but were merely failure-prone).

H0038522.                          19

granting plaintiffs' motion for class certification).  Nissan's reliance on *Carrera v. Bayer Corp.*, 727 F3d 300 (3d Cir. 2013), is misplaced as membership in the proposed warranty classes relies on dealership records which are "reliable" and "administratively feasible" and does not involve small-ticket items (such as vitamins) where membership in the class is demonstrated only by "potential class members' say so." *Id.* at 304.

Nissan's argument that the proposed warranty classes fail to meet the numerosity requirement should also be rejected.  Dkt. 137 37–38.  Plaintiffs do not need to provide "evidence of the exact number or identification of the members of the proposed class  . . ."  *In re Neurontin Antitrust Litig.*, 02-1390, 2011 U.S. Dist. LEXIS 7453, at *9 (D.N.J. Jan. 25, 2011) (citation omitted).  The Third Circuit has stated that a plaintiff is generally required to demonstrate that the potential number of class members exceeds forty.  *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001).  Even viewing the record in the light most favorable to Nissan,[22] Plaintiffs easily meet this requirement here.

## IV.   CONCLUSION

Plaintiffs respectfully request that the Court grant their motion for class certification.

H0038522.

20

DATED:  August 22, 2014          Respectfully submitted,

By:   /s/ Matthew D. Schelkopf
          Joseph G. Sauder
          Matthew D. Schelkopf
          Benjamin F. Johns
          CHIMICLES & TIKELLIS LLP
          One Haverford Centre
          361 West Lancaster Avenue
          Haverford PA 19041
          Telephone:  (610) 642-8500
          Facsimile:  (610) 649-3633
          JGS@chimicles.com
          MDS@chimicles.com
          BFJ@chimicles.com

          Michael A. Caddell (pro hac vice)
          Cynthia B. Chapman (pro hac vice)
          Cory S. Fein (pro hac vice)
          CADDELL & CHAPMAN
          1331 Lamar, Suite 1070
          Houston TX 77010
          Telephone:  (713) 751-0400
          Facsimile:  (713) 751-0906
          mac@caddellchapman.com
          cbc@caddellchapman.com
          csf@caddellchapman.com

          *Attorneys for Plaintiffs and the Proposed
          Classes*

## CERTIFICATE OF SERVICE

I, Matthew D. Schelkopf, certify that on August 22, 2014 I filed the foregoing using the Court's CM/ECF system, thereby causing these materials to be electronically served upon all counsel of record in this case.

          /s/Matthew D. Schelkopf
          Matthew D. Schelkopf