UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

TAMEKA NELSON, et al., :
individually and on behalf of :    HONORABLE JOSEPH E. IRENAS
others similarly situated, :       CIV. NO. 11-5712 (JEI/AMD)
                                :
              Plaintiffs, :
                                :                **OPINION**
      v.                        :
                                :
NISSAN NORTH AMERICA, INC., :
et al., :
                                :
              Defendants. :


**APPEARANCES:**

CADDELL & CHAPMAN, P.C.
By:  Michael A. Caddell, Esq.
     Cynthia B. Chapman, Esq.
     Cory S. Fein, Esq.
1331 Lamar, Suite 1070
Houston, Texas 77010

and

CHIMICLES & TIKELLIS, LLP
By:  Joseph G. Sauder, Esq.
     Matthew D. Schelkopf, Esq.
     Benjamin F. Johns, Esq.
One Haverford Centre
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
          Counsel for Plaintiffs


SEDGWICK LLP
By:  Martin Healy, Esq.
     E. Paul Cauley, Jr., Esq.
     S. Vance Witte, Esq.
Three Gateway Center, 12th Floor
Newark, New Jersey 07102
          Counsel for Defendants

**IRENAS**, Senior District Judge:

In this putative class action lawsuit, Plaintiffs assert that they were injured[1] by a design defect common to the 5-speed, automatic transmissions of their Nissan Maxima vehicles, model years 2004 through 2006 (the "Class Vehicles").

Before the Court is NNA's[2] Motion for Summary Judgment on Plaintiff Abdullah's claims.[3] For the reasons stated herein, the Motion will be granted in its entirety.

## I.

In January, 2006, Abdullah purchased his 2004 Nissan Maxima from a used car dealer in New Jersey. (Statement of Undisputed Facts ("SUF") ¶ 2) At that time, the car had approximately 37,000 miles on it. (Id. ¶ 3)

---

[1] Plaintiffs' injuries appear to be only financial in nature. There is no record evidence indicating that any plaintiff was physically injured.

[2] Defendants are Nissan North America, Inc.; Nissan Motor Company Ltd.; and Nissan Extended Services North America, GP; collectively, "NNA."

[3] There are five separate putative state-wide classes; one each for the states of New Jersey, Pennsylvania, Ohio, Illinois and California. Plaintiff Abdullah is the putative class representative for the New Jersey class. Separate Motions for Summary Judgment are pending as to each putative class representative's claims. Separate opinions will address each motion.

Abdullah drove the car without incident until late 2007, or early 2008, at which point he began having problems with the transmission. (SUF ¶ 6, 9) Specifically, Abdullah started to experience what the parties refer to as "shift shock," where the car would suddenly "downshift on its own" resulting in a strong jerking of the car. (Id. ¶ 7) Importantly, it is undisputed that this problem first manifested itself in Abdullah's car after it had been driven "more than 60,000 miles and possibly more than 70,000 miles." (Id. ¶ 8)

Plaintiffs, relying on expert evidence, assert that the shift shock problem resulted from a design defect with the 2004, 2005, and 2006 Maximas. The specific nature of the asserted defect is not directly relevant to the instant motion. Suffice it to say, Plaintiffs maintain that the absence of a transmission cooling system, combined with the metallic composition of certain transmission parts, caused overheating of the transmission system, which, over time, caused extensive wearing of the relevant parts, leading to the harsh shift problem.[4]

---

[4] NNA has not disputed the origin of the problem. Their own internal documents are generally consistent with Plaintiffs' expert report concerning the issue.

