```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY

TAMEKA NELSON, et al.,         :
individually and on behalf of  :   HONORABLE JOSEPH E. IRENAS
others similarly situated,     :   CIV. NO. 11-5712 (JEI/AMD)
                               :
           Plaintiffs,         :
                               :          OPINION
      v.                       :
                               :
NISSAN NORTH AMERICA, INC.,    :
et al.,                        :
                               :
           Defendants.         :
```

**APPEARANCES:**

CADDELL & CHAPMAN, P.C.
By:  Michael A. Caddell, Esq.
     Cynthia B. Chapman, Esq.
     Cory S. Fein, Esq.
1331 Lamar, Suite 1070
Houston, Texas 77010

and

CHIMICLES & TIKELLIS, LLP
By:  Joseph G. Sauder, Esq.
     Matthew D. Schelkopf, Esq.
     Benjamin F. Johns, Esq.
One Haverford Centre
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
          Counsel for Plaintiffs

SEDGWICK LLP
By:  Martin Healy, Esq.
     E. Paul Cauley, Jr., Esq.
     S. Vance Witte, Esq.
Three Gateway Center, 12th Floor
Newark, New Jersey 07102
          Counsel for Defendants

**IRENAS**, Senior District Judge:

In this putative class action lawsuit, Plaintiffs assert that they were injured[1] by a design defect common to the 5-speed, automatic transmissions of their Nissan Maxima vehicles, model years 2004 through 2006 (the "Class Vehicles").

Before the Court is NNA's[2] Motion for Summary Judgment on Plaintiff Creel's claims.[3] For the reasons stated herein, the Motion will be granted in its entirety.

**I.**

In August, 2005, Plaintiff Creel purchased his new 2005 Maxima from a Nissan dealership in Pennsylvania. (Statement of Undisputed Facts and Plaintiff's Response thereto, "SUF," ¶ 2)[4]

---

[1] Plaintiffs' injuries appear to be only financial in nature. There is no record evidence indicating that any plaintiff was physically injured.

[2] Defendants are Nissan North America, Inc.; Nissan Motor Company Ltd.; and Nissan Extended Services North America, GP; collectively, "NNA."

[3] There are five separate putative state-wide classes; one each for the states of New Jersey, Pennsylvania, Ohio, Illinois and California. Plaintiff Creel is the putative class representative for the Pennsylvania class. Separate Motions for Summary Judgment are pending as to each putative class representative's claims. Separate opinions will address each motion.

[4] During all relevant times, Creel resided in Pennsylvania.

In 2008, when the car's odometer had recorded approximately 48,000 miles, Creel began to notice "erratic shifting from time to time." (Creel Dep. p. 22)

Plaintiffs, relying on expert evidence, assert that the shift problem resulted from a design defect with the 2004, 2005, and 2006 Maximas. The specific nature of the asserted defect is not directly relevant to the instant motion. Suffice it to say, Plaintiffs maintain that the absence of a transmission cooling system, combined with the metallic composition of certain transmission parts, caused overheating of the transmission system, which, over time, caused extensive wearing of the relevant parts, leading to the harsh shift problem.[5]

In April, 2008, Creel brought the car to the dealership complaining of the transmission problem, and to get a state inspection. (SUF ¶ 8) The dealer's mechanic took the car for a test drive but was unable to duplicate the problem. (SUF ¶ 9)

The same thing happened in January, 2009; Creel took his car into the dealer for service, and the mechanic was unable to duplicate the problem. (SUF ¶¶ 11-12)

---

[5] NNA has not disputed the origin of the problem. Their own internal documents are generally consistent with Plaintiffs' expert report concerning the issue.

Over time, the problem worsened. In March, 2011, Creel brought his car to the dealership complaining that the transmission seemed to slip at times. (SUF ¶ 13)

Sometime thereafter, Creel contacted Nissan Customer Assistance, which recommended that Creel take his car to a different dealership. (SUF ¶¶ 14-15)  Creel did so. The new dealership concluded that the car's transmission needed replacement. (SUF ¶ 16)

Creel spent $1,457.30 to repair his transmission. (SUF ¶ 17)  At the time of his deposition in this case, he continued to drive his Maxima and had no plans to sell it. (SUF ¶¶ 18-19)

Creel's powertrain warranty from NNA extended for 60 months or 60,000 miles, "whichever comes first," and covered "any repairs needed to correct defects in materials or workmanship." (Healy Ex. C, NELSON-CREEL000226)  The warranty also conspicuously states, "ANY IMPLIED WARRANTY OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE SHALL BE LIMITED TO THE DURATION OF THIS LIMITED WARRANTY." (Id.; caps in original)

Creel asserts four claims under Pennsylvania law: (1) breach of express warranty; (2) breach of the implied warranty of merchantability; (3) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, "UTPCPL," 73 Pa. Stat. Ann. § 201-3; and (4) unjust enrichment.

