```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY

TAMEKA NELSON, et al.,          :
individually and on behalf of   :   HONORABLE JOSEPH E. IRENAS
others similarly situated,      :   CIV. NO. 11-5712 (JEI/AMD)
                                :
            Plaintiffs,         :
                                :              OPINION
       v.                       :
                                :
NISSAN NORTH AMERICA, INC.,     :
et al.,                         :
                                :
            Defendants.         :
```

**APPEARANCES:**

CADDELL & CHAPMAN, P.C.
By:  Michael A. Caddell, Esq.
     Cynthia B. Chapman, Esq.
     Cory S. Fein, Esq.
1331 Lamar, Suite 1070
Houston, Texas 77010

and

CHIMICLES & TIKELLIS, LLP
By:  Joseph G. Sauder, Esq.
     Matthew D. Schelkopf, Esq.
     Benjamin F. Johns, Esq.
One Haverford Centre
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
          Counsel for Plaintiffs

SEDGWICK LLP
By:  Martin Healy, Esq.
     E. Paul Cauley, Jr., Esq.
     S. Vance Witte, Esq.
Three Gateway Center, 12th Floor
Newark, New Jersey 07102
          Counsel for Defendants

**IRENAS**, Senior District Judge:

In this putative class action lawsuit, Plaintiffs assert that they were injured[1] by a design defect common to the 5-speed, automatic transmissions of their Nissan Maxima vehicles, model years 2004 through 2006 (the "Class Vehicles").

Before the Court is NNA's[2] Motion for Summary Judgment on Plaintiff Nelson's claims.[3] For the reasons stated herein, the Motion will be granted in its entirety.

**I.**

In July, 2006, Plaintiff Nelson purchased a used 2006 model year Nissan Maxima from Rancho Valley Chevrolet in California. (Statement of Undisputed Facts and Plaintiff's Response thereto,

---

[1] Plaintiffs' injuries appear to be only financial in nature. There is no record evidence indicating that any plaintiff was physically injured.

[2] Defendants are Nissan North America, Inc.; Nissan Motor Company Ltd.; and Nissan Extended Services North America, GP; collectively, "NNA."

[3] There are five separate putative state-wide classes; one each for the states of New Jersey, Pennsylvania, Ohio, Illinois and California. Plaintiff Nelson is the putative class representative for the California class. Separate Motions for Summary Judgment are pending as to each putative class representative's claims. Separate opinions will address each motion.

"SUF," ¶ 2)[4]  At the time, the car had approximately 16,000 miles.  (SUF ¶ 3)

In early 2010, the transmission problems first manifested as jerking or slipping when shifting.  (SUF ¶¶ 6-7)

Plaintiffs, relying on expert evidence, assert that the shift problem resulted from a design defect with the 2004, 2005, and 2006 Maximas.  The specific nature of the asserted defect is not directly relevant to the instant motion.  Suffice it to say, Plaintiffs maintain that the absence of a transmission cooling system, combined with the metallic composition of certain transmission parts, caused overheating of the transmission system, which, over time, caused extensive wearing of the relevant parts, leading to the harsh shift problem.[5]

In December 2010, with the odometer reading approximately 60,000 miles, Nelson emailed NNA asking for a "'goodwill repair' based on customer loyalty." (SUF ¶ 10)

In May 2011, with the odometer reading approximately 77,000 miles, Nelson took her car back to the dealership where she purchased it.  (SUF ¶ 11)  She was advised that the transmission needed replacing.  (SUF ¶ 12)

---

[4]  During all relevant times, Nelson resided in California.

[5]  NNA has not disputed the origin of the problem.  Their own internal documents are generally consistent with Plaintiffs' expert report concerning the issue.

Nelson ultimately had an independent (non-dealership) mechanic replace the transmission at a cost of $2,600.00. (SUF ¶ 13-14)

At the time of her deposition in this suit, Nelson's Maxima had over 100,000 miles on it and she had no plans to sell it. (SUF ¶¶ 15-16)

Nelson's powertrain warranty from NNA extended for 60 months or 60,000 miles, "whichever comes first," and covered "any repairs needed to correct defects in materials or workmanship." (Healy Ex. C, NELSON-NELSON000412)

Nelson asserts four claims under California law: (1) breach of express warranty; (2) violation of the California Consumers Legal Remedies Act; (3) violation of the California Unfair Competition Law; and (4) unjust enrichment.