Abdullah first took his car to an independent (non-dealership) car repair shop, which was unable to duplicate the problem on a test drive.  (SUF ¶ 10, 11)

Later, he "mentioned" the problem to the dealership when he brought his car in for other services, such as an oil change. (SUF ¶ 12)

In September, 2011, still experiencing the harsh shift problem, Abdullah brought his car to a different independent repair shop, which rebuilt / replaced the transmission at a cost of approximately $1,600.00.  (SUF ¶ 13-14)

There is no evidence in the record that Abdullah ever experienced the harsh shift problem again.  At the time of Abdullah's deposition in 2013, he still owned his 2004 Maxima and had no plans to sell it.  (Id. ¶ 15)

Abdullah's powertrain warranty from NNA extended for 60 months or 60,000 miles, "whichever comes first," and covered "any repairs needed to correct defects in materials or workmanship." (Healy Ex. C, NELSON-ABDULLAH000586)[5]  The warranty also conspicuously states, "ANY IMPLIED WARRANTY OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE SHALL BE

---

[5]   The warranty also provides that it is transferrable.  (Healy Ex. C, NELSON-ABDULLAH 000586)  The parties apparently agree that the warranty applied to Abdullah even though he bought the car used and did not buy the car directly from Nissan.

LIMITED TO THE DURATION OF THIS LIMITED WARRANTY." (Id.; caps
in original)

Abdullah asserts three claims under New Jersey law: (1)
breach of express warranty; (2) breach of implied warranty of
merchantability; and (3) violation of the Consumer Fraud Act,
N.J.S.A. 56:8-1 to -20.


                                **II.**

Federal Rule of Civil Procedure 56(c) provides that summary
judgment should be granted if "pleadings, depositions, answers
to interrogatories, and admissions on file, together with
affidavits, if any, show that there is no genuine issue as to
any material fact and that the moving party is entitled to a
judgment as a matter of law." *See also, Anderson v. Liberty
Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for
summary judgment, the court must construe all facts and
inferences in the light most favorable to the nonmoving party.
*See Boyle v. Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir.
1998). The moving party bears the burden of establishing that
no genuine issue of material fact remains. *See Celotex Corp. v.
Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material only
if it will affect the outcome of a lawsuit under the applicable
law, and a dispute of a material fact is genuine if the evidence

is such that a reasonable fact finder could return a verdict for
the nonmoving party.  *See Anderson*, 477 U.S. at 252.


## III.

The Court addresses each claim in turn.


### A.

The undisputed fact that Abdullah did not experience the
shift shock problem until after 60,000 miles is fatal to his
express warranty claim.  *See Nobile v. Ford Motor Co.*, 2011 U.S.
Dist. LEXIS 26766 at *8 (D.N.J. Mar. 14, 2011) ("'latent defects
discovered after the term of the warranty are not actionable.'")
(quoting *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d
604, 616 (3d Cir. 1995)); *Chan v. Daimler*, 2012 U.S. Dist. LEXIS
161716 at *15 (D.N.J. Nov. 9, 2012) ("Courts throughout the
country have almost uniformly held that time-limited and
mileage-limited warranties do not protect buyers against hidden
defects — defects that may exist before, but typically are not
discovered until after, the expiration of the warranty period.")
(internal citation and quotation omitted); *Alban v. BMW of N.
Am., LLC*, 2010 U.S. Dist. LEXIS 94038 at *19 (D.N.J. Sept. 8,
2010) ("an express warranty does not cover repairs made after
the applicable time has elapsed.  That rule applies regardless
of whether the defect existed prior to the expiration of the

warranty.") (relying on *Duquesne Light Co.*); *Suddreth v. Mercedes-Benz, LLC*, 2011 U.S. Dist. LEXIS 126237 (D.N.J. Oct. 31, 2011) ("general warranties limited by time or mileage do not cover repairs made after the applicable time has elapsed."); *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 518-519 (D.N.J. 2008) ("the case law almost uniformly holds that time-limited warranties do not protect buyers against hidden defects which are typically not discovered until after the expiration of the warranty period.  As a result, the Third Circuit has held, 'latent defects discovered after the term of the warranty are not actionable.'") (quoting *Duquesne Light Co.*); *see also Tatum v. Chrysler Group LLC*, 2011 U.S. Dist. LEXIS 32362 (D.N.J. Mar. 28, 2011) ("if the sales warranty covered the Journey's brakes up to 12,000 miles, and the brakes routinely failed at 12,001 miles, Chrysler or its successor would have had no obligation to repair them.") (citing *Duquesne Light Co.*).