## II.

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted if "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See also, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, the court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute of a material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 252.

## III.

### A.

NNA asserts that the express warranty claim fails because the warranty only covers defects in materials and workmanship, whereas Plaintiffs' expert clearly opines that the defect at

5

issue here is a design defect. According to NNA, it did not expressly warrant that the Maximas would be free from design defects, therefore the express warranty claim fails. The Court agrees.

The warranty does not define "materials" or "workmanship," therefore, the Court assigns them their ordinary meaning. As the Third Circuit has observed in a somewhat analogous case, absent specific language to the contrary, design defects cannot be encompassed within the meaning of defects in workmanship or materials:

> Webster's Dictionary defines 'workmanship' as 'the art or skill of a workman,' or 'the execution or manner of making or doing something.' Webster's Third New International Dictionary Unabridged 2635 (1961). A 'workman,' or 'workingman,' is defined as 'one who works for wages usually at manual labor.' Id. As made clear by its focus on the 'manual' 'execution' of a product, the definition of 'workmanship' presupposes that the product being made or assembled has already been designed. Design is an earlier and distinct phase of product production not captured by the workmanship warranty.

*Mack Trucks, Inc. v. Borgwarner Turbo Sys., Inc.*, 508 F. App'x 180, 184 (3d Cir. 2012) (applying Pennsylvania law).[6] *See*

---

[6] *Mack Trucks, Inc. v. Borgwarner Turbo Sys., Inc.*, 508 F. App'x 180 (3d Cir. 2012) was a suit between two commercial entities involving a commercial contract that contained an express warranty. Creel's suit is different insofar as it involves a consumer transaction where the relative bargaining power between the parties to the warranty almost certainly differs. However,

*generally Barker v. Lull Engineering Co.,* 20 Cal. 3d 413, 429 (Cal. 1978) ("In general, a manufacturing or production defect is readily identifiable because a defective product is one that differs from the manufacturer's intended result or from other ostensibly identical units of the same product line.  For example, when a product comes off the assembly line in a substandard condition it has incurred a manufacturing defect. . . .  A design defect, by contrast, cannot be identified simply by comparing the injury-producing product with the manufacturer's plans or with other units of the same product line, since by definition the plans and all such units will reflect the same design."); *Lombard Corp. v. Quality Aluminum Prods. Co.,* 261 F.2d 336, 338 (6th Cir. 1958) ("A defect in material is a defect in quality. . . . A defect in workmanship is a defect in the way some part of the machine is constructed. . . . Design, on the contrary, involves the overall plan of construction and operation."); *see also,* Restatement (Third) Torts: Product Liability § 2 (identifying three distinct "categories of product defect": "manufacturing defect," "design defect," and "inadequate warnings or instructions") and comment d ("whereas a manufacturing defect consists of a product unit's

---

this distinction should not affect the Court's determination of
the plain meaning of words.

7

failure to meet the manufacturer's design specifications, a product asserted to have a design defect meets the manufacturer's design specifications but raises the question whether the specifications themselves create unreasonable risks").

Other Courts of Appeals have also held that design defect claims do not fall within the scope of an express warranty against defects in materials or workmanship.  *See Troup v. Toyota Motor Corp.*, 545 F. App'x 668 (9th Cir. 2013); *Bruce Martin Constr., Inc. v. CTB, Inc.*, 735 F.3d 750 (8th Cir. 2013); *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516 (7th Cir. 2003).[7]

In an effort to avoid the above-cited authorities, Creel argues that "[i]n this case, [NNA] did manufacture the Class Vehicles . . . using defective parts and materials (i.e., the lead in the bushings)."  (Opposition Brief, p. 17)  This argument fails because the lead bushings were undisputedly common to every Class Vehicle.  Therefore under the plain meaning of the words, using lead bushings that-- according to Plaintiffs' expert-- were particularly susceptible to high heat is a design defect, not a manufacturing defect.  *See Bruce*

---

[7] Indeed, *Voelker* and *Troup* were decided on Fed. R. Civ. P. 12(b)(6) motions, whereas NNA's instant motion seeks summary judgment.

8

*Martin Constr.*, 735 F.3d at 754 ("Bruce Martin asserts that the design was defective in calling for unsuitable materials, essentially arguing that the defect is both one of design and one of material.  This admission is ultimately fatal to Bruce Martin's warranty claim, for a design defect cannot also be a defect in material and workmanship.") (citing *Mack Trucks, Inc. v. Borgwarner Turbo Sys., Inc.*, 508 F. App'x 180, 184 (3d Cir. 2012)).