**II.**

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted if "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See also, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, the court must construe all facts and

inferences in the light most favorable to the nonmoving party. *See Boyle v. Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute of a material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 252.

**III.**

**A.**

NNA asserts that the express warranty claim fails because the warranty only covers defects in materials and workmanship, whereas Plaintiffs' expert clearly opines that the defect at issue here is a design defect. According to NNA, it did not expressly warrant that the Maximas would be free from design defects, therefore the express warranty claim fails. The Court agrees.

The Ninth Circuit, applying California law, has explicitly held, "[i]n California, express warranties covering defects in materials and workmanship exclude defects in design." *Troup v. Toyota Motor Corp.*, 545 F. App'x 668, 668 (9th Cir. 2013) (citing *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App.

5

4th 824, 830, 51 Cal. Rptr. 3d 118 (2006)). *See generally Barker v. Lull Engineering Co.,* 20 Cal. 3d 413, 429 (Cal. 1978) ("In general, a manufacturing or production defect is readily identifiable because a defective product is one that differs from the manufacturer's intended result or from other ostensibly identical units of the same product line.  For example, when a product comes off the assembly line in a substandard condition it has incurred a manufacturing defect. . . .  A design defect, by contrast, cannot be identified simply by comparing the injury-producing product with the manufacturer's plans or with other units of the same product line, since by definition the plans and all such units will reflect the same design.").

Additionally, as the Third Circuit has observed in a somewhat analogous case, absent specific language to the contrary, design defects cannot be encompassed within the meaning of defects in workmanship or materials:

> Webster's Dictionary defines 'workmanship' as 'the art or skill of a workman,' or 'the execution or manner of making or doing something.' Webster's Third New International Dictionary Unabridged 2635 (1961). A 'workman,' or 'workingman,' is defined as 'one who works for wages usually at manual labor.' Id. As made clear by its focus on the 'manual' 'execution' of a product, the definition of 'workmanship' presupposes that the product being made or assembled has already been designed. Design is an earlier and distinct phase of product production not captured by the workmanship warranty.

6

*Mack Trucks, Inc. v. Borgwarner Turbo Sys., Inc.*, 508 F. App'x 180, 184 (3d Cir. 2012) (applying Pennsylvania law).[6] *See generally Lombard Corp. v. Quality Aluminum Prods. Co.,* 261 F.2d 336, 338 (6th Cir. 1958) ("A defect in material is a defect in quality. . . . A defect in workmanship is a defect in the way some part of the machine is constructed. . . . Design, on the contrary, involves the overall plan of construction and operation."); *see also,* Restatement (Third) Torts: Product Liability § 2 (identifying three distinct "categories of product defect": "manufacturing defect," "design defect," and "inadequate warnings or instructions") and comment d ("whereas a manufacturing defect consists of a product unit's failure to meet the manufacturer's design specifications, a product asserted to have a design defect meets the manufacturer's design specifications but raises the question whether the specifications themselves create unreasonable risks").

    Other Courts of Appeals have also held that design defect claims do not fall within the scope of an express warranty

---

[6] *Mack Trucks, Inc. v. Borgwarner Turbo Sys., Inc.*, 508 F. App'x 180 (3d Cir. 2012) was a suit between two commercial entities involving a commercial contract that contained an express warranty.  Nelson's suit is different insofar as it involves a consumer transaction where the relative bargaining power between the parties to the warranty almost certainly differs.  However, this distinction should not affect the Court's determination of the plain meaning of words.

against defects in materials or workmanship. *See Bruce Martin Constr., Inc. v. CTB, Inc.*, 735 F.3d 750 (8th Cir. 2013); *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516 (7th Cir. 2003).[7]

In an effort to avoid the above-cited authorities, Nelson argues that "[i]n this case, [NNA] did manufacture the Class Vehicles . . . using defective parts and materials (i.e., the lead in the bushings)." (Opposition Brief, p. 19)  This argument fails because the lead bushings were undisputedly common to every Class Vehicle.  Therefore under the plain meaning of the words, using lead bushings that-- according to Plaintiffs' expert-- were particularly susceptible to high heat is a design defect, not a manufacturing defect. *See Bruce Martin Constr.*, 735 F.3d at 754 ("Bruce Martin asserts that the design was defective in calling for unsuitable materials, essentially arguing that the defect is both one of design and one of material.  This admission is ultimately fatal to Bruce Martin's warranty claim, for a design defect cannot also be a defect in material and workmanship.") (citing *Mack Trucks, Inc. v. Borgwarner Turbo Sys., Inc.*, 508 F. App'x 180, 184 (3d Cir. 2012)).