No reasonable juror could find that Abdullah experienced shift shock during the warranty period because the warranty was limited to 60,000 miles and Abdullah unequivocally testified that he first experienced the problem after 60,000 miles. Accordingly, NNA is entitled to judgment as a matter of law on Abdullah's breach of express warranty claim.

**B.**

Similarly, Abdullah's breach of implied warranty claim fails because the express warranty explicitly limits the implied warranty of merchantability to the express warranty period. Such contractual provisions have been routinely upheld. *See, e.g., Glass v. BMW of N. Am. LLC*, 2011 WL 6887721 at *14-15 (D.N.J. Dec. 29, 2011) (citing cases); *Nobile*, 2011 U.S. Dist. LEXIS 26766 at *11-12 (citing cases). Here, the language of the warranty makes clear that the implied warranty of merchantability is coterminous with the express warranty. Accordingly, the implied warranty claim must fail for the same reason that the express warranty claim fails.

Alternatively, the breach of implied warranty claim is time-barred. Abdullah does not dispute that: (1) the claim is subject to a four year statute of limitations; (2) the claim accrued in 2004; and (3) he did not file this suit until 2011. But he argues that the statute of limitations should be equitably tolled on account of NNA's asserted "active conceal[ment] [of] material facts from Abdullah." (Opposition Brief, p. 26)

As discussed next with regard to the CFA claim, there is simply no record evidence to support an inference that NNA knew about the shift shock defect when it sold the Maxima, much less that it took steps to actively conceal the problem from Abdullah or the general public.

8

Accordingly, NNA is entitled to judgment as a matter of law.

## C.

Lastly, Abdullah's Consumer Fraud Act claim fails because the record cannot support a conclusion that NNA made a knowing omission in connection with the sale of Abdullah's Maxima.

To prevail on a CFA claim, a plaintiff must establish: "'(1) unlawful conduct by defendant; (2) an ascertainable loss by plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss.'" *Zaman v. Felton*, 219 N.J. 199, 222 (2014) (quoting *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009)). An "unlawful practice" is

> any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale . . . of any merchandise . . . whether or not any person has in fact been misled, deceived or damaged thereby.

N.J.S.A. 56:8-2.

The record does not reasonably support a finding that NNA knew about the alleged design defect at the time the Maximas were sold. Relying on the undisputed fact that NNA assembled and manufactured the Maximas, Abdullah argues that a reasonable factfinder could conclude that NNA knew that: (1) the Maximas

9

lacked an external transmission cooler; (2) "and thus would be prone to excessive heat;" (3) "which causes long-term, high-mileage damage." (Opposition Brief p. 34)  The Court disagrees.

On summary judgment the Court is not required to give the nonmoving party the benefit of *every* favorable inference, only such inferences that are *reasonable*.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).  In the Court's view, drawing inference upon inference based on the simple fact that NNA assembled and manufactured the Class Vehicles is not reasonable in light of the facts of this case.

Alternatively, Abdullah argues that "[h]ad [NNA] actually done [pre-sale durability tests of the transmission system] it would have known (or should have known) at the time of sale that the Class Vehicles suffer from a material design defect." (Opposition Brief, p. 32)

The Court agrees with NNA that the failure to test a product is not actionable under the CFA.  Failure to test merchandise does not fit the above-quoted definition of "unlawful practice."  To accept Abdullah's argument would be to misinterpret the CFA as encompassing negligent conduct. Abdullah's argument in this regard is better suited for claims not asserted here-- namely, product liability claims.

Accordingly, NNA is entitled to judgment as a matter of law as to Abdullah's CFA claim.

**IV.**

For the above-stated reasons, NNA's Motion for Summary Judgment on Plaintiff Abdullah's claims will be granted in its entirety.  An appropriate Order accompanies this Opinion.


Dated:  December 16, 2014          ___s/ Joseph E. Irenas_____
                                   Joseph E. Irenas, S.U.S.D.J.