Admittedly, Creel relies on two cases that have rejected the argument that a workmanship and materials warranty cannot encompass a design defect claim.  *See In re Saturn l-Series Timing Chain Prods. Liability Litig.*, 2008 U.S. Dist. LEXIS 109978 (D. Neb. 2008) (following *Koulajian*); *Koulajian v. Trek Bicycle Corp.,* 1992 U.S. Dist. LEXIS 1490 (S.D.N.Y. 1992).  Both cases, however, pre-date the Courts of Appeals' decisions in *Mack Trucks, Bruce Martin Construction,* and *Troup*; and *Koulajian* also predates *Voelker*.  Moreover, the Court finds Creel's authorities on this issue unpersuasive.  Thus, the Court chooses to join the vast weight of authority holding that a workmanship and materials warranty cannot encompass a design defect claim.

Accordingly, NNA is entitled to summary judgment on the express warranty claim.

B.

As to the breach of implied warranty claim, NNA argues it is time-barred. Creel does not dispute that: (1) the claim is subject to a four year statute of limitations; (2) the claim accrued in 2005; and (3) he did not file this suit until 2011. But he argues that the statute of limitations should be equitably tolled on account of NNA's asserted "active[] conceal[ment] [of] material facts from Creel." (Opposition Brief, p. 25)

As discussed next with regard to the UTPCPL claim, there is simply no record evidence to support an inference that NNA knew about the shift defect when it sold the Maxima, much less that it took steps to actively conceal the problem from Creel or the general public. Thus, Creel cannot establish equitable estoppel under Pennsylvania law. *See Nesbitt v. Erie Coach Co.*, 204 A.2d 473, 476 (Pa. 1964) ("In order for the doctrine of estoppel to be applied in bar of the statute of limitations, fraud or concealment must necessarily be established.").

Accordingly, Creel's implied warranty claim is time-barred and NNA is entitled to judgment as a matter of law.

C.

Creel argues that NNA is liable under the UTPCPL because it knew or should have known about the transmission design defect. This argument fails for two reasons.

First, the UTPCPL defines "unfair or deceptive practices," in relevant part, as:

> (4) . . . (v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have; [or]
>
> . . .
>
> (vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another; [or]
>
> . . .
>
> (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

73 P.S. § 201-2.

Creel has failed to identify any "representation" that NNA made to him, or anyone else, about the car. Merely arguing that Creel's Maxima had a design defect, and that NNA "knew or should have known" about it, does not suffice. Nowhere does Creel even argue, much less support with evidence, that NNA represented to him that his car had a "characteristic" that it did not have; nor that NNA represented that his car was "of a *particular*

11

standard [or] quality." (emphasis added). Simply holding out a new car for sale is insufficient support for a finding that the seller "represented," as that term is used in the UTPCPL, that the car would be free from defects.

Second, even if Creel could identify a representation that NNA made, that representation would only be deceptive and misleading if NNA knew of the defect at the time the car was sold. But the record does not reasonably support a finding that NNA knew about the alleged design defect at that time.

Relying on the undisputed fact that NNA assembled and manufactured the Maximas, Creel argues that a reasonable factfinder could conclude that NNA knew that: (1) the Maximas lacked an external transmission cooler; (2) "and thus would be prone to excessive heat;" (3) "which causes long-term, high-mileage damage." (Opposition Brief p. 32) The Court disagrees.

On summary judgment the Court is not required to give the nonmoving party the benefit of *every* favorable inference, only such inferences that are *reasonable*. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). In the Court's view, drawing inference upon inference based on the simple fact that NNA assembled and manufactured the Class Vehicles is not reasonable in light of the facts of this case.

Alternatively, Creel argues that "[h]ad [NNA] actually done [pre-sale durability tests of the transmission system] it would

12

have known (or should have known) at the time of sale that the Class Vehicles suffer from a material design defect." (Opposition Brief, p. 30)

The Court agrees with NNA that the failure to test a product is not actionable under the UTPCPL.  To accept Creel's argument would be to misinterpret the UTPCPL as encompassing negligent conduct, whereas the statute only reaches "fraudulent [and] deceptive conduct."  *See* 73 P.S. § 201-2(4)(xxi).

NNA is entitled to judgment as a matter of law as to the UTPCPL claim.

### D.

Lastly, absent evidence that NNA knew about the alleged design defect at the time Creel bought his car, Creel's claim for unjust enrichment fails.  The record evidence cannot support a finding that NNA retained a benefit under circumstances where it would be unjust to do so without payment.  *See Roethlein v. Portnoff Law Assocs.*, 81 A.3d 816, 825 (Pa. 2013) ("Unjust enrichment is the retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected, and for which the beneficiary must make restitution.").

Accordingly, NNA is entitled to judgment as a matter of law as to Creel's unjust enrichment claim.

13

**IV.**

For the above-stated reasons, NNA's Motion for Summary Judgment on Plaintiff Creel's claims will be granted in its entirety.  An appropriate Order accompanies this Opinion.


Dated:  December 19, 2014          ____s/ Joseph E. Irenas____
                                   Joseph E. Irenas, S.U.S.D.J.