---

[7] Indeed, *Voelker* and *Troup* were decided on Fed. R. Civ. P. 12(b)(6) motions, whereas NNA's instant motion seeks summary judgment.

Admittedly, Nelson relies on two cases that have rejected the argument that a workmanship and materials warranty cannot encompass a design defect claim. *See In re Saturn l-Series Timing Chain Prods. Liability Litig.*, 2008 U.S. Dist. LEXIS 109978 (D. Neb. 2008) (following *Koulajian*); *Koulajian v. Trek Bicycle Corp.*, 1992 U.S. Dist. LEXIS 1490 (S.D.N.Y. 1992). Both cases, however, pre-date the Courts of Appeals' decisions in *Mack Trucks, Bruce Martin Construction,* and *Troup*; and *Koulajian* also predates *Voelker*. Moreover, the Court finds Nelson's authorities on this issue unpersuasive. Thus, the Court chooses to join the vast weight of authority holding that a workmanship and materials warranty cannot encompass a design defect claim.

Accordingly, NNA is entitled to summary judgment on the express warranty claim.

**B.**

Both of Nelson's statutory claims fail because the record cannot support a conclusion that NNA made a knowing omission in connection with the sale of Nelson's Maxima.

California's Unfair Competition Law forbids any "unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200 et seq.

Similarly, the California Consumers Legal Remedies Act prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of any goods or services to any consumer." Cal Civ. Code § 1770.

Nelson argues that NNA's failure to disclose the transmission defect was deceptive. But the failure to disclose could only be deceptive if NNA knew of the defect at the time the car was sold.

Relying on the undisputed fact that NNA assembled and manufactured the Maximas, Nelson argues that a reasonable factfinder could conclude that NNA knew that: (1) the Maximas lacked an external transmission cooler; (2) "and thus would be prone to excessive heat;" (3) "which causes long-term, high-mileage damage." (Opposition Brief p. 28) The Court disagrees.

On summary judgment the Court is not required to give the nonmoving party the benefit of *every* favorable inference, only such inferences that are *reasonable*. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). In the Court's view, drawing inference upon inference based on the simple fact that NNA assembled and manufactured the Class Vehicles is not reasonable in light of the facts of this case.

Alternatively, Nelson argues that "[h]ad [NNA] actually done [pre-sale durability tests of the transmission system] it

10

would have known (or should have known) at the time of sale that the Class Vehicles suffer from a material design defect." (Opposition Brief, p. 25)

The Court agrees with NNA that the failure to test a product is not actionable under either statute. To accept Nelson's argument would be to misinterpret the statutes as encompassing negligent conduct.

NNA is entitled to judgment as a matter of law as to the statutory claims.

### c.

Lastly, absent evidence that NNA knew about the alleged design defect at the time Nelson bought her car, Nelson's claim for unjust enrichment fails. The record evidence cannot support a finding that NNA retained a benefit under circumstances where it would be unjust to do so without payment. *See McBride v. Boughton,* 123 Cal. App. 4th 379, 389 (Cal. App. 1st Dist. 2004) ("The person receiving the benefit is required to make restitution only if the circumstances are such that, as between the two individuals, it is unjust for the person to retain it.").

Accordingly, NNA is entitled to judgment as a matter of law as to Nelson's unjust enrichment claim.

**IV.**

For the above-stated reasons, NNA's Motion for Summary Judgment on Plaintiff Nelson's claims will be granted in its entirety. An appropriate Order accompanies this Opinion.

Dated:  December 19, 2014               __ s/ Joseph E. Irenas _____
                                        Joseph E. Irenas, S.U.S.D.J.